Benjamin E. Weed
Illinois Bar No. 6294052
benjamin.weed@klgates.com
Gina A. Jenero
Illinois Bar No. 6320853
Gina.jenero@klgates.com
70 West Madison Street, Suite 3300
Chicago, IL 60602
312.372.1121
312.827.8000 *Facsimile*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL EQUITY MANAGEMENT (SA) PTY. LTD., | Case No. 3:17-cv-02177-WHA<br>Case No. 3:17-cv-02178-WHA<br>Case No. 3:17-cv-02435-WHA |
| Plaintiff, | |
| v. | **DEFENDANTS' MOTION FOR ENTITLEMENT TO ATTORNEYS' FEES AND COSTS** |
| ALIBABA GROUP HOLDING, LTD., ET AL., | |
| Defendants. | **Judge:  Hon. William H. Alsup** |
| | **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** Defendants Alibaba Group Holding, Ltd., Alibaba Cloud Computing Ltd, Nimbus Development, Inc., Alibaba.com, Inc., Alibaba.com Singapore E-Commerce Private Ltd., Alibaba Hong Kong Ltd., (collectively, the "Alibaba Defendants"), and eBay, Inc. ("eBay") (together with the Alibaba Defendants, "Defendants") respectfully move for entitlement to attorney's fees and costs pursuant to the Court's order regarding potential motions for attorney's fees (Dkt. 161), 35 U.S.C. § 285, the Court's inherent authority, and 28 U.S.C. § 1927. Defendants base their motion on the contemporaneously filed memorandum of points and authorities and supporting evidence set forth in the Declarations of Carey Ramos, Benjamin Weed, and Roger Shang, and any subsequently filed briefing and accompanying papers, pleadings, and papers previously filed in this Action, and any other arguments, evidence, and matters submitted to the Court, at the hearing or otherwise.

## STATEMENT OF RELIEF REQUESTED

Pursuant to the Court's order regarding potential motions for attorney's fees (*see, e.g.*, Dkt. 161 in Civil Action No. 17-cv-02177), 35 U.S.C. § 285, the Court's inherent authority, and 28 U.S.C. § 1927, Defendants seek entitlement to attorneys' fees and costs from the initiation of each of their respective cases through the filing and resolution of this Motion and any necessary and/or related subsequent proceedings, including the proceedings before the Patent Trial and Appeals Board and the Federal Circuit invaliding certain claims of U.S. Patent Nos. 6,690,400 (the "'400 Patent") and 7,356,677 (the "'677 Patent") (collectively "the Asserted Patents").

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION .................................................................................1

STATEMENT OF RELIEF REQUESTED ............................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

I.      INTRODUCTION ......................................................................................................1

II.     BACKGROUND .........................................................................................................2

        A.      The Asserted Patents ......................................................................................3

        B.      GEMSA's Baseless Infringement Positions ................................................3

        C.      GEMSA's Baseless Validity Positions .........................................................7

        D.      GEMSA's Bad Faith Conduct In Mediation And Settlement Discussions ............9

        E.      GEMSA's Baseless Positions Before The PTAB And The Federal Circuit..........13

        F.      Mr. Ramey's Withdrawal From The Cases After Vexatiously Litigating
                Baseless Cases Against Defendants........................................................14

III.    ARGUMENT ..............................................................................................................16

        A.      The Court Should Award Fees And Costs Pursuant To 35 U.S.C. § 285
                Because This Is An "Exceptional Case" ....................................................16

                1.      GEMSA's Cases Against Defendants "Stand Out" With Respect To
                        The Lack of Substantive Strength In GEMSA's Litigating Positions
                        ......................................................................................................16

                2.      GEMSA's Cases Against Defendants "Stand Out" With Respect To
                        The Manner In Which GEMSA And Its Counsel Litigated ....................20

        B.      The Court Should Exercise Its Inherent Authority to Award Defendants
                Their Fees And Costs Because GEMSA's Lawsuits Were Conducted In Bad
                Faith ...............................................................................................................22

        C.      GEMSA's Attorneys Should Be Held Jointly Liable For All Of Defendants'
                Fees and Costs Under 28 U.S.C. § 1927 Because They Recklessly
                Multiplied The Proceedings Unreasonably and Vexatiously................................23

        D.      Estimate Of The Fees And Costs Defendants Seek ................................24

IV.     CONCLUSION...........................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page**

### Cases

*A & L Tech. v. Resound Corp.*,
    1995 WL 415146 (N.D. Cal. June 29, 1995)........................................................................23

*Blackbird Tech LLC v. Health In Motion LLC*,
    944 F.3d 910 (Fed. Cir. 2019)..........................................................................................21

*Christian v. Mattel, Inc.*,
    286 F.3d 1118 (9th Cir. 2002) ..........................................................................................22

*Cunningham v. Cty. of Los Angeles*,
    879 F.2d 481 (9th Cir. 1988) ............................................................................................24

*Eltech Systems Corp. v. PPG Indus.*,
    903 F.2d 805 (Fed. Cir. 1990)..........................................................................................21

*Fink v. Gomez*,
    239 F.3d 989 (9th Cir. 2001) ............................................................................................23

*Ingram v. Oroudjian*,
    647 F.3d 925 (9th Cir. 2011) ............................................................................................21

*Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enterprises, Inc. (U.S.A.)*,
    2009 WL 9137315 (C.D. Cal. Dec. 14, 2009) ..................................................................24

*IPVX Patent Holdings, Inc. v. Voxernet LLC*,
    2014 WL 5795545 (N.D. Cal. Nov. 6, 2014) ............................................................18, 20

*Kilopass Tech. Inc. v. Sidense Corp.*,
    2014 WL 3956703 (N.D. Cal. Aug. 12, 2014) ..................................................................20

*Kilopass Tech., Inc. v. Sidense Corp.*,
    82 F. Supp. 3d 1154 (N.D. Cal. 2015) ..............................................................................25

*Kim Laube & Co., Inc. v. Wahl Clipper Corp.*,
    2014 WL 12461044 (C.D. Cal. Mar. 17, 2014)................................................................21

*Ltd. v. Compal Elecs. Inc Grp.*,
    2015 WL 11570939 (S.D. Cal. Dec. 11, 2015).................................................................24

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988)..........................................................................................23

*Max Sound Corp. v. Google, Inc.*,
    2017 WL 4536342 (N.D. Cal. Oct. 11, 2017)...................................................................21

DEFENDANTS' BRIEF in support of MOTION for
ENTITLEMENT TO ATTORNEY'S FEES AND COSTS          II          3:17-cv-02177-WHA;
3:17-cv-02178-WHA; 3:17-cv-02435-WHA

*Munchkin, Inc. v. Luv N' Care, Ltd.*,
    2018 WL 7504404 (C.D. Cal. Dec. 27, 2018) ...................................................................22

*NetFuel, Inc. v. Cisco Sys. Inc.*,
    2020 WL 1274985 (N.D. Cal. Mar. 17, 2020) ...............................................................19

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014) .............................................................................................16, 18

*Qualcomm Inc. v. Broadcom Corp.*,
    WL 9677112 (S.D. Cal. Oct. 29, 2007) ........................................................................25

*Segan LLC v. Zynga Inc*,
    131 F. Supp. 3d 956 (N.D. Cal. 2015) ..........................................................................18

*SFA Sys., LLC v. Newegg Inc.*,
    793 F.3d 1344 (Fed. Cir. 2015) ....................................................................................22

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013) ....................................................................................21

*Thermolife Int'l LLC v. Myogenix Corp.*,
    2018 WL 325025 (S.D. Cal. Jan. 8, 2018) ....................................................................23

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) ....................................................................................19

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
    2013 WL 936449 (D. Del. Mar. 11, 2013) ...................................................................19

**Statutory Authorities**

28 U.S.C. § 1927 .....................................................................................11, 13, 23, 24

35 U.S.C. § 101 ..................................................................................................8, 19

35 U.S.C. § 285 ......................................................................................6, 11, 16, 23

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is a case that should never have been brought—much less prosecuted to its inevitable outcome by three sets of counsel for four-and-a-half years, in the face of overwhelming evidence that the claims had no merit. At each step of the case—from pre-filing, to fact discovery and claim construction, to expert discovery, to litigation before the Patent Trial and Appeal Board ("PTAB"), and even during court-ordered mediation—Plaintiff Global Equity Management (SA) Pty. Ltd.'s ("GEMSA" or "Plaintiff") infringement allegations were, at best, vague and, more often, incomprehensible. To the extent its allegations could be understood, they amounted to the baseless assertion that GEMSA's patents covered *any* modern cloud computing architecture in contravention of the actual patent disclosures and prevailing law. While GEMSA failed to articulate any cogent, legally supportable basis for bringing this case, Defendants repeatedly supplied GEMSA's counsel with irrefutable evidence of Defendants' respective non-infringement, including making source code establishing non-infringement available for inspection, which Plaintiff's counsel and its experts elected never to do.

Defendants also provided GEMSA with clear-and-convincing evidence establishing the invalidity of the patents-in-suit—evidence that resulted in invalidation of key claims during claim construction and cancellation of the remaining asserted claims by the PTAB (in rulings that Plaintiff chose not to contest on the merits when it appealed, instead focusing on the baseless contention that Amazon was an unnamed "real party in interest"). Rather than withdraw this case in the face of overwhelming evidence, GEMSA and its counsel instead responded with astronomical damages and settlement demands that were untethered from Federal Circuit precedent. And, as the case proceeded and they received unfavorable rulings, they *increased* those demands by more than ████████████████████████████████████████ ████████████████████████.

GEMSA's attorneys should have fulfilled their duties as officers of the court when first approached by GEMSA about litigation. And certainly in the face of substantial and mounting invalidity and non-infringement evidence, GEMSA's attorneys should have counseled GEMSA to

1   withdraw the present case. Instead, those attorneys allowed, if not encouraged, GEMSA to bring

2   and ultimately continue pressing objectively unreasonable litigation. This unwarranted behavior,

3   which appears to have been entirely focused on developing phantom exposure to extort settlement

4   dollars, has forced Defendants to expend substantial resources, both in time and money, defending

5   against this case.

6       Defendants respectfully request that the Court find GEMSA's behavior "exceptional" since

7   day one, and further find that Defendants are entitled to an award of fees and costs against GEMSA

8   and its counsel—as compensation for what they had to expend to defend themselves against

9   groundless and vexatious litigation and to deter others from engaging in such conduct in the future.

10  **II.     BACKGROUND**

11      Starting in late 2015, GEMSA launched three waves of baseless lawsuits against over thirty

12  different defendants in the Eastern District of Texas, alleging infringement of the Asserted Patents.

13  GEMSA's first wave of litigation began on October 30, 2015, when it accused, among others,

14  Alibaba.com, Inc., Alibaba.com Singapore E-commerce Private Ltd., and Alibaba Group Holding

15  Ltd.  *See* Case No. 2:15-cv-01702-RWS (E.D. Tex.).[1] On January 29, 2016, GEMSA filed a second

16  wave of litigation, asserting the same patents against, among others, defendant eBay, Inc. *See* Case

17  No. 2:16-cv-00098-RWS (E.D. Tex.). GEMSA launched a third wave of lawsuits on June 14, 2016

18  against numerous other defendants; most, if not all, of these defendants were accused of

19  infringement because they utilized Amazon Web Services as a cloud computing provider. *See,*

20  *e.g.*, 2:16-cv-00618 (E.D. Tex.) to 2:16-cv-00637 (E.D. Tex.). GEMSA did not sue Amazon, the

21  actual provider of Amazon Web Services, instead attempting to extort settlements from Amazon's

22  customers.

23

24  [1] In July 2016, counsel for GEMSA and the Alibaba Defendants came to a stipulation where
    GEMSA agreed to dismiss Alibaba Group Holding Ltd. from the lawsuit without prejudice

25  because it was a holding company with no relation to the accused www.alibaba.com. In exchange,
    the Alibaba Defendants agreed to join Alibaba.com Hong Kong Ltd. as a defendant. *See*

26  Declaration of Carey R. Ramos ("Ramos Decl.") ¶ 8; Ex. G-1. Despite this agreement, just over
    two months later, on October 4, 2016, GEMSA initiated a separate lawsuit against Alibaba Group

27  Holding, Ltd. ("Alibaba Holding")—in direct contravention of the parties' agreement—as well as
    several additional Alibaba entities, Alibaba Cloud Computing Ltd., and Nimbus Development,

28  Inc. *See* Case No. 2:16-cv-01074-RWS (E.D. Tex.).

A.      The Asserted Patents

The '400 Patent discloses a graphical user interface (GUI) to enable a user to repartition secondary storage physical devices. Ramos Decl. Ex. A-1 at Abstract. The partitions are virtual cabinets that enable the user to separate operating systems, applications, and data files. *Id.* The GUI allows a user to assign each virtual cabinet a name and define the cabinet by its operating system(s), programs, and/or data files. *Id.*

The '677 Patent is directed to a computer system capable of "fast switching" between multiple operating systems. *Id.* Ex. B-1 at Title. To achieve this, the '677 Patent discloses using a "Super OS" to manage and control the selection of multiple operating systems. *See id.* at 3:28–50, 7:35–38, 8:51–55. Switching between operating systems occurs without requiring the shutdown of one operating system and the booting of another. *Id.* at 10:50–54.

B.      GEMSA's Baseless Infringement Positions

GEMSA's original complaint against Alibaba.com, Inc., Alibaba Singapore, and Alibaba Group Holding Ltd. alleged infringement of one patent—the '400 Patent. *See* Ramos Decl. Ex. A. Nearly five months into the case, on March 14, 2016, GEMSA filed a Second Amended Complaint, adding an allegation of infringement of the '677 Patent. *Id.* Ex. B. Specifically, GEMSA alleged that the software and hardware used by the Alibaba Defendants for the administration and management of the www.alibaba.com website infringed certain claims of the '400 and '677 Patents. *Id.* On April 1, 2016, GEMSA served infringement contentions on the Alibaba Defendants setting forth the purported bases for this alleged infringement. *Id.* Ex. C. The Alibaba Defendants responded, explaining to GEMSA that its infringement contentions were deficient and incoherent for a number of reasons. *Id.* Ex. D. GEMSA served Amended Infringement Contentions on May 2, 2016. *Id.* Ex. E-1, E-2. While GEMSA's theory of infringement changed completely between service of its original infringement contentions and its amended infringement contentions— purportedly in response to Alibaba's assertion that the initial contentions were deficient—the Alibaba Defendants informed GEMSA that its amended contentions still failed to set forth a good faith basis for alleging infringement and lacked coherence. Following these explanations, the Alibaba Defendants repeatedly made clear to GEMSA and GEMSA's counsel with confirmatory

1    evidence that GEMSA's factual assumptions regarding www.alibaba.com were incorrect and its

2    claims baseless—these explanations fell on deaf ears.

3         On January 9, 2017 (a month before the close of fact discovery), GEMSA served "Final

4    Infringement Contentions" ("FIC"), without leave from the prior court and in contravention of the

5    prior court's local rules, attempting to further modify its infringement theory. *Compare id.* Exs. C,

6    E-1, E-2, I-1, I-2.[2] Specifically, GEMSA's claim charts set forth a final theory of infringement

7    based on the assumption that www.alibaba.com is managed via the AliCloud service. *See, e.g.*, *id.*

8    Ex. I-1 (providing screenshots of the AliCloud user interface for the "graphic user interface"

9    required by claim 1, but no evidence relating to any www.alibaba.com interface). GEMSA's

10   "final" claim chart for the '677 Patent is similarly focused solely on AliCloud, and did not contain

11   any evidence relating to www.alibaba.com. *See, e.g.*, *id.* Ex. I-2. While GEMSA had made

12   reference to AliCloud at prior times during the litigation, its FICs were the first indication of a

13   wholesale shift from its prior allegations against www.alibaba.com to allegations directed at

14   AliCloud.

15        However, dating back to the inception of this case, the Alibaba Defendants repeatedly

16   informed GEMSA and its counsel that claims based on the AliCloud service were particularly

17   meritless in the present case, because AliCloud was not a party to this litigation and the operation

18   of AliCloud is wholly unrelated to the www.alibaba.com website accused of infringement. For

19   example, on June 24, 2016, counsel for the Alibaba Defendants notified Mr. Ramey that GEMSA's

20   amended infringement contentions remained deficient because "GEMSA's infringement theory in

21   this case is apparently based on the assumption that there is some relationship between AliCloud

22   and the alibaba.com website." *Id.* Ex. F at 2. Counsel for the Alibaba Defendants told Mr. Ramey:

> In fact, ***there is no relationship between www.alibaba.com and AliCloud.*** The
> www.alibaba.com website is not operated, administered, managed, or supported in
> any way by AliCloud, alicloud.com, or aliyun.com. Therefore, GEMSA has . . .
> provided no analysis of how it believes www.alibaba.com allegedly infringes any
> claim of the '400 or '677 patents.

---

27   [2]   The Alibaba Defendants moved to strike GEMSA's belated FICs in the Eastern District of Texas
28   on January 26, 2017, but the case was ordered transfer to this Court on March 24, 2017 before a
     decision was reached on the Alibaba Defendants' motion to strike. *See* Exs. I-3, R, S.

1  *Id.* (emphasis added). Yet Mr. Ramey ignored these facts and claimed without basis that "[w]e

2  realize Alibaba uses Alicloud and that a logical architecture must esist [sic]." *Id.* Ex. G at 2. The

3  Alibaba Defendants once again explained to Mr. Ramey on August 5, 2016:

> [T]here is no relationship between www.alibaba.com and AliCloud. The
> www.alibaba.com website is not operated, administered, managed, or supported in
> any way by AliCloud, alicloud.com, or aliyun.com. And because GEMSA's
> infringement contentions appear to be based on this incorrect assumption, they do
> not provide the required identification of where each element of each asserted claim
> is found within www.alibaba.com. In our June 24 letter, we requested that GEMSA
> supplement its contentions by July 8 to remedy this deficiency, but received no such
> supplemental contentions.

9  *Id.* at 1. On December 5, 2016, the Alibaba Defendants made source code available for inspection,

10 which further confirmed that there was indeed no relationship between www.alibaba.com and

11 AliCloud. *Id.* Ex. H. Neither GEMSA nor any of its experts ever bothered to review this source

12 code. Ramos Decl. ¶ 9.

13      The Alibaba Defendants' verified responses to GEMSA's interrogatories[3] and responses

14 to GEMSA's expert reports[4] further reinforced for GEMSA and its counsel that GEMSA's

15 allegations had no basis in fact. Moreover, on January 11-12, 2017, GEMSA deposed Alibaba's

16 30(b)(6) witnesses in Hong Kong. Consistent with Alibaba's prior statements, Alibaba's technical

17 witnesses testified that: (1) the www.alibaba.com website

18                                (and thus could not infringe the '400 Patent, which was directed

19 specifically to a GUI); (2)                                                      ; and (3)

20                                                                                    . *See,*

21 *e.g., id.* Ex. M at 19:12-17, 35:10-14, 88:6-89:2; Ex. N at 78:15-79:6. In other words, at least

---

[3] *See id.* Ex. J at 4 ("                                                      "); *id.* at 10 ("                                                      "); *id.* at 11 ("                                                      ").

[4] *Id.* Ex. K at 3

substantial portions of the asserted claims of the '400 and '677 Patents were plainly absent from the accused product. Moreover, even if GEMSA could show that the asserted claims were somehow met by the accused instrumentalities (and the evidence confirmed that it could not), none of the GUIs or related software that GEMSA had identified ███████████████████████████████████████████████████████████████████████████████████████. *Id.* As such, GEMSA could not establish that any of the asserted claims of the '400 or '677 Patents were actually practiced by the Alibaba Defendants or any entity under their control in the United States.

Contemporaneously with willfully ignoring the Alibaba Defendants' clear and undisputed evidence of non-infringement, GEMSA was engaging in similarly baseless litigation with eBay. On May 9, 2016, GEMSA served its initial infringement contentions on eBay (the "eBay ICs"). Declaration of Benjamin Weed ("Weed Decl.") ¶ 2, Ex. 1. The eBay ICs, on their face, purported to accuse "the GUI, platforms, hardware, software, and algorithms used (including used by incorporation) for the operation, administration, and/or management of www.ebay.com." *Id.* Ex. 1 at 2. GEMSA's allegations relied heavily on eBay's supposed use of OpenStack to create different virtual operating systems to provide the functionality offered by www.ebay.com. *Id.*

On July 1, 2016, counsel for eBay sent a letter (the "July 1st Letter") to GEMSA's counsel, explaining to GEMSA's counsel that "***there is absolutely no objectively reasonable basis for GEMSA's claims of infringement*** and its continued pursuit of its claims continues to be both factually and legally unreasonable and gives rise to GEMSA's liability for attorneys' fees under 35 U.S.C. § 285." Weed Decl. ¶ 3, Ex. 2 (emphasis added). In its July 1st Letter, eBay specifically walked GEMSA through its non-infringement positions as to both Asserted Patents. With respect to the '400 Patent, for example, eBay made clear that "eBay does not use OpenStack (or any other cloud storage solution) to create different virtual operating systems to provide the functionality offered by the website www.ebay.com." *Id.* at 2. With respect to the '677 Patent, eBay stated that "eBay does not rely on ***any switching between virtual computer systems whatsoever*** . . . ." *Id.* Ex. 2 (emphasis added). The July 1st Letter urged GEMSA to drop its meritless infringement allegations against eBay, making the record "absolutely clear that eBay will look to GEMSA to

1  pay eBay's attorneys' fees and costs at the conclusion of this matter" should GEMSA "decide[] to

2  continue pursuit of its claims against eBay beyond mediation." *Id.* at 6.

3      In the face of this concrete evidence of non-infringement, GEMSA marched forward with

4  its infringement claims as to both of the Asserted Patents against eBay. With respect to the '400

5  Patent—which was directed to a GUI for managing disk partitions (*see, e.g.*, '400 Patent at

6  Abstract)—GEMSA never identified any GUI element in eBay's accused instrumentality that

7  interacted with "partitions" of hard disk drives in any way. *Id.* at ¶ 4. Instead, GEMSA relied on

8  software that manipulated "images" or "volumes," which refer not to subsets of storage devices,

9  but rather to entire storage devices. *Id.* Ex. 3. At no point during fact or expert discovery did

10 GEMSA identify anything resembling a partition under any claim construction, much less under

11 the court's well-reasoned construction. eBay's expert witness, Mr. Richard Goodin, confirmed that

12 GEMSA's expert simply did not try to show why "images" or "volumes" are equivalent to the

13 claimed "partitions." *Id.* at ¶ 5, Ex. 4 at ¶ 22.

14     With regard to the '677 Patent, GEMSA's allegations against eBay attempted to read the

15 claims of that patent on fundamental, decades-old Virtual Machine Manager scheduler

16 functionality. *See, e.g.*, *id.* Ex. 3 at 37. Yet nowhere in the '677 Patent is there any disclosure of

17 this type of functionality.  *Id.* Ex. 4 at ¶ 25. Instead, the '677 Patent is directed to a very specific

18 situation where a system permits a user to switch from one operating system (e.g., Windows) to

19 another (e.g., Mac OSX) quickly and without rebooting. *Id.* While this was not novel (indeed, IBM

20 prior art was used to invalidate the '677 Patent at the PTAB), this very specific functionality was

21 simply not present in any of the accused eBay technology, as eBay repeatedly told GEMSA to no

22 avail. GEMSA also did not make any effort to identify the interaction of the functionality it relied

23 on as alleged "switching" with the system's BIOS or ACPI functionality, which is fundamental to

24 the purported invention of the '677 Patent and was front-and-center in the *Markman* order issued

25 in the Eastern District of Texas. Further compounding GEMSA's failings yet again was the fact

26 that despite making source code available for inspection, GEMSA's expert never reviewed that

27 code before issuing his opinion regarding infringement. *See id.* at ¶ 55, n.8.

28     **C.    GEMSA's Baseless Validity Positions**

Defendants also repeatedly laid out the reasons why the Asserted Patents were invalid. For example, Defendants provided GEMSA a detailed analysis of how each of the asserted claims was anticipated or rendered obvious by numerous prior art references as part of their June 27, 2016 invalidity contentions. Ramos Decl. Ex. O. Defendants also laid out the reasons why all asserted claims were invalid based on indefiniteness, lack of enablement, lack of written description, and patent ineligible subject matter. *Id.* at 22-27. Indeed, on December 22, 2016, Judge Payne in the Eastern District of Texas issued his claim construction order, finding that three of GEMSA's six asserted claims were invalid as indefinite. *See id.* Ex. P.

On March 9, 2017, the Alibaba Defendants filed a motion for partial summary judgment that the only remaining claim of the '400 Patent (claim 1) was invalid under 35 U.S.C. § 101 because it is directed to a "graphic user interface" with nothing more. *Id.* Ex. Q. As the Alibaba Defendants explained, "Claim 1 recites no structure—neither program code nor hardware—for generating the claimed graphical images, nor does it recite a particular way for constructing or provisioning these images. It simply claims the GUI." *Id.* at 9. Thus, "consistent with Federal Circuit and other courts' reasoned decisions, the graphical interface recited in claim 1 fails to set forth anything more than an 'abstract idea.'" *Id.* at 10; *see also id.* at 6-7 (laying out the case law finding that claims directed to GUI implementations are abstract). The case was transferred to this Court before there was a decision on the Alibaba Defendants' partial motion for summary judgment. *Id.* Exs. R, S.

eBay similarly apprised GEMSA's counsel of the invalidity of the Asserted Patents in a July 1st Letter. Weed Decl. Ex. 2 at 3–4. In particular, eBay conducted a deposition of Mr. Eric Ruff, who explained that his product, PartitionMagic, disclosed each and every limitation of the '400 Patent. *Id.* at 3; *id.* Ex. 17. eBay also made clear that the deposition transcript would be the trial testimony of Mr. Ruff, as he resided outside the jurisdiction of a trial subpoena either from the Eastern District of Texas or from the Northern District of California. *Id.* Notwithstanding this, eBay told GEMSA that Mr. Ramey's failure to ask a single question of Mr. Ruff meant that there *would be no cross-examination*; Mr. Ruff's testimony would be unrebutted. *Id.* This letter eventually proved to be a harbinger of things to come, as the *inter partes* review ("IPR") process

1  ultimately invalidated the remaining asserted claims of the '400 Patent on the basis of a

2  PartitionMagic product manual.

3        eBay's July 1st Letter proved similarly prescient with regard to the '677 Patent.  In it, eBay

4  explained that a European patent publication to IBM disclosed nearly the identical "invention" as

5  described in the '677 Patent. *Id.* at 4. It was this reference that ultimately invalidated the '677

6  Patent during the IPR process. *Id.* Notably, the predictions in eBay's July 1st Letter were so on-

7  point that GEMSA did not even elect to appeal the PTAB's IPR rulings of obviousness on the

8  basis that the prior art was deficient for either of the Asserted Patents. And eBay similarly moved

9  for summary judgment of invalidity pursuant to 35 U.S.C. §101. *See id.* Ex 5. As was the case with

10  the Alibaba Defendants' motion, the '400 Patent was extinguished before either the Eastern

11  District of Texas or this Court could rule on eBay's motion.

12       **D.**     **GEMSA's Bad Faith Conduct In Mediation And Settlement Discussions**

13        GEMSA's continued pressing of this litigation in the face of overwhelming evidence

14  highlighted its true intention in filing these cases—an attempt to extort a settlement payment from

15  Defendants (and all other named parties). This strategy was confirmed by GEMSA's conduct

16  during settlement and mediation discussions with the respective Defendants.

17        For example, in March 2016, GEMSA initially demanded ▮▮▮▮▮ from the Alibaba

18  Defendants to settle the present lawsuit. Ramos Decl. Ex. T. Astonishingly, just four months later,

19  in July 2016, after being informed of the deficiencies in its case, GEMSA *increased* its settlement

20  demand more than ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21  ▮▮▮▮▮▮▮▮▮ *Id.* Ex. U. Demonstrating GEMSA's and its counsel's gamesmanship, *only*

22  *three minutes after* sending its ▮▮▮▮▮▮ demand, GEMSA increased its settlement demand

23  by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮ *Id.* Ex V. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, though no case has ever considered or approved

27  this as a viable patent infringement damages theory. *Id.* And the fact that GEMSA and its counsel

28  sent offers ranging from ▮▮▮▮▮▮ within three minutes of each other further illustrates

that they had no actual intent to mediate in good faith or in a plausible damages theory in this case; instead, they were simply plucking numbers out of thin air. Six months later, on the eve of mediation in January 2017, GEMSA's counsel made a settlement demand of ████████████████████████████████████████████████████████████████████████████ " *Id.* Ex. W (emphasis added). GEMSA could provide no objective basis for this assertion. Nor did GEMSA or its counsel provide any rationale for this settlement demand less than two weeks after Judge Payne invalided three of the six asserted claims in his claim construction order. *Id.* Ex. P. GEMSA's baseless demands notwithstanding its continuous lack of any plausible liability or damages theory demonstrates willful ignorance at best, and, more likely, bad faith.

Indeed, underscoring the bad faith of these settlement demands is the fact that GEMSA's damages expert, Walter Bratic, submitted expert reports in February and March 2017 that concluded the parties would have agreed to a royalty of approximately ████████████████████ ███████████████████████████████████████ . *See id.* Ex. X at 3. Mr. Bratic arrived at this figure based on his opinion that ██████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ " *Id.* Mr. Bratic's opinions have numerous flaws, including that █████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ████████████████████████ *See, e.g., id.* Ex. L at 43-48. But the substantial gulf between Mr. Bratic's (overinflated) damages figure and GEMSA's and its counsel's astronomical settlement demands demonstrates their bad faith. ██████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████ *See id.* Ex. L at 13-18.

GEMSA's and its counsel's misconduct was highlighted at its mediation with the Alibaba Defendants. On January 24, 2017, the Alibaba Defendants and GEMSA attended a mediation session for this case before Lee Kaplan in San Francisco. GEMSA was represented at the mediation by Schumann Rafizadeh. *See* Declaration of Roger Shang ("Shang Decl.") at ¶ 3. GEMSA's

outside counsel in attendance were William Ramey of Ramey & Schwaller, LLP, and Rick Laminack and Tom Pirtle of Laminack, Pirtle & Martines, LLP. *Id.* Mr. Laminack spoke for GEMSA, and stated that ███████████████████████████████████████████████████████ █████████████████████████████████████████████████████████. *Id.* ¶ 4. Mr. Laminack stated ███████████████████████████████████████████████████ ████████████████████████████████████████████████. *Id.*

GEMSA engaged in similar tactics with eBay. GEMSA's counsel, Mr. Ramey, contacted eBay's counsel regarding settlement in March 2016. Weed Decl. at ¶ 7. Mr. Ramey informed eBay's counsel that based on GEMSA's understanding of eBay's market capitalization, GEMSA's demand for settlement was ████████. *Id.* GEMSA and its counsel provided no justification for using market capitalization as a basis for damages. *Id.*

Moreover, pursuant to the court's Docket Control Order, GEMSA and eBay were set to mediate before Lee Kaplan on July 18, 2016. *Id.* at ¶ 8. In anticipation of the impending mediation, eBay began drafting its Confidential Mediation Memorandum, identifying the substantial holes in GEMSA's infringement, validity, and damages theories for the mediator's consideration. *Id.* Eleven days before the mediation was to occur, GEMSA increased its settlement demand to ████████████████████████████████████ purportedly based on a percentage of eBay's "net worth." *Id.* at ¶ 9. GEMSA elected not to address any of the positions articulated in eBay's July 1st Letter. *Id.* As it was clear GEMSA would not move off of its ridiculously high settlement demand and had not considered the merits of eBay's carefully articulated defenses, eBay called off the mediation so as to not waste the parties' and the mediator's time and expense. *Id.* at ¶ 10.

In response to GEMSA's unreasonable demand, on July 18, 2016, eBay's counsel sent Mr. Ramey yet another letter (the "July 18th Letter"), reinforcing its position that "there is no objectively reasonable basis for GEMSA's claims of infringement" and warning GEMSA that "its continued pursuit of its claims . . . gives rise to GEMSA's liability for attorneys' fees under 35 U.S.C. § 285." *Id.* at ¶ 11, Ex. 6. In addition to the non-infringement, invalidity, and damages defenses previously articulated in the July 1st Letter, eBay put GEMSA on notice of its intent to file petitions for *inter partes* review of the Asserted Patents, should GEMSA refuse to drop its

case. *Id.* Ex. 6 at 7. The July 18th Letter also made clear that in addition to seeking fees directly from GEMSA, "eBay also intends to move for sanctions under 28 U.S.C. § 1927" against GEMSA's counsel. *Id.* at 7–8.

GEMSA never responded to either of eBay's fees' letters. Instead, GEMSA and its counsel completely ignored eBay's numerous warnings, advancing the case through *Markman* hearing. *Id.* at ¶ 12. Incredibly, before the ultimate mediation in January 2017, GEMSA *reiterated* its ███████████ demand despite having lost half of its patent claims to indefiniteness in Judge Payne's *Markman* order and despite the remaining claims having fixed claim constructions consistent with those proposed by Defendants within the context of the applicable prior art—thus confirming Defendants' pre-claim construction invalidity positions and further solidifying the prior art of record as invalidating the asserted claims. *Id.* at ¶ 13. Yet again, GEMSA's counsel provided no meaningful rationale for its demand. *Id.*

GEMSA's demands only became more unreasonable as time passed and despite the fact that GEMSA had done absolutely zero additional investigation into the merits of its infringement case against eBay. On February 20, 2017, eBay received GEMSA's opening damages report against eBay, claiming that eBay and GEMSA "████████████████████████████████████████████████████████████████████████████████████████ ███" *Id.* at ¶ 14; *id.* Ex. 7 at ¶ 5. Again, despite eBay's clear articulation in both the July 1st and July 18th Letters that there is "no causal connection between eBay's allegedly infringing use of the patented features (i.e., through an open source platform) and eBay's user-based transactions or revenue" (*see, e.g.*, Ex. 6 at 5), Mr. Bratic's reasonable royalty conclusion was based on nothing more than a ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████." *Id.* Ex. 7 at ¶ 168. Notably, ██████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████ *Id.* at ¶ 167. Any addition above and beyond this figure would only exacerbate the bad faith, unreasonable nature of GEMSA's demands.

On May 16, 2017, eBay sent its final letter to GEMSA again documenting the baseless nature of GEMSA's allegations. *Id.* Ex. 8. This letter noted the victories eBay and the other Defendants had secured along the way, including invalidity of several claims during claim construction, successful transfer motion practice, PTAB trial institutions, and a stay of the district court proceedings pending PTAB review. *Id.* eBay also noted that because much of the conduct was attributable to GEMSA's attorneys, it intended to seeks fees and costs under 28 U.S.C. § 1927. *Id.* This letter was buttressed by the parties' respective expert reports and the governing *Markman* order. *Id.* It also articulated the primary problems with GEMSA's damages positions, including the "absurd notion . . . that ████████████████████████████████████ ████████ [.]" *Id.* at 7.

### E.    GEMSA's Baseless Positions Before The PTAB And The Federal Circuit

Based in part on GEMSA's gamesmanship in settlement discussions, Defendants filed petitions for IPR, seeking findings of unpatentability of certain asserted claims of the Asserted Patents (that were not otherwise invalidated by Magistrate Judge Payne in the Eastern District of Texas in his *Markman* ruling) before the PTAB. Ramos Decl. Exs. DD, EE. On April 21, 2017, the PTAB issued decisions instituting IPR on the remaining asserted claims of the Asserted Patents that had survived Judge Payne's claim construction order. *Id.* Exs. Y, Z.

During the IPR proceedings, GEMSA did not meaningfully fight the obviousness challenges that Defendants brought, electing to rely on its interested party, sole shareholder, founder, and inventor, Schumann Rafizadeh, as its "expert" witness with regard to obviousness. Weed Decl. Exs. 9, 10. In a subsequent motion to terminate, GEMSA argued that Amazon was somehow a puppeteer for eBay's and Alibaba's IPR filings, and that the failure to name Amazon as a real party-in-interest warranted dismissal of the IPRs. *Id.* at ¶ 17; *id.* Exs. 11, 12. Not only was this defense raised for the first time after institution and after GEMSA had submitted its Response, but GEMSA's counsel (in the excerpt below, Ms. Mojica of the Brooks Kushman P.C. firm) conceded during a telephonic hearing before the Board that this defense had no merit:

> Trock, J.: So, Ms. Mojica, it strikes me as--for you to succeed, that you're going to need to establish that Amazon is a real party in interest *in this proceeding*. Ms. Mojica.: Yes.

> Trock, J.:  Not Eastern District of Texas, Virginia, **here**.
> Ms. Mojica.:  **Right**.
> Trock, J.:   That they have some **right to exercise control over the filing of these petitions.**  Do you agree?
> Ms. Mojica:  Yes.
>
> …
>
> Trock, J.:   Let me ask you this: What have you seen so far that indicates that Amazon had some kind of control?
> Ms. Mojica: The only -- I have -- **I haven't seen anything that Amazon in particular had any control over this IPR**.

*Id.* Ex. 13. Consistent with this admission, the PTAB rejected GEMSA's arguments, and on April 18 and 19, 2018, it found that claims 1 and 2 of the '400 Patent and claims 1, 2, 6, and 7 of the '677 Patent were invalid based on obviousness. *Id.* at ¶ 19; *id.* Exs. 14, 15. In other words, between the PTAB and Judge Payne's claim construction order, all of GEMSA's asserted claims had been found to be invalid.

Rather than conceding defeat and ending its barely-concealed extortion scheme, GEMSA and its counsel (Brooks Kushman P.C.) continued dragging out these proceedings by appealing the PTAB's decisions to the Federal Circuit. *Id.* at Exs. 19, 20. GEMSA's appeal ignored the PTAB's obviousness findings, effectively admitting that they were correct, and instead focused solely on its admittedly misplaced Amazon "real-party-in-interest" argument. The Federal Circuit quickly rejected this argument:

> Even if not waived, however, we are not persuaded by GEMSA's argument. In fact, as it had before the PTAB, see J.A. 2652–53, **GEMSA admitted during oral argument that "as a fact, there are no facts" in the record "that Amazon actually wrote the IPR [petitions] or controlled the IPR [proceedings],"** Oral Arg. at 5:09–5:19; *see id.* at 4:27–4:50 (GEMSA admitting that it "do[es]n't believe there is anything in the record below that Amazon drafted the IPR [petitions] or controlled the IPR [proceedings]"), 6:53–6:59 (GEMSA agreeing that it is "undisputed that [Amazon] had no control over the IPR [proceedings]"), 11:41–12:05 (GEMSA agreeing that it "can't point to a single item of . . . Amazon's behavior vis-à-vis . . . the IPR proceeding[s]").

*Id.* Ex. 16 at 9 (emphasis added). Accordingly, GEMSA forced Defendants to expend time and money in responding to a Federal Circuit appeal that GEMSA and its counsel admitted, repeatedly, was unsupported by any evidence.

### F.     Mr. Ramey's Withdrawal From The Cases After Vexatiously Litigating Baseless Cases Against Defendants

1    After bringing cases that were meritless from their commencement, ramping up GEMSA's

2    demands despite all evidence of record being exculpatory, and maintaining needless and expensive

3    litigation, GEMSA's counsel sought to walk away. On March 24, 2017, Judge Payne granted

4    Defendants' motion to transfer the proceeding from the Eastern District of Texas to the Northern

5    District of California, and entered a stay as to all deadlines and discovery obligations pending

6    transfer. Ramos Decl. Ex. R. The transferred case was received in the Northern District of

7    California, and assigned to Judge Alsup. *Id.*

8    On April 6, 2017, Mr. Ramey (also GEMSA's original lead counsel in the PTAB

9    proceedings, *see id.* Exs. FF, GG) filed motions to withdraw as counsel from the IPR proceedings

10   regarding the '400 and '677 Patents. *Id.* Exs. AA, BB. The PTAB ordered that GEMSA had thirty

11   calendar days to find substitute counsel. *Id.* Ex. CC. Substitute counsel (Brooks Kushman P.C.)

12   subsequently appeared for GEMSA in the IPR proceedings. *Id.* at ¶ 33.

13   On June 15, 2017, GEMSA's counsel also moved to withdraw from this proceeding and

14   other related proceedings before this Court. Dkt. 103. Defendants opposed this request because,

15   among other things, GEMSA's and its counsel's unsupportable claims, litigation tactics and

16   theories that have unnecessarily protracted this litigation warranted an award of attorney's fees,

17   costs, sanctions, and any other relief this Court deems appropriate. *See* Dkts. 106, 108. On August

18   29, 2017, the Court allowed GEMSA's counsel to withdraw from the case, contingent on GEMSA

19   finding replacement counsel in two weeks. Dkt. 119. The Court made clear, however, that it would

20   maintain jurisdiction over GEMSA's counsel "for any bad acts that you've committed. . . . if

21   [defendants] want to be able to bring a motion for attorneys' fees, okay, I'll keep jurisdiction for

22   that. And even if I do dismiss the case, I'm going to keep jurisdiction for the same reason, and

23   over Global Equity Management for whatever bad acts they did themselves." Dkt. 121 at 11:13-

24   20. On September 5, 2017, GEMSA found replacement counsel (Brooks Kushman P.C.), and on

25   September 12, 2017, the Court granted Mr. Ramey's motion to withdraw, but again noted that "the

26   Court will retain jurisdiction over [Mr. Ramey] to entertain any motions for sanctions or further

27   relief at the end of said actions." Dkt. 124 at 2.

28   On March 23, 2020, the parties submitted a joint status report updating the Court that all

remaining claims being asserted had been invalidated by the Board, and all appeals had been exhausted. Dkt. 154. The next day, the Court issued an order to show cause why this case should not be dismissed with prejudice. Dkt. 155. The parties responded to the order to show cause on April 9, 2020, and on May 5, 2020 the Court entered judgment in favor of Defendants and against Plaintiffs. Dkt. 160. On the same day, the Court issued an order stating that any motion for attorneys' fees should proceed in two rounds, "first to decide defendants' entitlement to fees and, then, to determine the appropriate amount." Dkt. 161 at 1.

Defendants now file the instant motion to establish their entitlement to fees.

## III.   ARGUMENT

Defendants are entitled to fees and costs based on GEMSA's and its counsel's course of conduct throughout this case and in the related proceedings before the PTAB and Federal Circuit.

### A.   The Court Should Award Fees And Costs Pursuant To 35 U.S.C. § 285 Because This Is An "Exceptional Case"

35 U.S.C. § 285 provides that courts "may award attorney fees to the prevailing party" "in exceptional cases." An "exceptional case" is "one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). District courts can look to "nonexclusive" factors in this determination, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756, n.6.

Here, GEMSA's cases against Defendants are "exceptional" because they "stand[] out from others with respect to" both (1) "the substantive strength of [GEMSA's] litigating position[s]" and (2) "the unreasonable manner in which the case was litigated" by GEMSA and its counsel. *See Octane Fitness*, 572 U.S. at 554. Additionally, a finding that the present case is "exceptional" will act as an important deterrent, preventing others from engaging in expensive, unfounded litigation in an effort to generate revenue in the courtroom rather than the marketplace.

1.   GEMSA's Cases Against Defendants "Stand Out" With Respect To The

1

<u>Lack of Substantive Strength In GEMSA's Litigating Positions</u>

2       GEMSA's cases against Defendants were baseless from their commencement on all fronts.

3   From the filing of the complaints through fact and expert discovery, as well as the proceedings

4   before the PTAB and the Federal Circuit, GEMSA has never been able to articulate a plausible

5   theory of infringement against either set of Defendants, provide a good faith basis for the Asserted

6   Patents' validity, or articulate a damages theory that was directed to the value of the alleged

7   patented inventions or that was otherwise grounded in applicable legal precedent.

8       GEMSA's infringement positions against Defendants were unreasonable. GEMSA's entire

9   infringement theory against the Alibaba Defendants hinged on the factually incorrect assumptions

10  that: (1) the accused website, www.alibaba.com, was managed by AliCloud; (2) the

11  www.alibaba.com website ████████████████████████████████████████████

12  ████████████████████████████████████████████. When notified

13  repeatedly that each of these assumptions was incorrect—through correspondence from the

14  Alibaba Defendants' counsel (Ramos Decl. Exs. D, F); verified interrogatory responses (*id.* Ex. J);

15  sworn deposition testimony from numerous Alibaba witnesses (*id.* Exs. M, N); expert reports (*id.*

16  Exs. K, L); and source code (which GEMSA never reviewed) (*id.* Ex. H)—GEMSA and its counsel

17  consciously ignored the resulting deficiencies in its allegations and needlessly dragged this case

18  out against the Alibaba Defendants for years.

19       For example, the '400 Patent is directed to a GUI, yet the evidence established that the

20  www.alibaba.com website ████████████████████████████████████. *See, e.g.,*

21  *id.* Ex. M at 19:12-17, 35:10-14, 88:6-89:2; Ex. N at 78:15-79:6. Regarding the '677 Patent, the

22  asserted claims required modifications to BIOS. *See id.* Ex. B-1 at claims 1, 6. The Alibaba

23  Defendants provided unrefuted evidence that ████████████████████████████

24  ████████████. *See, e.g.*, *id.* Ex. M at 35:10-14; Ex. K at 63-89. Additionally, the asserted '677

25  Patent claims required virtual cabinets that allowed hot swapping between operating systems. *See*

26  *id.* Ex. B-1 at claims 1, 6. Again, the Alibaba Defendants provided uncontroverted evidence that

27  ████████████████████████████████████████████████████████

28  ████████████████    *See, e.g.*, *id.* Ex. K at 63-89. Notwithstanding this evidence, GEMSA

plowed forward, offering no evidence in response, and blindly maintaining its allegations. GEMSA never even undertook the opportunity to inspect the source code Alibaba made available during discovery. *Id.* ¶ 10; Ex. H. This conduct of "[f]ailing to develop any evidence to support an infringement position 'stands out from others with respect to the substantive strength of a party's litigating position.'" *IPVX Patent Holdings, Inc. v. Voxernet LLC*, 2014 WL 5795545, at *5 (N.D. Cal. Nov. 6, 2014) (quoting *Octane Fitness,* 134 S.Ct. at 1756) (finding case "exceptional" because, among other things, plaintiff "failed to present any evidence to support" its central infringement argument in the case); *see also Segan LLC v. Zynga Inc*, 131 F. Supp. 3d 956, 962–63 (N.D. Cal. 2015).

GEMSA's infringement positions against eBay were similarly unreasonable. GEMSA did not bother to conduct meaningful discovery of eBay, and did not inspect the source code eBay made available during discovery despite the fact that the asserted claims are indisputably directed to software functionality. Weed Decl. at ¶ 21.

With respect to the '400 Patent, GEMSA never identified any GUI element in eBay's accused instrumentality that interacted with "partitions" of hard disk drives in any way. *Id.* at ¶ 4 Ex. 3. Nor did GEMSA ever identify anything resembling a "partition," as required by the one remaining '400 Patent claim. *Id.*at ¶ 5, Ex. 4 at ¶ 22. With regard to the '677 Patent, GEMSA's allegations against eBay attempted to read the claims of that patent on fundamental, decades-old Virtual Machine Manager scheduler functionality. Yet nowhere in the '677 Patent is there any disclosure of this type of functionality. *Id.* at ¶ 25. Instead, the '677 Patent is directed to a very specific situation where a system permits a user to switch from one operating system to another quickly and without rebooting. This specific functionality was simply not present in any of the accused eBay technology, as eBay repeatedly told GEMSA to no avail. *See, e.g.*, *id.* Exs. 2, 4, 6, 8. GEMSA also did not make any effort to identify the interaction of the functionality it relied on as alleged "switching" with the system's BIOS or ACPI functionality.

GEMSA's validity positions were also objectively baseless. Despite a presumption of validity, GEMSA's patents were invalidated through claim construction (a rare occurrence) and before the PTAB based on readily-available prior art attributable to industry players. *Id.* Ex. 17.

Defendants' Brief in support of Motion for
Entitlement to Attorney's Fees and Costs                18                3:17-cv-02177-WHA;
3:17-cv-02178-WHA; 3:17-cv-02435-WHA

The weakness of GEMSA's '400 Patent was even acknowledged by third parties, with the Electronic Frontier Foundation bestowing upon the '400 Patent the dubious recognition of "stupid patent of the month" in June 2016. *Id.* Ex. 18. If the case had continued past IPR proceedings, Defendants are confident that at least the one remaining claim of the '400 Patent that survived Judge Payne's claim construction order would have been found invalid as patent ineligible subject matter pursuant to 35 U.S.C. § 101, given that the claims are directed purely at a GUI with no associated structure. *See, e.g.*, *id.* Ex. 5; Ramos Decl. Ex. Q.

GEMSA's damages positions were also objectively unreasonable and unhinged from any damages case law. GEMSA and its counsel made no attempt to fit their damages demands within the reasonable royalty or lost profits framework. Rather, GEMSA picked numbers based on Defendants' ***total net revenue***—with no legal basis or explanation whatsoever on how such a tactic would ever hold up. *See, e.g.*, Weed Decl. at ¶14; *id.* Ex. 7. Indeed, GEMSA's damages expert, Mr. Bratic, is frequently a plaintiff's side expert and usually presents opinions that would award his clients inordinately high recovery in the event of patent infringement findings.[5] Despite the fact that the purportedly-infringing features of the eBay cloud solution had ***nothing whatsoever*** to do with customers' ability to participate in eBay's marketplace (of which eBay informed GEMSA numerous times in correspondence) (*id.* Exs. 2, 6, 8), Mr. Bratic opined that GEMSA was entitled to half of eBay's pertinent ***revenues***. *Id.* Ex. 7. He took this position contrary to the entire market value rule, which states that a patentee may "assess damages based on the entire market value of the accused product only where the patented feature creates the basis for customer demand or substantially creates the value of the component parts." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011). There is no conceivable scenario where eBay's alleged use of back-end virtualization creates the basis for user demand or substantially creates the value of www.ebay.com. Compounding this point, Mr. Bratic's nine-figure damages ask was only for past damages, and was only for purported infringement of the '677 Patent. *Id.*. eBay's expert proposed

---

[5] Mr. Bratic's patent damages opinions have been excluded on multiple occasions. *See, e.g.*, *NetFuel, Inc. v. Cisco Sys. Inc.*, 2020 WL 1274985, at *6-15 (N.D. Cal. Mar. 17, 2020); *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 2013 WL 936449, at *3-4 (D. Del. Mar. 11, 2013).

DEFENDANTS' BRIEF in support of MOTION for
ENTITLEMENT TO ATTORNEY'S FEES AND COSTS          19          3:17-cv-02177-WHA;
                                                              3:17-cv-02178-WHA; 3:17-cv-02435-WHA

a reasonable, six-figure, lump-sum royalty in the event infringement was found and consistent with the law; this proper approach underscores the baseless position GEMSA (and its damages expert) took during the case.

2.   GEMSA's Cases Against Defendants "Stand Out" With Respect To The Manner In Which GEMSA And Its Counsel Litigated

GEMSA's cases against Defendants are also "exceptional" under section 285 because of the manner in which GEMSA and its counsel litigated the cases. At the time GEMSA filed suit, it had no reasonable basis for alleging infringement. From that time forward, GEMSA engaged in a shifting sands, grab-bag approach to litigation, constantly changing its infringement contentions in response to the deficiencies Defendants identified in its theories until the close of fact discovery. Even with these continuous changes, GEMSA was still unable to conjure an infringement theory supported by any evidence. This behavior typifies an "exceptional" case. *See, e.g.*, *Kilopass Tech. Inc. v. Sidense Corp.*, 2014 WL 3956703, at *14 (N.D. Cal. Aug. 12, 2014) (awarding fees because, among other things, plaintiff "litigated the present action in an unreasonable manner by failing to conduct an adequate pre-filing investigation, shifting its theories of infringement late in the litigation and without following the proper procedures for amendment of contentions, and engaging in conduct that at times amounted to gamesmanship."). GEMSA exacerbated matters by stipulating to dismiss Alibaba Holding from the case as part of an agreement between the parties regarding discovery, and then separately suing Alibaba Holding and several other Alibaba entities without explanation or a plausible infringement theory. Ramos Decl. ¶ 8. This second case further increased the Alibaba Defendants' costs of defending against baseless allegations.

Most importantly, GEMSA ignored Defendants' repeated, detailed explanations on why its infringement positions were incorrect and refuted by the evidence, highlighted (again) by its failure to inspect Alibaba Defendants' and eBay's produced source code. *Id.* at ¶ 10; Ex. H. This failure to expend necessary resources to prove its case while deliberately ignoring exculpatory evidence "stands out" and warrants an award of fees. *See, e.g.*, *IPVX Patent Holdings, Inc. v. Voxernet LLC*, 2014 WL 5795545, at *6 (N.D. Cal. Nov. 6, 2014) ("Most importantly, [plaintiff] did not expend the resources necessary to support its positions on infringement. [Plaintiff]

repeatedly relied on attorney argument where facts were required. . . . From the litigation conduct in this case, it appears that [plaintiff] is actually *not* willing to invest the resources to prove up its infringement case. Deterring similar behavior—filing a patent infringement suit but being unwilling to expend the resources necessary to support the infringement claims—is an appropriate consideration in awarding fees."); *Max Sound Corp. v. Google, Inc.*, 2017 WL 4536342, at *10 (N.D. Cal. Oct. 11, 2017).[6]

GEMSA's and its counsel's conduct during settlement discussions and mediation demonstrate subjective bad faith. Courts have found that a plaintiff's behavior in settlement discussions can be used to support an award of attorneys' fees. *See, e.g., Blackbird Tech LLC v. Health In Motion LLC*, 944 F.3d 910, 916 (Fed. Cir. 2019) (considering plaintiff's settlement positions in support of finding that the case was "exceptional" under section 285); *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011); *Kim Laube & Co., Inc. v. Wahl Clipper Corp.*, 2014 WL 12461044, at *8 (C.D. Cal. Mar. 17, 2014).

Here, GEMSA's and its counsel's settlement behavior warrant a finding that this case is "exceptional." Notwithstanding the evidence continuously confirming non-infringement discussed above, GEMSA's settlement demands *increased* over the course of the case. GEMSA had no objective basis for their initial settlement demands of ███████ against the Alibaba Defendants and ██████ against eBay. Yet, after Defendants repeatedly demonstrated the fatal factual misassumptions in GEMSA's infringement theories, and less than two weeks after Judge Payne invalidated *half* of its asserted claims, GEMSA and its counsel increased their settlement demands against the Alibaba Defendants by ██████ and ██████ for eBay, completely unhinged from any plausible theory of infringement or damages. Ramos Decl. Exs. U, V; Weed Decl. at ¶ 9. And the fact that GEMSA's own damages expert was only able to conjure up (through many flawed assumptions and methodologies) ████████████████████████████████████
████████████████████████████████████████████

---

[6] *See also Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013) ("a case can be found exceptional when a party prolongs litigation in bad faith."); *Eltech Systems Corp. v. PPG Indus.*, 903 F.2d 805, 811 (Fed. Cir. 1990); *Kim Laube & Co., Inc. v. Wahl Clipper Corp.*, 2014 WL 12461044, at *10 (C.D. Cal. Mar. 17, 2014).

1    ████████████████████████████████████████, further underscores GEMSA's and its

2    counsel's bad faith. *See* Ramos Decl. Ex. L at 43–48; Weed Decl. Ex. 7. GEMSA's and its

3    counsel's conduct during mediation confirmed their goal of using the court system merely to extort

4    money from the Defendants. Counsel for GEMSA emphasized that ██████████████████

5    ████████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████████

7    ████████████    Shang Decl. ¶ 4. The moment the case was transferred out of their "home court" to

8    this Court, GEMSA's counsel sought to withdraw, leaving others to clean up the protracted mess

9    they had made. *See supra* at Section II.F.

10    GEMSA and its counsel also needlessly prolonged this dispute when it was long past clear

11    that GEMSA had nothing left to grasp onto—appealing the PTAB's invalidity findings to the

12    Federal Circuit based on a tangential real-party-in-interest theory that was admittedly doomed to

13    fail. Weed Decl. Exs. 19, 20. Defendants are thus entitled to recover fees incurred for proceedings

14    before the PTAB and Federal Circuit as well. *See, e.g.*, *Munchkin, Inc. v. Luv N' Care, Ltd.*, 2018

15    WL 7504404, at *7 (C.D. Cal. Dec. 27, 2018) (awarding fees for IPR proceeding and subsequent

16    Federal Circuit appeal because "[b]ut for the filing of the patent infringement claim in this case,

17    LNC would not have incurred attorneys' fees and costs for the IPR and Federal Circuit appeal.").

18    Indeed, GEMSA's and its counsel's course of conduct through this case highlights their

19    likely failure to have properly conducted a pre-suit investigation, particularly for Defendants,

20    choosing instead to launch an unfounded, massive litigation campaign with copy-paste allegations

21    and no intention of accurately assessing the merits of their claims. *See, e.g.*, *SFA Sys., LLC v.*

22    *Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015).

23    Defendants are entitled to recover their fees and costs pursuant to Section 285 because

24    these cases "stand[] out" both for GEMSA's and its counsel's objectively baseless litigation

25    positions, and the unreasonable and harassing manner in which they litigated the cases.

26    **B.    The Court Should Exercise Its Inherent Authority to Award Defendants Their**

27    **Fees And Costs Because GEMSA's Lawsuits Were Conducted In Bad Faith**

28    The Court should impose also sanctions under its inherent authority. GEMSA lacked a

viable patent claim against Defendants from day one and knew (or should have known) as much.
"To impose sanctions under its inherent authority, the district court must make an explicit finding
. . . that counsel's conduct constituted or was tantamount to bad faith." *Christian v. Mattel, Inc.*,
286 F.3d 1118, 1131 (9th Cir. 2002). "Sanctions [under a court's inherent authority] are available
for a variety of types of willful actions, including recklessness when combined with an additional
factor such as frivolousness harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989,
994 (9th Cir. 2001). A district court's inherent equitable power and informed discretion allow it to
award expenses in addition to those expressly identified in 35 U.S.C. § 285. *Mathis v. Spears*, 857
F.2d 749, 755–56 (Fed. Cir. 1988); *see also A & L Tech. v. Resound Corp.*, 1995 WL 415146, at
*4 (N.D. Cal. June 29, 1995) (awarding expert fees pursuant to the court's inherent authority);
*Thermolife Int'l LLC v. Myogenix Corp.*, 2018 WL 325025, at *13–14 (S.D. Cal. Jan. 8, 2018).

Here, GEMSA and its counsel acted in bad faith. As explained above, GEMSA and its
counsel continued to push these cases even after the overwhelming evidence demonstrated
GEMSA's infringement theories did not hold water. GEMSA's and its counsel's conduct during
settlement and mediation revealed their true desire to extort money from Defendants ███████
████ irrespective of the fundamental flaws in GEMSA's case. And when the door was shut on
this play via transfer of the case to this Court, GEMSA's counsel sought immediate withdrawal.
At that point, GEMSA found alternative counsel that allowed it to unnecessarily drag out the
proceedings by, among other things, appealing the PTAB's IPR decisions to the Federal Circuit
on a tangential theory that was admittedly never supported by any evidence. At every turn,
GEMSA pushed this litigation without any evidence and contrary to prevailing law, forcing
Defendants to expend resources to defend against unfounded allegations.

GEMSA's and its counsel's bad faith conduct throughout this litigation separately warrants
an award of fees and costs pursuant to the Court's inherent authority.

**C.**     **GEMSA's Attorneys Should Be Held Jointly Liable For All Of Defendants'
Fees and Costs Under 28 U.S.C. § 1927 Because They Recklessly Multiplied
The Proceedings Unreasonably and Vexatiously**

GEMSA's counsel recklessly multiplied these proceedings unreasonably and vexatiously

by litigating claims that could not meet the standard for infringement or validity from the outset. 28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personal the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Section 1927 sanctions may be awarded where an attorney's conduct was "reckless or in bad faith." *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 490 (9th Cir. 1988).

Here, as officers of the court and faced with the evidence of record and an inability to prove its case, GEMSA's counsel should have counseled GEMSA to withdraw its case. Instead, GEMSA's counsel continued litigating the cases through fact and expert discovery despite the lack of a plausible infringement theory against any of the Defendants and mounting invalidity findings. GEMSA further dragged Alibaba Holding and other Alibaba entities into the suit after expressly agreeing to drop Alibaba Holding from the case. And GEMSA appealed to the Federal Circuit a frivolous real-party-in-interest argument with no supporting factual or legal bases suggesting a chance of success in those proceedings. Weed Decl. Exs. 19, 20. This conduct, in total, which "unreasonably and vexatiously" multiplied the proceedings, was reckless at best and rises to the level of bad faith, warranting an award of fees and costs pursuant to section 1927. *See, e.g.*, *Ltd. v. Compal Elecs. Inc Grp.*, 2015 WL 11570939, at *8 (S.D. Cal. Dec. 11, 2015) ("Plaintiff refused to dismiss this case despite assurances and evidence from Defendants that they were not involved with the accused products. The Court also finds Plaintiff's pre-filing investigation was inadequate. Both courses of conduct were unreasonable and vexatious, and support an award of fees and costs under § 1927."); *Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enterprises, Inc. (U.S.A.)*, 2009 WL 9137315, at *4 (C.D. Cal. Dec. 14, 2009) ("The continued unreasonable assertion of infringement, particularly in the absence of an additional investigation or testing . . . unreasonably and vexatiously multiplied the proceedings in this case.").

Accordingly, GEMSA's counsel should be held jointly liable for all of Defendants' fees and costs pursuant to 28 U.S.C. § 1927.

### D.    Estimate Of The Fees And Costs Defendants Seek

Pursuant to the Court's order, Defendants provide a ballpark estimate of their requested

fees. *See, e.g.*, Dkt. 161 in Civil Action No. 17-cv-02177 at 1. Should the Court find that the Alibaba Defendants are entitled to fees and costs, they will request a total of around $2,500,000— with around $2,100,000 in fees, and around $400,000 in costs and expenses. eBay's request will total approximately $1,000,000, with around $850,000 in fees and $150,000 in costs and expenses.

Defendants note that, based on the facts of this case, Defendants' requests for fees and costs are well below what has been deemed reasonable by other courts, including courts within this District. For example, in *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1175 (N.D. Cal. 2015), the court awarded $5,315,315.01 in fees and $220,630.53 in costs for a case that extended through summary judgment—only slightly beyond the procedural posture of this case. Similarly, in *Qualcomm Inc. v. Broadcom Corp.*, the district court awarded $8,568,633.24 in fees and costs in a patent litigation case that proceeded through trial. WL 9677112, at *9 (S.D. Cal. Oct. 29, 2007). Defendants will further detail the amounts requested in the next round of briefing as necessary and as directed by the Court.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for entitlement to attorneys' fees and costs.

Dated:  May 19, 2020

Respectfully submitted,

**K&L GATES LLP**

By: /s/ *Benjamin E. Weed*
Benjamin E. Weed
Illinois Bar No. 6294052
benjamin.weed@klgates.com
Gina A. Jenero
Illinois Bar No. 6320853
Gina.jenero@klgates.com
70 West Madison Street, Suite 3300
Chicago, IL 60602
312.372.1121
312.827.8000 *Facsimile*

*Attorneys for eBay, Inc.*

1

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

2

By: */s/ Carey R. Ramos*

3

David Eiseman (Bar No. 114758)
davideiseman@quinnemanuel.com
Nathan Sun (Bar No. 284782)

4

nathansun@quinnemanuel.com
50 California Street, 22nd floor

5

San Francisco, CA  94111
Telephone: 415.875.6600

6

Facsimile: 415.875.6700

7

Carey R. Ramos (*admitted pro hac vice*)

8

careyramos@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010

9

Telephone: 212.849.7000
Facsimile: 212.849.7100

10

11

Jeffrey S. Gerchick (*admitted pro hac vice*)
jeffgerchick@quinnemanuel.com

12

1300 I St NW, Suite 900
Washington, DC 20005

13

Telephone:  202.538.8000
Facsimile: 202.538.8100

14

Brett N. Watkins (*admitted pro hac vice*)

15

brettwatkins@quinnemanuel.com
711 Louisiana St., Suite 500

16

Houston, TX 77002
Telephone:  713.221.7000

17

Facsimile: 713.221.7100

18

*Attorneys for Defendants Alibaba.com, Inc.,
Alibaba Singapore E-Commerce Private Ltd., and*

19

*Alibaba.com Hong Kong Ltd. (Case No. 3:17-cv-
02177-WHA)*

20

*Attorneys for Defendants Nimbus Development Inc.,
Alibaba Cloud Computing, Ltd., and Alibaba Group*

21

*Holding Ltd. (Case No. 3:17-cv-02435-WHA)*

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel who have entered an appearance in this action.

Dated:  May 19, 2020          /s/ *Nathan Sun*
                              Nathan Sun

Defendants' Brief in support of Motion for
Entitlement to Attorney's Fees and Costs          27          3:17-cv-02177-WHA;
3:17-cv-02178-WHA; 3:17-cv-02435-WHA