James A. Murphy (SBN 062223)
JMurphy@mpbf.com
MURPHY, PEARSON, BRADLEY & FEENEY
580 California Street, Suite 1100
San Francisco, CA 94104-1032
T: (415) 788-1900 / F: (415) 393-8087

William P. Ramey, III
Texas Bar No. 24027643
wramey@rameyfirm.com
RAMEY & SCHWALLER, LLP
5020 Montrose Blvd., Suite 750
Houston, TX 77006
T: (713) 426-3923 / F: (832) 900-4941

Richard N. Laminack
Texas Bar No. 11850350
rickl@lpm-triallaw.com
LAMINACK, PIRTLE & MARTINES, L.L.P.
5020 Montrose Blvd., 9th Floor
Houston, TX 77006-6533
T: (713) 292-2750 / F: (713)292-2755

*Attorneys for "Counsel"*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL EQUITY MANAGEMENT (SA) PTY. LTD., <br><br> Plaintiff, <br><br> v. <br><br> ALIBABA GROUP HOLDING, LTD., ET AL., <br><br> Defendants. | Case No. 3:17-cv-02177-WHA <br> Case No. 3:17-cv-02178-WHA <br> Case No. 3:17-cv-02435-WHA <br><br> **THE ATTORNEYS' COMBINED OPPOSITIONS TO DEFENDANTS' MOTION FOR ENTITLEMENT TO ATTORNEYS' FEES AND COSTS** <br><br> **Judge:  Hon. William H. Alsup** <br><br> **Telephonic Hearing Date:  August 6, 2020** <br> **Time:                          8:00 a.m.** |

# **TABLE OF CONTENTS**

I.    THE REQUEST FOR FEES AGAINST LPM AND R&S SHOULD BE DENIED ......... 1

    A.    Defendants' Motion Lacks the Specificity Required by the Supreme Court and the Ninth Circuit .......................................................................................... 1

    B.    Defendants Blur the Distinction between 35 U.S.C. § 285 ("§ 285") and § 1927 .................................................................................................................... 3

    C.    R&S and LPM Properly and Competently Represented GEMSA ......................... 4

        1.    Pre-filing investigations ............................................................................... 4

        2.    Infringement contentions .............................................................................. 6

        3.    Mediation ...................................................................................................... 7

        4.    LPM and R&S Believed in the Merits of These Cases ................................. 7

    D.    Defendants Cannot Meet the High Bar Required Under § 1927 ........................... 8

    E.    No Fees Should Be Awarded Fees Under the Court's Inherent Authority ............. 9

    F.    There Is No Joint Liability Under § 1927 ........................................................... 10

    G.    GEMSA's Litigation Position Does Not "Stand Out" and Is Not "Exceptional" ...................................................................................................... 11

    H.    GEMSA's Settlement and Mediation Conduct Is Not Proper Evidence, and in Any Event, Was Not Conducted in Bad Faith ................................................ 12

    I.    Conclusion by the LPM and R&S Attorneys ...................................................... 16

II.   THE REQUEST FOR FEES AGAINST BK SHOULD BE DENIED ........................... 16

    A.    Defendants' Misleading Use of the Word "Counsel" .......................................... 17

    B.    Defendants Have Failed to Meet Their Burden of Proof ..................................... 19

        1.    Defendants improperly seek § 1927 sanctions against BK ......................... 19

        2.    Defendants do not identify any "but for" action that caused excess fees ............................................................................................................... 19

    C.    Defendants' Motion Violates the BK Attorneys' Due Process Rights ................ 20

    D.    Defendants' Reply Brief Cannot Cure These Failures ........................................ 21

    E.    There Is No Basis to Award Fees for the Work Performed on the Appeal (or the IPRs) ............................................................................................................. 21

    F.    Defendants' Accusations Against BK Are Without Merit ................................... 22

i

THE ATTORNEYS' COMBINED OPPOSITIONS TO DEFENDANTS' MOTION FOR ENTITLEMENT TO ATTORNEYS' FEES AND COSTS -- 3:17-cv-02177-WHA; 3:17-cv-02178-WHA; 3:17-cv-02435-WHA

1.      The appeal was not frivolous nor extorsion ................................................ 22

2.      The IPRs on the '400 and '766 patents ...................................................... 24

3.      Termination under 35 U.S.C. § 315 (a)(1) ................................................. 24

4.      GEMSA vigorously and substantively contested obviousness in the IPRs ...................................................................................................................... 25

5.      The Federal Circuit appeal ........................................................................ 25

G.      BK California Attorneys Did Not Cause Defendants to Incur Excess Fees ......... 27

H.      This Court Does Not Have Jurisdiction Over the BK Michigan Attorneys ......... 29

I.      There Can Be No Joint Liability ..................................................................... 29

1.      BK cannot be jointly liable with GEMSA ................................................. 29

2.      BK cannot be jointly liable with previous counsel ................................... 30

J.      Conclusion by the BK Attorneys .................................................................... 30

ii

THE ATTORNEYS' COMBINED OPPOSITIONS TO DEFENDANTS' MOTION FOR ENTITLEMENT TO
ATTORNEYS' FEES AND COSTS -- 3:17-cv-02177-WHA; 3:17-cv-02178-WHA; 3:17-cv-02435-WHA

1

## **TABLE OF AUTHORITIES**

2

### **Cases**

3

*AF Holdings LLC v. Navasca*,

4
  2013 U.S. Dist. LEXIS 149169 at *54; 2013 WL 5701104 (N.D. Cal. Oct. 16, 2013)  20, 29

5

*Alphonso v. Pitney Bowes, Inc.*,
  356 F.Supp.2d 442 (D.N.J. 2005) ........................................................................................13

6

7

*Amneal Pharms. LLC v. Almirall, LLC*,
  __F.3d__, (Fed. Cir. 2020) (No. 2020-1106) ......................................................................22

8

*Applications in Internet Time, LLC v. RPX Corp.*,

9
  897 F.3d 1336 (Fed. Cir. 2018) ...........................................................................................26

10

*Areizaga v. ADW Corp.*,
  796 Fed. Appx. 205 (5th Cir. 2020) .....................................................................................13

11

*Avocet Sports Tech. Inc v. Polar Electro Inc*,

12
  2013 WL 4067823, at *2 (N.D. Cal. Aug. 1, 2013).............................................................12

13

*B.K.B. v. Maui Police Dep't.*,

14
  276 F.3d 1091 (9th Cir. 2002) ............................................................................................. 8

15

*Barnd v. Tacoma*,
  664 F.2d 1339 (9th Cir. 1982) ............................................................................................. 8

16

17

*Blackbird Tech LLC v. Health In Motion LLC*,
  944 F.3d 910 (Fed. Cir. 2019).............................................................................................14

18

*Blixseth v. Yellowstone Mountain Club, LLC*,

19
  796 F.3d 1004 (9th Cir. 2015) .........................................................................................8, 9

20

*Cassel v. Superior Court*,
  51 Cal. 4th 113, 244 P.3d 1080 (2011) ...............................................................................13

21

22

*Chevron U.S.A., Inc. v. SSD& Assocs.*,
  2006 U.S. Dist. LEXIS 53969, at *19 (N.D. Cal. July 21, 2006)........................................21

23

*Christian v. Mattel, Inc.*,

24
  286 F.3d 1118 (9th Cir. 2002) .........................................................................................9, 10

25

*ClearValue, Inc. v. Pearl River Polymers, Inc.*,
  560 F.3d 1291 (Fed. Cir. 2009)........................................................................................9, 10

26

27

*Click-To-Call Techs., LP v. Ingenio, Inc.*,
  899 F.3d 1321 (Fed. Cir. 2018)...........................................................................................26

28

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir. 1977) ................................................................20

*F.T.C. v. Commerce Planet, Inc.*,
    815 F.3d 593 (9th Cir. 2016) ................................................................16

*Fink v. Gomez*,
    239 F.3d 989 (9th Cir. 2001) ..................................................................9

*Flip Side Prods. v. Jam Prods.*,
    843 F.2d 1024 (7th Cir. 1988) ..............................................................23

*FTC v. Alaska Land Leasing, Inc.*,
    799 F.2d 507  (9th Cir. 1986) ................................................................29

*Goodyear Tire & Rubber Co. v. Haeger*,
    137 S. Ct. 1178 (2017) ..........................................................1, 2, 19, 30

*Gust, Inc., v. Alphacap Ventures, LLC*,
    905 F.3d 1321 (Fed. Cir. 2018) ........................................................2, 15

*Healey v. Chelsea Resources, Ltd.*,
    947 F.2d 611 (2d Cir. 1991) ...................................................................4

*iLOR, LLC v. Google, Inc.*,
    631 F.3d 1372 (Fed. Cir. 2011) ............................................................12

*In re DeVille*,
    361 F.3d 539 (9th Cir. 2004) ................................................................20

*In re Gould*,
    77 Fed. Appx. 155  (4th Cir. 2003) ........................................................3

*In re TCI Ltd.*,
    769 F.2d 441 (7th Cir. 1985) ................................................................12

*Ingram v. Oroudjian*,
    647 F.3d 925 (9th Cir. 2011) ................................................................14

*Kaass Law v. Wells Fargo Bank, N.A.*,
    799 F.3d 1290 (9th Cir. 2015) ..........................................................2, 19

*Kim Laube & Co., Inc. v. Wahl Clipper Corp.*,
    2014 WL 12461044, at *8 (C.D. Cal. Mar. 17, 2014) ...........................14

*Lu v. United States*,
    921 F.3d 850 (9th Cir. 2019) ...............................................2, 19, 20, 30

*Lucas v. Jos. A. Bank Clothiers, Inc.*,
  217 F.Supp.3d 1200 (S.D. Cal. 2016) ....................................................................9

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*,
  603 F.3d 943 (Fed. Cir. 2010) .............................................................................12

*Milhouse v. Travelers Commercial Ins. Co.*,
  982 F.Supp.2d 1088 (C.D. Cal. 2013), aff'd, 641 Fed. Appx. 714 (9th Cir. 2016) ..............13

*Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*,
  407 F.2d 288 (9th Cir. 1969) ................................................................................4

*Munchkin, Inc. v. Luv N' Care, Ltd.*,
  2018 WL 7504404 (C.D. Cal. Dec. 27, 2018) .........................................................22

*Padgett v. Loventhal*,
  2019 WL 6771815, at *2 n. 2 (N.D. Cal. Dec. 12, 2019) ......................................23, 27

*Par Pharm., Inc. v. Twi Pharms., Inc.*,
  2016 U.S. Dist. LEXIS 133009 at *6 (D. Md. Sep. 27, 2016) .....................................8

*Phonometrics, Inc. v. ITT Sheraton Corp.*,
  64 Fed. Appx. 219 (Fed. Cir. 2003) ...................................................................3, 10

*Polk v. Beard*,
  2014 WL 4757503, at *1 (C.D. Cal. Sept. 23, 2014),
  aff'd, 692 Fed. Appx. 938 (9th Cir. 2017) ..............................................................3

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
  115 F.3d 644 (9th Cir. 1997) ...............................................................................29

*Rates Tech. Inc. v. Broadvox Holding Co., LLC*,
  56 F.Supp.3d 515 (S.D.N.Y. 2014) .......................................................................4

*Sneller v. City of Bainbridge Island*,
  606 F.3d 636 (9th Cir. 2010) ..............................................................................29

*Stillman v. Edmund Sci. Co.*,
  522 F.2d 798 (4th Cir. 1975) ................................................................................4

*Tech. Props. Ltd. LLC v. Canon Inc.*,
  2017 U.S. Dist. LEXIS 144204, at *16 (N.D. Cal. Jan. 26, 2017) ..............................10

*Tri-Star Pictures, Inc. v. Unger*,
  42 F.Supp.2d 296 (S.D. N.Y. 1999) ................................................................18, 30

*Tull v. United States*,
  481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) ............................................16

*United States v. Lopez-Cruz*,
    730 F.3d 803 (9th Cir. 2013) ...........................................................21

*United States v. Wolfenbarger*,
    2020 U.S. Dist. LEXIS 90912, at *13-14 (N.D. Cal. May 22, 2020)...................21

*Worlds Inc. v. Bungie, Inc.*,
    903 F.3d 1237 (Fed. Cir. 2018)........................................................26

*Zamani v. Carnes*,
    491 F.3d 990 (9th Cir. 2007) ...........................................................21

**Statutes**

28 U.S.C. § 1927.............1, 2, 3, 4, 8, 9, 10, 11, 12, 13, 15, 16, 17, 19, 20, 21, 22, 25, 27, 28, 29, 30
35 U.S.C. § 103.................................................................................25
35 U.S.C. § 285.........................................................3, 4, 10, 11, 12, 15, 21, 22
35 U.S.C. § 315.....................................................................24, 25, 26, 27

**Other Authorities**

Cal. Civ. Code § 1431.1........................................................................10
Cal. Evid. Code § 1119 ....................................................................13, 14
Tex. Civ. Prac. & Rem. Code § 154.073 ...................................................13, 14

**Rules**

Fed. R. App. P. 38................................................................................23
Federal Rule of Evidence 408.........................................................12, 13, 14, 15

This response brief is being filed by the attorneys representing the three law firms from whom Defendants are seeking fees in the present motion, Laminack, Pirtle & Martines LLP ("LPM"), Ramey & Schwaller LLP ("R&S"), and Brooks Kushman P.C. ("BK").[1] LPM and R&S represented Global Equity Management (Sa) Pty. Ltd. ("GEMSA") until shortly after the lawsuits were transferred to this Court and stayed. Thereafter, two BK California attorneys entered appearances in these cases, while other BK Michigan attorneys represented GEMSA in the *Inter Partes* Reviews ("IPRs") at the U.S. Patent and Trademark Office ("PTO") and the subsequent appeal therefrom. While the pleading failures and legal deficiencies of Defendants' Motion apply to all counsel as discussed below, the factual allegations are different with respect to the attorneys of the different law firms.[2]

## I.     THE REQUEST FOR FEES AGAINST LPM AND R&S SHOULD BE DENIED

### A.     Defendants' Motion Lacks the Specificity Required by the Supreme Court and the Ninth Circuit

There is a fundamental problem with Defendants' Motion. Defendants fail to set forth or identify discrete allegations of what each individual attorney purportedly did that allegedly supports their request for sanctions.  This is required under Supreme Court and Ninth Circuit precedent and the plain language of 28 U.S.C. § 1927 ("§ 1927").[3] Defendants must prove what each attorney separately did to warrant an award of fees, and in particular, must prove that "but for" that attorney's specific conduct they would not have incurred the "excess" fees.  *Goodyear Tire & Rubber Co. v.*

---

[1] On June 2, 2020, BK sent GEMSA this Court's Order of June 1, 2020, granting BK's motion to withdraw and setting the briefing schedule on Defendants' Motion. GEMSA apparently has not hired new counsel and is not filing a response to this Motion. (*See* Cantor Decl. at ¶1.) Accordingly, this response is directed primarily to the request for fees from the attorneys and is being filed in a single brief as requested by the Court.

[2] Defendants' Motion also asks for an award of costs, but they are not entitled to such costs. A party claiming costs in this Court must serve and file an itemized taxable bill of costs with supporting documents and a sworn affidavit within 14 days of entry of Judgment (Local Rule 54-1(a)). As Defendants have failed to file a taxable bill of costs, they are deemed to have waived them (Local Rule 54-1(c)).

[3] § 1927 states, "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

THE ATTORNEYS' COMBINED OPPOSITIONS TO DEFENDANTS' MOTION FOR ENTITLEMENT TO ATTORNEYS' FEES AND COSTS -- 3:17-cv-02177-WHA; 3:17-cv-02178-WHA; 3:17-cv-02435-WHA

*Haeger*, 137 S. Ct. 1178, 1187 (2017); In *Lu v. United States*, 921 F.3d 850, 860 (9th Cir. 2019), the Ninth Circuit elaborated on the *Goodyear* standard, "In short, *Goodyear* clarified that when awarding attorneys' fees as a sanction for bad faith conduct, a district court must identify the conduct that abused the judicial process and, applying *Goodyear's* but-for standard, identify only those expenses that the wronged party would not have incurred but for the misconduct." Accordingly, "a district court making a bad faith fee award must determine 'whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct.' Thus, a court must generally engage in 'the grind of segregating individual expense items (a deposition here, a motion there)' or 'categories of such items (again, like expert discovery)' in order to determine which fees 'would not have been incurred except for the misconduct.'") *Id.* (citations omitted).

It is inexcusable that Defendants are asking for fees under § 1927 and the Court's inherent authority but fail to cite to the specificity by attorney requirement mandated by the Supreme Court and the Ninth Circuit. Defendants' Motion not only lacks this required specificity, but deliberately attempts to obscure any differentiation between the conduct of GEMSA and the conduct of its individual attorneys by lumping them together throughout their brief.

The need for specific allegations as to each individual attorney is even more  important as the Ninth Circuit has made it clear § 1927 sanctions cannot be levied against a law firm, "28 U.S.C. § 1927 does not permit the award of sanctions against a law firm." *Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015).[4]  In their Motion, Defendants only identify law firms, which are not the subject of § 1927 in this Circuit.  GEMSA has been represented by several individual attorneys from the three law firms, and Defendants' Motion makes no effort to distinguish the conduct of these individual attorneys. In the absence of specific allegations against specific attorneys, the attorneys cannot adequately defend themselves against such generic claims and allegations of bad faith conduct.

---

[4] Any appeal in this case will be to the Federal Circuit Court of Appeals.  The Federal Circuit will apply Ninth Circuit law to the § 1927 and inherent authority issues in this case.  *See, e.g.*, *Gust, Inc., v. Alphacap Ventures, LLC*, 905 F.3d 1321, 1327 (Fed. Cir. 2018).

Counsel for R&S, LPM and BK are entitled to receive fair notice of what Defendants' claims are and the factual and legal grounds upon which they rest as to <u>each attorney</u>. *See Polk v. Beard*, 2014 WL 4757503, at *1 (C.D. Cal. Sept. 23, 2014), aff'd, 692 Fed. Appx. 938 (9th Cir. 2017).

For example, where an attorney attended a § 1927 sanctions hearing, it was improper for the district court to sanction him in the absence of his being specifically named in the motion for sanctions. *In re Gould*, 77 Fed. Appx. 155, 160 (4th Cir. 2003). The attorney was not given proper notice of these sanctions which violated his due process rights.[5]  *Id.*  The same is true here where Defendants do not identify any allegations against a single individual attorney but lump all opposing counsel together with GEMSA and expect the court and/or opposing counsel to sort it all out and attempt to make sense of Defendants' generic allegations.

Defendants' failure to even attempt to meet the required specificity standard, and failure to cite the binding Supreme Court and Ninth Circuit precedent on § 1927 and the Court's inherent authority to this Court which set forth this standard, is enough by itself to deny Defendants' Motion as to LPM, R&S and BK and their individual attorneys.

**B.    Defendants Blur the Distinction between 35 U.S.C. § 285 ("§ 285") and § 1927**

The need for specific allegations as to each attorney is important because there is a clear distinction between § 285 sanctions against a party, and sanctions against attorneys under § 1927 and the Court's inherent authority.  While § 1927 and inherent authority allow sanctions to be assessed against attorneys, § 285 does not. *Phonometrics, Inc. v. ITT Sheraton Corp.,* 64 Fed. Appx. 219 (Fed. Cir. 2003) (non-precedential).[6]  "[S]ection 285 does not authorize sanctions

---

[5] The violation of the individual attorneys' due process rights in these cases is further discussed in Section II.C. below.

[6] "Section 285 is a fee shifting statute that in exceptional cases may require the losing party to reimburse the prevailing party its attorney fees. Sheraton has provided us with no legal basis for entering a fee award against the losing party's attorney under § 285. Section 1927, on the other hand, is limited to an award of fees against an attorney. Sheraton has provided us with no legal basis for holding the attorney's client liable for fees under § 1927. Thus, Phonometrics is not liable for fees awarded under § 1927; it can only be liable for fees awarded under § 285. Counsel for Phonometrics is not liable for fees awarded under § 285; it can only be liable for excess fees awarded under § 1927." *Phonometrics,* 64 Fed. Appx. at 222.

THE ATTORNEYS' COMBINED OPPOSITIONS TO DEFENDANTS' MOTION FOR ENTITLEMENT TO ATTORNEYS' FEES AND COSTS -- 3:17-cv-02177-WHA; 3:17-cv-02178-WHA; 3:17-cv-02435-WHA

against counsel." *Rates Tech. Inc. v. Broadvox Holding Co., LLC*, 56 F.Supp.3d 515, 527 (S.D.N.Y. 2014). "Section 285 . . . sanctions are directed to the parties, and it is not the purpose of the statute to discipline uncooperative or overzealous counsel." *Stillman v. Edmund Sci. Co.,* 522 F.2d 798, 800 (4th Cir. 1975). "The purpose of section 285 is not to discipline uncooperative counsel or counsel who is overzealous in the advocacy of his client's claims." *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.,* 407 F.2d 288, 297 (9th Cir. 1969). The *Monolith* court specifically disapproved the district court's reliance on counsel's litigation conduct in a patent case, rather than behavior realistically attributable to the litigant, in determining that a case was "exceptional." *Id.  See also Rates Tech.,* 56 F.Supp.3d at 526 ("no legal basis [exists under section 285] for entering a fee award against the losing party's attorney.") (quoting *Healey v. Chelsea Resources, Ltd.,* 947 F.2d 611, 624 (2d Cir. 1991)).

Defendants have totally failed, and not even attempted, to delineate the conduct of GEMSA under § 285 from the conduct of GEMSA's individual attorneys under § 1927 and the Court's inherent authority, instead opting to repeatedly complain of "GEMSA and its counsel."

**C.   R&S and LPM Properly and Competently Represented GEMSA[7]**

   **1.   Pre-filing investigations[8]**

In 2014 and 2015, R&S began developing a case for patent infringement against Alibaba under the claims of the U.S. Patent No. 6,690,400 ('400 patent).[9]  The investigation included the development of preliminary infringement charts that matched claim elements from the '400 patent to corresponding elements on the Alibaba web page. These charts were the basis for the later served

---

[7] A detailed analysis on the substantive merits of these cases in response to Defendants' conclusory allegations is not practical within the limits of this response.  If the Court desires such a detailed analysis on any aspect of the merits, R&S will be happy to provide this to the Court. Accordingly, this response is directed to the discrete allegations in Defendants' Motion.

[8] Alibaba uses letters for their Exhibits, and eBay uses numbers 1-20. To aid the Court, avoid confusion and reduce the number of documents to be filed, this opposition cites to the Exhibits of Defendants where appropriate as they are already in the record. Exhibits being filed with this opposition will begin with Exhibit 25, so all the Exhibits will have a unique number or letter.

[9] *See* Ramey Decl. at ¶¶ 6-11.

infringement contentions.  Counsel for LPM was contacted to work on the case based on their substantial trial practice in the Eastern District of Texas.  Counsel for R&S met with LPM to go over the merits of the case and LPM reasonably relied on R&S's analysis of the issues.  Thereafter, LPM was engaged by GEMSA.[10]  Counsel for R&S and LPM further developed the case for patent infringement against Alibaba and others through and after October 30, 2015, when, relying on the presumption of validity and the investigation of infringement, R&S and LPM filed a patent infringement lawsuit on behalf of and at the direction Schumann Rafizadeh ("Rafizadeh") of GEMSA against Defendants Alibaba.com, Inc., Alibaba.com Singapore E-Commerce Private Ltd., and Alibaba Group Holding, Ltd. (collectively "Alibaba") ("First Alibaba Lawsuit") and other e-commerce websites, including Priceline.com, kayak.com, booking.com and AirBnB.com, alleging infringement of the claims of the '400 patent in the Eastern District of Texas, Marshall Division.[11]

On or about January 29, 2016, counsel for R&S and counsel for LPM filed a patent infringement lawsuit against eBay in the Eastern District of Texas, Marshall Division alleging infringement of clams of the '400 patent after performing a due diligence comparable to the one done for the Alibaba defendants and again on behalf of and at the direction Rafizadeh.[12]

R&S and LPM continued to develop the case against Alibaba, eBay and the remaining defendants, including and after another due diligence review, adding claims of infringement of U.S. Patent No. 7,356,677 ('677 patent) to Alibaba's lawsuit on or about March 13, 2016 and to eBay's lawsuit on or about March 14, 2016.  Charts developed for the '677 patent ultimately became Plaintiff's infringement contentions for the '677 patent for each of the Alibaba defendants and the eBay defendant.[13]

---

[10] *See* Ramey Decl. at ¶ 9; Laminack Decl. at ¶ 2.
[11] Rather than answering the lawsuit, Priceline.com and Kayak.com settled with GEMSA.  The quick settlements bolstered counsel for R&S and counsel for LPM's resolve to continue the Litigation against the other defendants, to trial if necessary. *See* Ramey Decl. at ¶¶ 6-12.
[12] *See* Ramey Decl. at ¶ 12; Laminack Decl. at ¶ 2.
[13] *See* Ramey Decl. at ¶ 14.

THE ATTORNEYS' COMBINED OPPOSITIONS TO DEFENDANTS' MOTION FOR ENTITLEMENT TO ATTORNEYS' FEES AND COSTS -- 3:17-cv-02177-WHA; 3:17-cv-02178-WHA; 3:17-cv-02435-WHA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 2.    Infringement contentions

Counsel for R&S served GEMSA's preliminary infringement contentions against Alibaba on April 1, 2016.  Alibaba complained that it did not understand Plaintiff's April 1, 2016 Infringement Contentions and requested that GEMSA serve amended contentions by May 2, 2016. Counsel for R&S timely complied. In its introduction to its infringement contentions, GEMSA specifically provided what it was accusing of infringing - that Alibaba primarily operates on Alicloud ECS, XEN and OSS platform. Further, GEMSA explained in its contentions how the Alibaba GUI operates in conjunction with these platforms.[14] Alibaba never filed a motion to strike GEMSA's May 2, 2016 infringement contentions.  The May 2, 2016 infringement contentions were complete and cited source code, even considering that after five months Defendants had produced almost no documents and no source code regardless of the fact that the local rules in the Eastern District of Texas require production of relevant material without request.[15]

Through the remainder of 2016, GEMSA developed its case for trial as the case was then set for trial in Marshall, Texas, on May 2, 2017.  During that time, and after numerous discussions with counsel for Alibaba, a second lawsuit was filed against other Alibaba entities. ("Second Alibaba Lawsuit"). The Second Alibaba Lawsuit was necessary as counsel for Alibaba refused to cooperate and produce requested material.  Counsel for R&S investigated infringement and determined that the infringement charts previously prepared were sufficient.  Counsel for R&S began discussions with counsel for Alibaba about consolidating the First and Second Alibaba Lawsuits, but no agreement was reached.[16] Counsel for R&S served GEMSA's preliminary infringement contentions on May 9, 2016 against eBay and later that same day, counsel for R&S served GEMSA's supplemental infringement contentions. In section II of its infringement contentions, GEMSA specifically provided what it was accusing of infringing - that eBay primarily operates on eBay OpenStack, Horizon Dashboard, Nova VM Manger, Swift Object Store (SOS), Cinder Block Storage and XEN OpenStack Hypervisor platform. eBay did not file a motion to strike or otherwise credibly

---

[14] *See* Ramey Decl. at ¶¶ 15-21.
[15] http://www.txed.uscourts.gov/sites/default/files/LocalRules.pdf at Local Rule CV-26.
[16] *See* Ramey Decl. at ¶¶ 22-23.

contend that it did not understand GEMSA's infringement contentions. Through the remainder of 2016, GEMSA developed its case for trial as the case was then set for trial in Marshall, Texas, on June 19, 2017.[17] On December 22, 2016, Magistrate Judge Payne issued a Claim Construction Memorandum and Opinion construing disputed claim terms of the '400 patent and the '677 patent that failed to knock out any patent.[18]

### 3.   Mediation

In preparation for mediation that was scheduled for January 23-25 in San Francisco, GEMSA directed its counsel to serve final infringement contentions in the First Alibaba case detailing the case for infringement in an effort to facilitate settlement. The final infringement contentions were necessary after the Court's *Markman* Order invalidated certain asserted claims and defined certain other claim terms as means-plus-function claim terms, identifying specific structure from the patents.[19] The settlement offers made to the Alibaba Defendants and eBay throughout the case were made at the direction of Rafizadeh of GEMSA, including the settlement offers made at mediation. Counsel for R&S and counsel for LPM were not allowed input into the value of any settlement offer or to modify one without GEMSA's approval.[20] The mediation offer to Alibaba was a settlement offer for both the First and Second Alibaba Lawsuits. The Second Alibaba Lawsuit captured all revenue Alibaba earned from aliyun.com, not solely Alibaba.com. The majority of Alibaba's revenue comes from aliyun.com.[21]

### 4.   LPM and R&S Believed in the Merits of These Cases

Counsel at R&S and LPM were of the opinion that GEMSA's infringement position was extraordinarily strong. Plaintiff's expert report of Dr. Craig Rosenberg on infringement supports Plaintiff's final infringement contentions. Dr. Rosenberg tediously mapped each element of the asserted claims of the '400 patent and the '677 patent to Alibaba's accused systems and eBay's

---

[17] *See* Ramey Decl. at ¶¶ 24-29.
[18] *See* Ramey Decl. at ¶ 30.
[19] *See* Ramey Decl. at ¶ 30.
[20] *See* Ramey Decl. at ¶¶ 31-34.
[21] *See* Ramey Decl. at ¶ 34.

THE ATTORNEYS' COMBINED OPPOSITIONS TO DEFENDANTS' MOTION FOR ENTITLEMENT TO ATTORNEYS' FEES AND COSTS -- 3:17-cv-02177-WHA; 3:17-cv-02178-WHA; 3:17-cv-02435-WHA

accused systems.[22] No Court has ever ruled on Plaintiff's infringement position against Alibaba or eBay and no finding or judgment was ever made against Plaintiff on any of its infringement positions. Counsel for R&S and LPM, on GEMSA's behalf, consistently took the necessary steps to prepare the cases for trial against Alibaba[23] and eBay.[24] Counsel for R&S and counsel for LPM did not believe the prior art raised by Defendants would invalidate either the claims of the '400 patent or the claims of the '677 patent.  Additionally, counsel for R&S and LPM had an expert report of Dr. Craig Rosenberg confirming validity and, if needed, a declaration or testimony at trial from Eric Ruff regarding his Partition Magic product asserted by Defendants as prior art against the '400 patent.[25] While not ultimately successful, the cases against Alibaba and eBay were fairly routine patent litigation and at all times R&S and LPM properly, competently and in good faith represented GEMSA in these cases.[26]

## D.   Defendants Cannot Meet the High Bar Required Under § 1927

The language "unreasonably and vexatiously" prescribed in § 1927 requires a finding of "intent, recklessness or bad faith."[27]  The Ninth Circuit has made it clear that "[s]ection 1927 sanctions must be supported by a finding of subjective bad faith," which "is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."[28]

Courts are reluctant to impose § 1927 sanctions because "[s]anctioning an attorney is a grave decision with serious consequences for his or her reputation.  A sanctions motion alone is an

---

[22] *See* Ramey Decl. at ¶¶ 35, 40, and 44.

[23] *See* Ramey Decl. at ¶¶ 38-41.

[24] *See* Ramey Decl. at ¶¶ 42-46.

[25] While Defendants argue that the failure to cross examine Mr. Ruff would mean his deposition testimony would be unrebutted (Mot. at 8), R&S did not believe his testimony was damaging, and in any event Mr. Ruff was willing to provide a declaration or testify for GEMSA at trial. *See* Ramey Decl. at ¶¶ 53-54.

[26] *See* Ramey Decl. at ¶ 56; *See*, *Par Pharm., Inc. v. Twi Pharms., Inc.*, No. CCB-11-2466, 2016 U.S. Dist. LEXIS 133009 at *6 (D. Md. Sep. 27, 2016) (court not convinced that asserting losing litigation positions were activities that "fall outside the normal range of conduct by adversaries in litigation").

[27] *Barnd v. Tacoma*, 664 F.2d 1339, 1343 (9th Cir. 1982); *B.K.B. v. Maui Police Dep't.*, 276 F.3d 1091, 1107 (9th Cir. 2002).

[28] *B.K.B.*, 276 F.3d at 1107 (citation omitted); *see Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015).

accusation with the power to stigmatize.  For these reasons, the Court finds that when a lawyer's good name and professional honor are on the line, the party moving for sanctions must provide clear and convincing evidence." [29]

Defendants have completely failed to explain how each attorney for GEMSA engaged in bad faith conduct that should be sanctioned under § 1927.  Defendants' Motion simply does not meet the rigorous standards for an award of fees under § 1927.

**E.    No Fees Should Be Awarded Fees Under the Court's Inherent Authority**

Defendants also seek attorneys' fees under the Court's inherent authority to sanction parties. "[T]he district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." [30]  "To impose sanctions under its inherent authority, the district court 'must make an explicit finding ... that counsel's conduct constituted or was tantamount to bad faith.'" [31]

Inherent authority may potentially be used for imposing sanctions only when an applicable rule or statute cannot be used to impose sanctions for the situation. [32]  "'[T]he threshold for the use of inherent power sanctions is high [citation omitted] ... inherent power 'is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function.' [Citation omitted]." [33]  Notwithstanding, even if one were to ignore that

---

[29] *Lucas v. Jos. A. Bank Clothiers, Inc.*, 217 F.Supp.3d 1200, 1204 (S.D. Cal. 2016); For example, attorneys whose names appeared on frivolous appellate briefs were not sanctioned under § 1927, *Blixseth,* 796 F.3d at 1008 ("a finding of frivolousness does not automatically result in sanctions"). Counsel's conduct was not reckless under § 1927 even though the court held that the attorneys "should have done more to vet [a] class representative." *Lucas,* 217 F.Supp.3d at 1205. While the court in *Lucas* held that counsel's conduct was "sloppy" and "careless" while failing to "disregard an obvious risk that their client was deceiving them before filing suit," such conduct did not trigger § 1927.  *Id.*   Counsel even admitted to "altering the bank statement and failing to disclose the changes," calling it a mistake.  *Id.*  However, such "conduct is not cause for sanctions." *Id.*
[30] *Fink v. Gomez*, 239 F.3d 989, 993-994 (9th Cir. 2001) (the Court must specify the sanctionable conduct for each attorney).
[31] *Christian v. Mattel, Inc.,* 286 F.3d 1118, 1131 (9th Cir. 2002) (citation omitted); *Fink,* 239 F.3d at 992-94 (finding "mere recklessness, without more, does not justify sanctions under a court's inherent power" but that "[s]anctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose").
[32] *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291, 1309 (Fed. Cir. 2009).
[33] *See id.*

THE ATTORNEYS' COMBINED OPPOSITIONS TO DEFENDANTS' MOTION FOR ENTITLEMENT TO ATTORNEYS' FEES AND COSTS -- 3:17-cv-02177-WHA; 3:17-cv-02178-WHA; 3:17-cv-02435-WHA

1   inherent authority does not apply in view of the specific statutory provisions (§ 285 and § 1927);

2   inherent authority requires the same analysis as § 1927[34] and, thus, the same result as discussed

3   herein.

4       With respect to their request under the Court's inherent authority, Defendants reproduce the

5   same cursory § 285 arguments and provide no specificity by attorney or proof of bad faith.[35]  For

6   the same reasons as stated above, Defendants are not entitled to sanctions under the Court's inherent

7   authority.

8   **F.      There Is No Joint Liability Under § 1927**

9       As there can be no liability against counsel under § 285,[36] Defendants argue in one page that

10  GEMSA's counsel should be held jointly liable for all of Defendants' fees under § 1927 (Mot. at 23-

11  24).  In this section of their Motion, Defendants give a cursory overview of the allegations that relate

12  to their § 285 argument but do nothing to explain how this conduct applies and meets the higher bar

13  for sanctions under the Court's inherent authority or § 1927.[37]

14      Defendants fail to explain how GEMSA's counsel can be held jointly liable under § 1927.

15  Defendants have failed to identify what specific attorneys did in connection with their allegations

16  by deliberately lumping GEMSA and its counsel together.  Such a result is inconsistent with the plain

17  language of § 1927, and the required individual attorney analysis mandates of the Supreme Court

18  and the Ninth Circuit. It is also contrary to public policy in California that financial liability be

19  proportionate to the degree of fault.  Cal. Civ. Code § 1431.1 ("People of the State of California

20  declare that to remedy these inequities, defendants in tort actions shall be held financially liable in

21  closer proportion to their degree of fault. To treat them differently is unfair and inequitable.").

22

23  ───────────────
    [34] *ClearValue, Inc.,* 560 F.3d at 1309 n.10.
    [35] Mot. at 22-23.

24  [36] There can also be no joint liability under § 285, "Canon seeks to hold Plaintiffs' attorneys jointly
    and severally liable for attorneys' fees under § 285; however, Canon cites no authority for its
25  request, and both the text of the statute and applicable authority indicate the contrary." *Tech.
    Props. Ltd. LLC v. Canon Inc.*, No. C14-3640CW, 2017 U.S. Dist. LEXIS 144204, at *16 (N.D.
26  Cal. Jan. 26, 2017) (citing to *Phonometrics,* 64 Fed. Appx. at 222).

27  [37] *Christian,* 286 F.3d 1118, 1131 (9th Cir. 2002) ("Each of these sanctions alternatives has its own
    particular requirements, and it is important that the grounds be separately articulated to assure that
    the conduct at issue falls within the scope of the sanctions remedy.").

28
THE ATTORNEYS' COMBINED OPPOSITIONS TO DEFENDANTS' MOTION FOR ENTITLEMENT TO
ATTORNEYS' FEES AND COSTS -- 3:17-cv-02177-WHA; 3:17-cv-02178-WHA; 3:17-cv-02435-WHA

1   Defendants want this Court to hold all attorneys jointly liable, so regardless of what any specific
2   attorney actually did, Defendants can hand-pick the GEMSA attorney with the deepest pocket and
3   demand this attorney pay for it all.

4          Defendants ignore the fact that different attorneys had different roles and never worked
5   together. Some attorneys only represented GEMSA in Texas, while others represented GEMSA in
6   California. Some attorneys only represented GEMSA in litigation, while others represented GEMSA
7   in Patent and Trademark Office ("PTO") proceedings and a subsequent appeal. Some attorneys
8   worked on the substantive issues of patent law, while others were involved in the role of local
9   counsel.  Nevertheless, Defendants want this Court to ignore fundamental principles of due process
10  and improperly lump all these attorneys together in hopes that Defendants can ultimately force one
11  attorney in one state to pay for the unrelated conduct of GEMSA or another attorney in another state
12  based on an unrelated proceeding or allegation.  There is no joint liability here.

13  **G.     GEMSA's Litigation Position Does Not "Stand Out" and Is Not "Exceptional"**

14         Because the majority of the allegations against the attorneys are improperly lumped together
15  with the § 285 arguments against GEMSA, counsel will address these § 285 arguments out of an
16  abundance of caution, even though, as set forth above, Defendants have not met their burden with
17  respect to § 1927 or the inherent authority of the Court.

18         Defendants claim GEMSA's litigation positions are "exceptional" and "stand out" because
19  Defendants sent letters to GEMSA to this effect.[38]  However, whether a case is exceptional or stands
20  out are issues that relate solely to § 285 and not § 1927.  This is highlighted by the fact that this
21  section of Defendants' Motion is filled with cases that address § 285.  These § 285 arguments are
22  irrelevant with respect to counsel for R&S, LPM, and BK and § 1927 or the Court's inherent
23  authority.

24         Nevertheless, GEMSA's litigation position was not unreasonable or brought in bad faith.  As
25  discussed above, counsel for R&S has explained how the litigation position adopted by GEMSA
26
27  [38] Mot. at 20-22.
28

was reasonable and plausible given the facts of this case.[39]   Moreover, simply because a party

prevailed on the merits at trial does not mean that a party is entitled to attorneys' fees under § 1927.[40]

The standard of § 1927 must be met regardless of who prevailed at trial.   *Id.*   Before awarding

sanctions under § 285 a court must assess that the litigation position was without merit.   A plaintiff

is allowed to rely on the presumption of validity, absent a reason to question such presumption,[41]

and even if a patent is later held invalid, a court must still fully consider the plaintiff's infringement

position.[42]

Defendants argue that GEMSA and its counsel failed "to have properly conducted a pre-suit

investigation."[43]  Of course, Defendants do not explain any details regarding how the pre-suit

investigation was so deficient as to amount to bad faith on the part of GEMSA's counsel.   As set

forth above, a proper pre-filing investigation was performed.   Defendants have not met their burden

of proof on the "exceptional" requirements of § 285, let alone the higher bar and required specificity

to find a violation of § 1927 or the Court's inherent authority.

## H.    GEMSA's Settlement and Mediation Conduct Is Not Proper Evidence, and in Any Event, Was Not Conducted in Bad Faith

Defendants also argue that GEMSA counsel's settlement and mediation activities were

conducted in bad faith and amounted to "extortion."[44] Defendants improperly use privileged and

confidential information obtained during mediation and settlement efforts in their effort to concoct

bad faith.   Respondents object to this blatant breach of the mediation privilege and Rule 408 and

requests sanctions.

Mediation in this case was conducted in January 2017.   While the mediation took place in

San Francisco, the mediation occurred while these cases were still before the Eastern District of

---

[39] Likewise, the positions taken by BK in the IPRs and on the appeal therefrom were also reasonable and plausible given the facts of this case, as set forth in Section II.F. below.
[40] *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985).
[41] *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1377 (Fed. Cir. 2011); *Avocet Sports Tech. Inc v. Polar Electro Inc*, 2013 WL 4067823, at *2 (N.D. Cal. Aug. 1, 2013).
[42] *Id.*; *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010).
[43] Mot. at 22.
[44] Mot. at pgs. 2, 9,14, 22 and 23.

Texas.  The mediator was Houston attorney Lee Kaplan.  The letter from the mediator stated that all aspects of the mediation were confidential. "All mediation sessions shall be private, confidential and privileged from discovery."[45]

Texas law is clear—mediation and what takes place at mediation is protected and clearly privileged:

> (a) Except as provided by Subsections (c), (d), (e), and (f), a communication relating to the subject matter of any civil or criminal dispute made by a participant in an alternative dispute resolution procedure, whether before or after the institution of formal judicial proceedings, is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial or administrative proceeding.[46]

The same result would be reached under the careful protection of the mediation privilege under California law.[47]

For example, it was improper in a motion for § 1927 sanctions for a party to introduce into evidence a "settlement offer on the eve of trial" arguing that the offer demonstrates that the plaintiff's claims "were frivolous and vexatious."[48]  The court properly recognized that such evidence is improper and violates Rule 408 of the Federal Rules of Evidence.[49]  Accordingly, in the case at bar, such "argument on this point must be disregarded."[50]

---

[45] Exhibit 35 to the Laminack Declaration, and Laminack Decl. at ¶ 3.

[46] Tex. Civ. Prac. & Rem. Code § 154.073.  *See also Areizaga v. ADW Corp.*, 796 Fed. Appx. 205, 207 (5th Cir. 2020) (applying Texas law from section 154.073 on mediation privilege).  Even if this Court were to analyze this privilege under California law (which it not applicable), the mediation privilege cannot be waived unless a party fails to object to its use as evidence.  *Milhouse v. Travelers Commercial Ins. Co.*, 982 F.Supp.2d 1088, 1106 (C.D. Cal. 2013), aff'd, 641 Fed. Appx. 714 (9th Cir. 2016).

[47] The California Legislature has broadly provided for the confidentiality of things spoken or written in connection with a mediation proceeding.  *Cassel v. Superior Court*, 51 Cal. 4th 113, 117, 244 P.3d 1080, 1083 (2011). Neither "evidence of anything said," nor any "writing," is discoverable or admissible in any arbitration or civil action "in which . . . testimony can be compelled to be given," if the statement was made, or the writing was prepared, "for the purpose of, in the course of, or pursuant to, a mediation. . . ."  Cal. Evid. Code § 1119 (a), (b). "All communications, negotiations, or settlement discussions by and between participants in the course of a mediation . . . shall remain confidential."  Cal. Evid. Code § 1119 (c).  These confidentiality provisions are absolute and must be strictly applied.  *Cassel*, 51 Cal. 4th at 118, 244 P.3d at 1083.

[48] *Alphonso v. Pitney Bowes, Inc.*, 356 F.Supp.2d 442, 447 n.4 (D.N.J. 2005).

[49] *Id.*

[50] *See id.*

Clearly aware that settlement communications are privileged and are to be kept in confidence, Defendants attempt to circumvent the law on mediation privilege and Rule 408. Defendants point to *Blackbird Tech LLC v. Health In Motion LLC,* 944 F.3d 910, 916 (Fed. Cir. 2019), as an example of a court relying on events in mediation to support the award of attorney fees. In that case (which did not involve § 1927), the court did look at mediation conduct.  However, this only happened after the appellee discussed what took place at mediation, and the appellant responded to that argument without objecting in its reply brief.[51]  Accordingly, the court did not address the issue of whether this evidence was protected under the mediation privilege as it was never raised by any party in that appeal.

In this case, Respondents formally **OBJECT** to this improper use of communications and information from settlement discussions and the mediation of this case under the mediation privilege, Texas Civil Practice & Remedies Code section 154.073, California Evidence Code section 1119, and Federal Rule of Evidence 408. They should not be considered in connection with this Motion.

Defendants also cite to *Ingram v. Oroudjian*, but that court only held that "it is permissible for a district court to consider settlement negotiations in measuring the litigant's success for purposes of awarding attorney fees."[52]  Defendants are not seeking to introduce evidence from mediation to "measure the success" at trial to determine  the proper amount of attorney's fees.  Moreover, *Ingram* did not involve mediation, so the court never addressed the issue of the mediation privilege.[53]  That case is inapposite.

Defendants further cite to *Kim Laube & Co., Inc. v. Wahl Clipper Corp.*,[54] but that court only looked at conduct during settlement offers to help determine if a claim of misappropriation was made in bad faith under Cal. Civ. Code § 3426.4.  Like the *Ingram* case, *Kim Laube* did not involve

---

[51] In the *Blackbird Tech* appeal, *see* Health in Motion's appellee brief (2019 WL 1468253 at 6) *and* Blackbird Tech's reply brief (2019 WL 2252107 at 27).
[52] 647 F.3d 925, 927 (9th Cir. 2011)
[53] *Id.*
[54] No. LA CV09-00914 JAK (JCx), 2014 WL 12461044, at *8 (C.D. Cal. Mar. 17, 2014)

THE ATTORNEYS' COMBINED OPPOSITIONS TO DEFENDANTS' MOTION FOR ENTITLEMENT TO ATTORNEYS' FEES AND COSTS -- 3:17-cv-02177-WHA; 3:17-cv-02178-WHA; 3:17-cv-02435-WHA

mediation, and therefore, did not address the mediation privilege.[55]  None of these cases are on point,

and none of these cases excuse Defendants' blatant breach of the mediation privilege or Rule 408.

In the alternative, even if this Court should admit evidence about what happened during

confidential and protected settlement discussions and mediation, the alleged conduct does not

constitute bad faith under § 1927. The allegations surrounding Respondents' settlement activities is

not found in the short discussion of § 1927 in Defendants' Motion at 22-23.  Rather, Defendants

again raise this allegation in the context of § 285, and simply claim that, "GEMSA and its counsel's

settlement behavior warrant a finding that this case is 'exceptional.'"  (Mot. at 21).  However,

whether conduct is "exceptional" is relevant to § 285 but is not relevant for § 1927 or the inherent

authority of the Court.

Defendants identify three attorneys present at the mediation—William Ramey, Rick

Laminack, and Tom Pirtle.  While Defendants complain about GEMSA's settlement offers, this was

not the result of counsel for GEMSA.  GEMSA directed the amount of the settlement offers, not

counsel.[56] The mediation settlement amounts offered by GEMSA were solely the product of client-

driven demands from the GEMSA representative who attended mediation. The GEMSA

representative was singularly responsible for the settlement demands made at mediation.[57]

> [D]ecisions within the client's domain are generally not attributable to its attorneys.
> It is the client's decision . . . whether and when to agree to low value settlements.
> Such client decision-making is a poor evidentiary basis on which to infer attorney
> bad faith in multiplying proceedings. . . . The decision to settle . . . is wholly
> committed to clients, not their attorneys.[58]

The only other thing that Defendants complain of with regard to mediation conduct is an

alleged statement by Rick Laminack that the Eastern District of Texas was his "home court."  From

this statement, Defendants claim GEMSA's counsel was "intimating" that their threat to try the case

would be won based on Rick Laminack's "home court" advantage and ability to persuade a jury

notwithstanding the facts.[59]  First, as noted in his Declaration, Mr. Laminack made no such

---

[55] *Id.*
[56] *See* Ramey Decl. at ¶¶ 31-36, esp. 33.
[57] *See* Laminack Decl. at ¶¶ 3-4.
[58] *Gust, Inc.,* 905 F.3d at 1332.
[59] Mot. at 22.

THE ATTORNEYS' COMBINED OPPOSITIONS TO DEFENDANTS' MOTION FOR ENTITLEMENT TO
ATTORNEYS' FEES AND COSTS -- 3:17-cv-02177-WHA; 3:17-cv-02178-WHA; 3:17-cv-02435-WHA

statement.[60] Second, Defendants are multi-billion dollar companies with large law firms who have litigated in the Eastern District of Texas.  It is simply not credible that the Defendants or their lawyers were intimidated by any such statement. In any event, this argument fails to meet the standard under § 1927. Third, a statement that a case will be tried is not a threat—it is a constitutional right. Expressing an interest to try a case in a proper court of law is an exercise of rights guaranteed by the United States Constitution under the Seventh Amendment—not a threat.[61]

Finally, subjective bad faith is not something that arises from an "intimation," implication, subtle hint, or disguised reference.  This requires intent and motive; not Defendants' unilateral after-the-fact mischaracterization of some benign comment. Disclosing this information at mediation was not designed to "intimate" that GEMSA's counsel could manipulate local jurors to ignore the merits of the case or the facts merely because one of GEMSA's counsel pointed out well known facts about the trial venue.[62] GEMSA's counsel did not mention his "home court"[63] to imply anything other than the fact that he was familiar with the customs, culture, and temperament of the people who reside in the Eastern District of Texas.  This statement was not accompanied by any subjective bad faith or improper intent of any kind on the part of GEMSA's counsel.

## I.   Conclusion by the LPM and R&S Attorneys

LPM and R&S attorneys did nothing to warrant an award of fees under § 1927 and/or the inherent authority of the Court.  They did not multiply the proceedings, act in bad faith, knowingly or recklessly raise frivolous arguments, or argue a meritorious claim for the purpose of harassing Defendants.  Defendants' request for fees against LPM and R&S is meritless and should be denied.

## II.      THE REQUEST FOR FEES AGAINST BK SHOULD BE DENIED

Defendants cannot meet the high burden, procedurally or substantively, to show that the Court should sanction BK or any BK attorneys under 28 U.S.C. § 1927 or the Court's inherent

---

[60] The alleged statement, which is not believed to be completely accurate, was made by Mr. Pirtle, not Mr. Laminack. (Laminack Decl. at ¶4).

[61] *Tull v. United States,* 481 U.S. 412, 422-23, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987); *F.T.C. v. Commerce Planet, Inc.*, 815 F.3d 593, 602 (9th Cir. 2016).

[62] *See* Laminack Decl. at ¶ 4.

[63] In almost every case, one of the parties is in their "home court".

authority.[64]  *First*, in this Circuit, courts do not have authority under § 1927 or their inherent authority to sanction law firms.  Yet, the only GEMSA "counsel" named by Defendants is BK, a law firm.  *Second*, as set forth above, before a court can award sanctions against individual attorneys, it must make specific findings that the individual attorney acted in bad faith, knowingly or recklessly raised frivolous arguments, or argued a meritorious claim for the purpose of harassing an opponent. Here, Defendants make no showing whatsoever that any BK attorney acted in such a way. And Defendants' failure to name any BK attorneys who purportedly created excess fees violates the due process rights of the individual BK attorneys, because they are unable to defend themselves.  *Third,* although GEMSA was unsuccessful, neither the PTO nor the Federal Circuit found the positions taken by GEMSA to be frivolous, and Defendants did not ask either tribunal to make such a finding or to award sanctions.  In fact, in the over three years BK attorneys were involved in this dispute, Defendants **never once complained** about the way any BK attorneys were handling this dispute. *Fourth*, BK cannot be jointly liable for attorney fees under § 1927 or the inherent authority of the Court with GEMSA or previous counsel.

## A.    Defendants' Misleading Use of the Word "Counsel"

Defendants assert that sanctions are proper because they repeatedly sent GEMSA's "counsel" various letters purportedly warning them of alleged deficiencies and GEMSA's "counsel" refused to voluntarily withdraw the lawsuits.  (Mot. at 6, 10-11).  Defendants also claim that "GEMSA and its counsel" engaged in bad faith settlement negotiations which amounted to "extortion".  (Mot. at 9).  Indeed, the phrases "GEMSA's counsel" and "GEMSA and its counsel" appear over 50 times in Defendants' brief without specifically identifying the "counsel" to which Defendants are referring.  BK, on the other hand, appears by name only twice in Defendants' brief, an in neither instance do Defendants name a single BK attorney as having committed any wrongdoing. (Mot. at 14, 15).

---

[64] As set forth in previous counsel's section above, § 285 does not apply to attorneys. Defendants' request for fees against the BK attorneys is based on § 1927 and the inherent authority of the Court. Notwithstanding, BK also does not believe this case is exceptional under § 285 based on the merits of the dispute as discussed in this opposition.

Defendants use the phrase "GEMSA's counsel" to attempt to obfuscate the fact that Defendants never once sent a deficiency letter to BK and that BK was not involved in any settlement negotiations. As Defendants are well aware, all of these deficiency letters and settlement negotiations occurred **before** BK was involved in these cases. In other words, Defendants use "counsel" in an ambiguous manner in an attempt to hold BK responsible for prior counsel's actions.  BK cannot be held liable for the actions of prior counsel:

> Plaintiff "fails to distinguish between the conduct of the three firms that represented Defendants, but rather merely condemns the strategy of 'Defendants' attorneys'. While this Court can certainly expect RRK's attorneys to have familiarized themselves with all prior proceedings in this case, this Court will not hold RRK responsible for the actions of prior counsel. . . Consequently, any of [Plaintiff's] allegations of bad faith attorney conduct that occurred prior to April, 1995 will not be imputed to RRK.") (citation omitted).[65]

In addition, neither BK nor its attorneys ever did any substantive work on these lawsuits. BK first became involved in the IPR proceedings filed by Defendants in May of 2017 when certain BK attorneys, who reside and work in Michigan, began representing GEMSA in the IPRs. In September of 2017, after the Court granted prior counsel's motion to withdraw, two different BK attorneys, who reside and work in California, filed appearances in these lawsuits. By that time, the Court had stayed the present lawsuits, so those attorneys did no substantive work in these cases.[66]

Never once in the over three years BK was involved in this dispute did Defendants send BK notice of any alleged deficiencies.  There were no settlement negotiations between Defendants and any BK attorneys or GEMSA during this time.  Never once did Defendants ask BK to voluntarily withdraw these cases.  And never once did Defendants raise any issue about the way BK handled the lawsuits, the IPRs, or the appeal to the Federal Circuit.[67] Nevertheless, saying "GEMSA and its counsel" and "GEMSA's counsel" ambiguously, Defendants improperly try to conflate BK with GEMSA and the other law firms who represented GEMSA.

---

[65] *Tri-Star Pictures, Inc. v. Unger*, 42 F.Supp.2d 296, 298 (S.D. N.Y. 1999).
[66] *See* Cantor Decl. at ¶ 8.
[67] *See* Cantor Decl. at ¶ 11.

THE ATTORNEYS' COMBINED OPPOSITIONS TO DEFENDANTS' MOTION FOR ENTITLEMENT TO ATTORNEYS' FEES AND COSTS -- 3:17-cv-02177-WHA; 3:17-cv-02178-WHA; 3:17-cv-02435-WHA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.      Defendants Have Failed to Meet Their Burden of Proof**

     **1.      Defendants improperly seek § 1927 sanctions against BK**

As set forth in § I.A. above, Defendants inexplicably fail to inform this Court of the binding Ninth Circuit precedent that § 1927 applies only to individual attorneys—law firms cannot be sanctioned under § 1927.  *Kaass*, 799 F.3d at 1291 (§ 1927 does not apply to law firms).  Ignoring this precedent, Defendants do not accuse even one individual BK attorney of wrongdoing in their brief.[68]  Instead, contrary to Ninth Circuit precedent, Defendants name only the law firm, "Brooks Kushman P.C." (Mot. at 14, 15.)  This failure of proof alone defeats Defendants' request for fees under § 1927 as to the BK attorneys.

     **2.      Defendants do not identify any "but for" action that caused excess fees**

Defendants ask the Court to sanction BK based on the Court's inherent authority and § 1927. (Mot. at 23-25.)  As discussed in § I.A. above, for both, under Supreme Court and Ninth Circuit precedent, Defendants must prove what each attorney did to warrant an award of fees and, specifically, must prove that "but for" that attorney's specific conduct Defendants would not have incurred the "excess" fees.  *Goodyear*, 137 S. Ct. at 1187; *Lu*, 921 F.3d at 860.  Defendants have not even attempted to meet this but-for standard with respect to any BK attorney.  Indeed, Defendants do not even cite *Goodyear* nor mention its but-for test.

Applying the *Goodyear* test, there can be no question that Defendants have utterly failed to identify, let alone prove, a causal link between any specific BK attorney and excess fees incurred by Defendant.  As discussed above, Defendants' attempt to skirt this requirement by improperly lumping together GEMSA and alleged disparate actions by the different firms.  Defendants then make the argument that "This conduct, ***in total***, which 'unreasonably and vexatiously' multiplied the proceedings, was reckless at best and rises to the level of bad faith, warranting an award of fees and costs pursuant to section 1927." (Mot. at 24, boldface added).  This allegation falls far short of the showing Defendants must make to prevail on their request that the Court sanction BK. And a

---

[68] The only person from BK named by Defendants is "Ms. Mojica," a ***non-attorney*** patent agent affiliated with BK who at that time represented GEMSA in the IPR proceedings only.  (Mot. at 13-14.) *See* Cantor Decl. at ¶ 12. Defendants do not ask the Court to sanction Ms. Mojica.

19

1    court cannot sanction an attorney based on Defendants' broad generalization that conduct was

2    improper "in total." *Lu*, 921 F.3d at 862 (reversing and remanding district court fees award because

3    "the court relied on the plaintiffs' declaration, which provided only broad generalizations about

4    causation, and did not calibrate a close causal link between the sanctionable conduct and specific

5    legal tasks.") (citation and internal quotation marks omitted).

6    **C.    Defendants' Motion Violates the BK Attorneys' Due Process Rights**

7         Defendants' Motion does not just suffer from the above defects, it also violates the BK

8    attorneys' due process rights. Due process requires that an attorney be notified of the allegations

9    against them and that the Court have personal jurisdiction over them.[69] *In re DeVille*, 361 F.3d 539,

10   549 (9th Cir. 2004) ("attorney facing sanctions must receive 'notice of exactly which conduct was

11   alleged to be sanctionable'"); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc*., 557 F.2d 1280, 1286 (9th

12   Cir. 1977) (a federal court's exercise of personal jurisdiction over a "nonresident defendant turns on

13   two independent considerations [including] . . . personal jurisdiction … and whether assertion of

14   such jurisdiction accords with constitutional principles of due process."); *AF Holdings LLC v.*

15   *Navasca*, No. C-12-2396 EMC, 2013 U.S. Dist. LEXIS 149169 at *54; 2013 WL 5701104 (N.D.

16   Cal. Oct. 16, 2013) (denying motion for sanctions under § 1927 and inherent authority because "it

17   does not appear that the district court has personal jurisdiction over [the attorneys] for purposes of

18   imposing sanctions on them [because] neither individual had appeared before the Court in this case.

19   . . .").

20        Defendants have violated the BK attorneys' due process rights by failing to: (1) identify by

21   name any BK attorney who might be culpable; and (2) further failing to identify any specific conduct

22   by any BK attorney that could meet the standard of vexatiously multiplying the proceedings and

23   identifying any "excess" caused thereby. In doing so, Defendants have put BK attorneys in the

24   unconstitutional position of defending against sanctions without fair notice of which attorney

25   committed the allegedly sanctionable conduct *and* of what that conduct might be.

26

27   ---
     [69] As discussed in Section II.H. below, this Court does not have jurisdiction over the BK Michigan
     attorneys.

28
     THE ATTORNEYS' COMBINED OPPOSITIONS TO DEFENDANTS' MOTION FOR ENTITLEMENT TO
     ATTORNEYS' FEES AND COSTS -- 3:17-cv-02177-WHA; 3:17-cv-02178-WHA; 3:17-cv-02435-WHA

**D.      Defendants' Reply Brief Cannot Cure These Failures**

Defendants' failure to meet the specific proof mandates of the Ninth Circuit and the violation of the BK attorneys' due process rights cannot be cured in a reply brief, as it would further deprive BK attorneys of notice and their right to respond. The Ninth Circuit has held the proof burdened party cannot sandbag a respondent by raising an argument for the first time in a reply. *United States v. Lopez-Cruz*, 730 F.3d 803, 812 n.4 (9th Cir. 2013) ("The government raises another new argument in its reply brief . . . [t]his argument is waived.") (citations omitted). *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court did not commit clear error in failing to consider the [Carneses's] argument because the Carneses did not raise this argument until their reply brief. The district court need not consider arguments raised for the first time in a reply brief. C*hevron U.S.A., Inc. v. SSD& Assocs.*, No. C05-03276 WHA, 2006 U.S. Dist. LEXIS 53969, at *19 (N.D. Cal. July 21, 2006) ("Chevron did not raise this issue until its reply brief. New issues may not normally be raised in a reply brief.") *United States v. Wolfenbarger*, No. 16-CR-00519-LHK-1, 2020 U.S. Dist. LEXIS 90912, at *13-14 (N.D. Cal. May 22, 2020) ("The Court is not required to address arguments raised for the first time in a reply brief because 'arguments raised for the first time in reply briefs are waived.'") (citations omitted).

**E.      There Is No Basis to Award Fees for the Work Performed on the Appeal (or the IPRs)**

Defendants rely on *Munchkin, Inc. v. Luv N' Care, Ltd.,* 2018 WL 7504404 (C.D. Cal. Dec. 27, 2018), on page 22 of their brief for the proposition that this Court has the power to award fees for IPR proceedings and a subsequent appeal. Defendants' reliance on *Munchkin* is misplaced for at least two reasons. First, *Munchkin* dealt with an award of such fees under § 285. Here, on the other hand, Defendants' seek fees against BK under § 1927 and the Court's inherent authority. Second, since Defendants filed their brief, *Munchkin was* **reversed** by the Federal Circuit.[70] More specifically, the Court on appeal reversed the finding that the case was exceptional under § 285, and specifically declined to decide the issue of whether a court could award fees for an IPR and appeal

---

[70] *Munchkin, Inc. v. Luv N' Care, Ltd.*, 2019-1454, 2020 WL 3041266 (Fed. Cir. June 8, 2020).

under § 285 at footnote 2 of the opinion.[71]  In any event, *Munchkin* simply does not stand for the proposition that this Court can award fees related to the IPRs. And BK attorneys have not found a single case that has awarded such fees under § 1927 or the inherent authority of the Court, and Defendants have cited no such authority.

**F.    Defendants' Accusations Against BK Are Without Merit[72]**

The only allegedly improper activity by BK discussed in Defendants' Brief is in Section II.E., relating to the appeal of the IPRs.  According to Defendants, "GEMSA forced Defendants to expend time and money in responding to a Federal Circuit appeal that GEMSA and its counsel admitted, repeatedly, was unsupported by any evidence." (Mot. at 14.)  This is legally without merit and substantively untrue, as discussed below.[73]

**1.    The appeal was not frivolous nor extortion**

While Defendants now argue the appeal was "frivolous," prior to this Motion, they had never argued as such. After the Federal Circuit affirmed the IPR decisions, Mark Cantor sent Defendants' counsel, Benjamin Weed, an email congratulating him on the appeal decision.  Mr. Weed responded commending Mr. Cantor on his conduct during the proceedings saying, "you've been an excellent role model for how to conduct oneself as a patent litigator, and I'm appreciative of that. Sadly it happens too infrequently these days." (Exhibit 36 to the Cantor Declaration.)  A court should not award fees under § 1927 or its inherent authority where the only comment about BK's representation in over three years is receiving a compliment on the way BK attorneys handled the dispute. The contemporaneous actions of Defendants' counsel are directly contrary to the allegations now made

---

[71] Fn. 2: "We recognize that the district court granted LNC its attorney's fees attributable to both the district court proceeding and the related IPR proceeding, but in light of reversing the award of fees, we do not reach this issue of whether in the circumstances of this case § 285 permits recovery of attorney's fees for parallel USPTO proceedings. *See generally* Order, *Amneal Pharms. LLC v. Almirall, LLC*, __F.3d__, (Fed. Cir. 2020) (No. 2020-1106)."

[72] A detailed analysis on the substantive merits of the IPRs and the appeal in response to Defendants' conclusory allegations is not practical within the limits of this response.  If the Court desires such a detailed analysis on any aspect of the merits, BK attorneys will be happy to provide this to the Court. Accordingly, this response is directed to the discrete allegations in Defendants' Motion.

[73] At all times during BK's representation of GEMSA in the IPRs and the appeals, BK attorneys subjectively and objectively believed in the merits of the positions taken by GEMSA. *See* Cantor Decl. ¶3.

---

THE ATTORNEYS' COMBINED OPPOSITIONS TO DEFENDANTS' MOTION FOR ENTITLEMENT TO
ATTORNEYS' FEES AND COSTS -- 3:17-cv-02177-WHA; 3:17-cv-02178-WHA; 3:17-cv-02435-WHA

against BK in their brief.

Defendants never raised any concerns about the appeal with BK or the Federal Circuit.  If Defendants truly believed the appeal was frivolous, Defendants should have asked the Federal Circuit for sanctions under Fed. R. App. P. 38,[74] 28 U.S.C. § 1927, or the Federal Circuit's inherent authority.  This makes sense since clearly the Federal Circuit, *i.e.*, the court that heard and decided the appeal, would be in the best position to determine whether the appeal was actually frivolous (it was not). But Defendants did not do so.  Now Defendants are asking this Court to impose sanctions for activities that happened during the appeal despite the fact that this Court lacks jurisdiction to do so:

> [T]his Court lacks jurisdiction to determine if an appeal is frivolous under FRAP 38. Rule 38 allows the award of 'just damage . . . to the appellee' if the '*court of appeals* determines that an appeal is frivolous.' (emphasis added).  **This Court may not determine if Rule 38's standard is met or if the appeal is frivolous.** [Citation omitted.] Finally, by its terms 28 U.S.C. § 1927 is not a fee-shifting statute. It allows the court to require an attorney to personally pay excess costs, expenses, and fees reasonably incurred because of the attorney's vexatious conduct.  If, however, the Court determines that Padgett's appeal creates 'excessive costs,' it is essentially finding the appeal is frivolous.  **As noted, the Court lacks the power to decide if an appeal is frivolous.**

*Padgett v. Loventhal*, No. 5:04-CV-03946-EJD, 2019 WL 6771815, at *2 n. 2 (N.D. Cal. Dec. 12, 2019) (italics in original, boldfacing added); *Flip Side Prods. v. Jam Prods.*, 843 F.2d 1024, 1037 (7th Cir. 1988) ("Under Rule 38 the district court is not empowered to award fees for proceedings before this court; thus, we must reverse the finding of the district court to the extent it is inconsistent with Rule 38.").

Defendants also assert the appeal of the IPRs was part of a "barely concealed extortion scheme." (Mot. at 14.)  They do not explain how taking an appeal is "extortion."  The parties did not engage in any settlement negotiations after BK became involved in the case and Defendants never asked GEMSA to dismiss the appeal and GEMSA never demanded anything from Defendants

---

[74] "If an appellee or respondent considers an appeal or petition frivolous, the appellee or respondent ***must*** file a separate motion with that allegation.  The assertion that an appeal is frivolous must be accompanied by citation to the opposing brief or the record below with clear argument as to why those citations establish that the appeal is frivolous." Fed. Cir. Practice Note to Fed. R. App. P. 38 (boldfacing added).

in exchange for dismissing the appeal.[75]  Pursuing an appeal, which is permitted as a matter of right, simply cannot rise to the level of "extortion."

### 2.      The IPRs on the '400 and '766 patents[76]

The PTO instituted the IPRs on each of the patents-in-suit based on prior art the Petitioners contended rendered the challenged claims invalid.  GEMSA defended the IPRs by arguing the asserted prior art did not render the challenged claims invalid, and that the IPRs should be terminated under 35 U.S.C. § 315(a) based on activities in the underlying pending district court cases.

### 3.      Termination under 35 U.S.C. § 315 (a)(1)

Under 35 U.S.C. § 315(a)(1), an IPR is not allowed where a real party in interest ("RPI") has brought a suit challenging the validity of the patent prior to bringing the IPR. In the IPRs at issue, the named Petitioners were Defendants and Booking.com. The IPRs also named numerous RPIs who were customers of Amazon[77] who had been sued by GEMSA in Texas.[78] Prior to the IPRs being filed, however, Amazon filed a Declaratory Judgment action in Virginia challenging the validity of the patents at issue in the IPRs. Amazon then asked the Texas court to stay or dismiss the cases in Texas on the basis that it (Amazon) was the real party in interest with respect to the patent dispute with GEMSA.  (Defendants' Exhibit 11).   Several of Amazon's RPI customers in Texas, and Petitioner Booking.com, also filed motions to stay in support of Amazon's motion. (Defendants' Exhibit 11).   Accordingly, based on this record, an admitted real party in interest filed a suit challenging the validity of the patents before the IPRs were filed.  GEMSA believed that under § 315(a)(1), this required termination of the IPRs. The Board disagreed and denied GEMSA's motion under § 315 (Exhibit 37 to the Cantor Declaration).[79]

---

[75] *See* Cantor Decl. at ¶ 16.

[76] It does not appear Defendants are seeking fees against BK attorneys for their representation of GEMSA in the IPRs themselves, just for the appeal. Nevertheless, this section addresses the allegations raised in Defendants' brief with respect to the IPRs and describes the predicate for the appeal to the Federal Circuit.

[77] The actual entities were Amazon Web Services and VADATA which are Amazon subsidiaries. For convenience, they were collectively referred to as "Amazon" in the IPRs and appeal.

[78] While these cases were pending in Texas, they were consolidated with some of the Texas Amazon customer cases for pretrial matters.

[79] This was the basis for GEMSA's appeal to the Federal Circuit which is discussed below.

THE ATTORNEYS' COMBINED OPPOSITIONS TO DEFENDANTS' MOTION FOR ENTITLEMENT TO ATTORNEYS' FEES AND COSTS -- 3:17-cv-02177-WHA; 3:17-cv-02178-WHA; 3:17-cv-02435-WHA

4.     **GEMSA vigorously and substantively contested obviousness in the IPRs**

The main issue decided in the IPRs was obviousness. Defendants baselessly allege that GEMSA "didn't meaningfully fight the obviousness challenges" in the IPRs (Mot. at 13).  This is simply untrue.  As shown in the briefs from the IPRs[80] which are being submitted herewith, GEMSA extensively and substantively contested obviousness in the IPRs. (Exhibits 38-43 to the Cantor Declaration.) While the Board found the challenged claims in both patents invalid under 35 U.S.C. § 103 (Defendants' Exhibits 14-15), GEMSA did not agree with these decisions.

Defendants also argue that the use of the inventor, Schumann Rafizadeh, as an expert in the IPRs was somehow improper. What Defendants do not tell the Court is that the Board denied Defendants' motion to exclude his expert Declarations.[81]

In any event, the fact that the parties disagreed on the merits or that GEMSA did not prevail, is not the test for an award of fees against an attorney under 28 U.S.C. § 1927 or the inherent authority of the Court.  Defendants apparently are arguing that BK attorneys should be liable for fees because they should have just agreed not to defend the IPRs filed by Defendants, based on Defendants' correspondence with previous counsel.  First, such a rule would be absurd, as patents are presumed valid and a party has an absolute right to defend itself in a proceeding brought against it.  Second, Defendants never once requested that BK or its attorneys stop defending the IPRs.[82]  Nor did Defendants ever argue to the Board that the positions taken in defense of the patents in the IPRs were in bad faith or frivolous,[83] nor did they ever seek fees from the Board.[84]

5.     **The Federal Circuit appeal**

In reviewing the decisions from the Board that could be appealed, GEMSA could have appealed three issues; (i) the § 315 issue, (ii) the invalidity decision on the '400 patent, and (iii) the

---

[80] While Defendants attach over a thousand pages of Exhibits, they do not attach the briefing on the obviousness merits of the IPRs, which are clearly relevant and show the extensive and substantive nature of the disputed issues.

[81] "Accordingly, based on the evidence and the arguments presented, Petitioner has not demonstrated persuasively that Mr. Rafizadeh's testimony is so incompetent, unreliable, irrelevant or biased as to be completely unhelpful to the Board in making its determination in these cases so that it must be excluded from evidence." (Exhibit 47 to Cantor Declaration, pg. 3).

[82] *See* Cantor Decl. at ¶ 11.

[83] *See* Cantor Decl. at ¶ 14.

[84] Under 37 CFR § 42.12, the Board can award fees in an IPR proceeding for a frivolous case.

invalidity decision on the '766 patent.  GEMSA elected to only appeal the § 315 issue, as (i) it was not aware of a single case where it was admitted in the underlying district court proceedings that an "RPI" had filed a suit challenging the validity of the patents in the IPRs prior to the filing of the IPRs, and (ii) the Federal Circuit had issued new precedent on how § 315 issues are to be analyzed after the Board's decision.[85]

The decision to appeal only the § 315 issue is the opposite of "multiplying proceedings." Defendants filed two IPRs which required two separate appeals.  If all three issues had been appealed, there would have been separate briefs filed in both appeals each dealing with the § 315 issue and the decision on the merits for the patent involved.  By filing only on the § 315 issue, it allowed the same brief, response and reply to be filed in both appeals, and the Court held one combined hearing—streamlining, rather than "multiplying" proceedings.[86]

Defendants tell this Court that GEMSA's decision to streamline the appeals somehow admitted that the invalidity decisions made by the Board were correct. (Mot. at 14). This is flatly untrue.  GEMSA did not concede the merits and specifically stated in its opening brief to the Federal Circuit: "While GEMSA strongly disagrees with the decisions on these claims, this Court does not have to substantively address the Final Decisions on these claims because the PTAB should have terminated these IPRs, and these Final Decisions must be vacated."[87] (Exhibit 45 to the Cantor Declaration, pg. 5.)  Defendants were fully aware that if the Federal Circuit reversed on the § 315 issue, it would result in vacating the decisions on the merits by the Board.[88]  In fact, Defendants

---

[85] After the decision on the motion to terminate in January of 2018 (Exhibit 37 to the Cantor Declaration), the Federal Circuit decided several cases which changed the way issues under 35 U.S.C. § 315 are to be analyzed. *Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336 (Fed. Cir. 2018) ("*AIT*"); *Worlds Inc. v. Bungie, Inc.*, 903 F.3d 1237 (Fed. Cir. 2018) ("*Worlds*"); and *Click-To-Call Techs., LP v. Ingenio, Inc*., 899 F.3d 1321 (Fed. Cir. 2018) ("*Click-To-Call*"). Based on *AIT*, GEMSA asked the Board to allow it to file a renewed motion to terminate.  The Board denied this request. (Exhibit 44 to the Cantor Declaration).
[86] A more detailed analysis on the substantive merits of the Federal Circuit appeal is not practical within the limits of this response.  If the Court desires such a detailed analysis on any aspect of the merits of the appeal, BK attorneys will be happy to provide this to the Court.
[87] Again, while Defendants attached well over a thousand pages of Exhibits to their motion, for some reason they did not attach the appeal briefs to the Federal Circuit. They are attached as Exhibits 45-47 to the Cantor Declaration.
[88] This is precisely what the Federal Circuit did in *Worlds* and *Click-To-Call*.

THE ATTORNEYS' COMBINED OPPOSITIONS TO DEFENDANTS' MOTION FOR ENTITLEMENT TO ATTORNEYS' FEES AND COSTS -- 3:17-cv-02177-WHA; 3:17-cv-02178-WHA; 3:17-cv-02435-WHA

argued that if the Court agreed with GEMSA and vacated the Board's rulings, it should not create an estoppel with respect to Defendants' ability to use the asserted prior art in these cases. (Exhibit 46 to the Cantor Declaration, pgs. 58-59.)

Defendants also misleadingly argue that the statement in the appeal opinion that GEMSA "conceded" during the appeal hearing that Amazon did not control the IPRs was an "admission" that the appeal was not supported by any evidence.  (Mot. at 23.)  This is simply not true. GEMSA did not allege on appeal that Amazon *was controlling* the IPRs. GEMSA alleged on appeal that Amazon had *the right to control* the IPRs based on the indemnification agreement Amazon had with one of its customers who was a defendant in Texas and a named as an RPI in the IPRs.[89]  (Exhibit 44 to the Cantor Declaration, pg. 28.)    As such, it is not known exactly what was "conceded" as this was not contested by GEMSA.  Defendants' argument that GEMSA argued on appeal that Amazon was in control of the IPRs and then "conceded" the opposite at the hearing is flatly untrue.

While the Federal Circuit did not agree with GEMSA, the appeal was not without merit nor frivolous as claimed by Defendants, and certainly was not filed in bad faith.  Defendants at no time argued the appeal was frivolous, or intentionally or willfully pursued in bad faith, and the Federal Circuit never said the appeal was frivolous, or intentionally or willfully pursued in bad faith. Defendants never moved for fees under Federal Rule of Appellate Procedure 38 and, based on *Padgett*, this Court does not have jurisdiction to decide whether the appeal was frivolous.

In short, the BK attorneys handling the appeal did everything they could to prevail for their client but were simply unsuccessful.  Being unsuccessful in a hard-fought case is simply not a basis for an award of fees under 28 U.S.C. § 1927 or the Court's inherent authority.

## G.    BK California Attorneys Did Not Cause Defendants to Incur Excess Fees

After the hearing on prior counsel's motion to withdraw in these lawsuits, the Court gave

---

[89] Defendants attempt to take out of context the transcript where Ms. Mojica was arguing GEMSA's request for discovery on the § 315 issue to the Board. There was no "concession" that there was no merit to the § 315 issue. In fact, as a result of the hearing, Petitioners produced this indemnification agreement. (Defendants Exhibit 13, p 64.)

GEMSA two weeks to find new counsel.  (Dkt. No. 119.)[90]  GEMSA asked BK to represent it in these then-stayed lawsuits. At that time, BK Michigan attorneys were familiar with the validity issues as they were already defending the IPRs.  BK also conferred with GEMSA with respect to the infringement issues in these lawsuits. (*See* Cantor Decl. at ¶ 7.)[91]  Thereafter, BK agreed to represent GEMSA in these lawsuits and two BK California attorneys entered their appearances.[92] These lawsuits remained stayed pending the outcome of the appeal of the IPRs.[93]

Defendants have given no basis for sanctioning the two BK California attorneys and cite no conduct by them that led to any fees, let alone excess fees. The BK California attorneys did nothing of substance in the lawsuits. BK California attorneys only (1) signed jointly filed status reports, and (2) signed jointly filed responses to show cause orders from the Court on how the cases should proceed to Judgment.[94]

As discussed above, the only BK activity cited by Defendants for an award of sanctions is the appeal of the IPRs. But the BK California attorneys did not appear in nor participate in any the IPRs or the IPR appeals. Thus, the Court has no grounds to sanction BK California attorneys under § 1927 or the inherent authority of the Court.

---

[90] All Docket references in this brief are to the lowest numbered case before this Court, Civil Action No. 17-cv-02177.

[91] While Defendants imply that "counsel" did not do an adequate pre-filing investigation (Mot. at 20, 24), that is rebutted in the Ramey Declaration as discussed above. Also, BK did not file the lawsuits and could not have done a "pre-filing" investigation.

[92] No BK attorney ever pursued the infringement cases in this Court. When the BK attorneys entered their appearance, these cases were stayed. The final adverse decisions on validity made the infringement issues moot. There has never been an adjudication on the infringement issues.

[93] BK attorneys also worked to streamline the number of cases regarding the GEMSA patents. When BK became involved in these cases, the Amazon case was pending in Virginia and there were over 30 stayed cases pending in Texas.  BK worked directly with counsel for the opposing parties to get them **all** dismissed, leaving only these cases and the IPRs pending. (*See* Cantor Decl. at ¶ 9).This is the opposite of vexatiously multiplying proceedings.

[94] The BK attorneys have tried to assist this Court with resolving the remaining issues in these cases in a streamlined manner. For example, in responding to this Court's show cause order of (Dkt. No. 155), BK cited the Court to new Federal Circuit precedent which allowed for these cases to proceed directly to Judgment, while Defendants on the other hand, sought to further litigate requesting permission to file a motion for summary judgment. (Dkt. No. 157.)

**H.   This Court Does Not Have Jurisdiction Over the BK Michigan Attorneys**

BK Michigan attorneys only appeared in the IPR proceedings and the appeal. BK Michigan attorneys never appeared in these lawsuits. Accordingly, this Court does not have personal jurisdiction over the BK Michigan attorneys with respect to the request for sanctions. *AF Holdings LLC*, 2013 U.S. Dist. LEXIS 149169, at \*4 (denying motion for sanctions under § 1927 and inherent authority because "it does not appear that the district court has personal jurisdiction over [the attorneys] for purposes of imposing sanctions on them [because] neither individual had appeared before the Court in this case. . . .'").[95]

**I.   There Can Be No Joint Liability**

Without analysis or case law citation, Defendants baldly assert the Court should hold BK "jointly liable for all of Defendants' fees and costs pursuant to 28 U.S.C. § 1927." (Mot. at 23- 24.) It is unclear whether Defendants are seeking to hold BK jointly liable with GEMSA, with previous counsel, or both. In any event, the request is without merit.

**1.     BK cannot be jointly liable with GEMSA**

Section 1927 "authorizes sanctions only upon counsel." *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 640 (9th Cir. 2010). In *Sneller*, the district court had assessed sanctions under Rule 11 and § 1927 "jointly on counsel and the client." *Id*. The Ninth Circuit rejected the sanctions under Rule 11: "Because the sanction cannot be upheld under Rule 11, we must next examine whether it can be affirmed on the alternative basis on which the district court expressly relied, 28 U.S.C. § 1927, to support the imposition of the sanction. The short answer is that it cannot." *Id*. Why, because "§ 1927 authorizes sanctions only upon counsel." *Id*. (citing *FTC v. Alaska Land Leasing, Inc*., 799 F.2d 507, 510 (9th Cir. 1986)). Likewise, in *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997), the Ninth Circuit held that under § 1927 an attorney could not be jointly liable a client because "[s]ection 1927, on its face, applies only to the conduct of lawyers, whereas here

---

[95] As set forth above, even if this Court did have jurisdiction over the BK Michigan attorneys, there is no authority supporting an award of fees by the Court for defending an IPR and appeal thereof under § 1927 or the inherent authority of the Court.

the sanctions were levied against both the clients and counsel without any findings allocating responsibility between them."

Defendants do not cite any authority that a client and attorney can be jointly liable for sanctions under § 1927. Because Defendants' only request for "joint liability" is based on § 1927, the Court must deny any request for joint liability between BK and GEMSA.

### 2.      BK cannot be jointly liable with previous counsel

BK never worked with prior counsel on these lawsuits, the IPR proceedings or the appeal. BK is not liable for the actions of prior counsel, *Tri-Star Pictures, Inc.,* 42 F.Supp.2d at 298. Defendants' request for "joint liability" among all attorneys is contrary to the holding of the Supreme Court in *Goodyear*, the Ninth Circuit in *Lu* and § 1927, which requires the Court to assess each attorney's conduct separately. Defendants request for joint liability with previous counsel must be denied.

### J.      Conclusion by the BK Attorneys

It has become common today for large law firms with billion-dollar clients to seek fees for defending patent cases as a deterrent to future claims. It is believed that is the case with Defendants' motion. For the over three years BK was involved in this dispute, Defendants never once complained about any actions by BK. This is because BK attorneys did nothing to warrant an award of fees under § 1927 or the inherent authority of the Court. BK attorneys did not multiply the proceedings, act in bad faith, knowingly or recklessly raise frivolous arguments, nor argue a meritorious claim for the purpose of harassing Defendants. Defendants request for fees against BK is meritless and should be denied.

Dated: July 2, 2020                                  Respectfully submitted,

                                                                   **MURPHY, PEARSON, BRADLEY & FEENEY**

                                                                   By: */s/ James A. Murphy*
                                                                   James A. Murphy (SBN 062223)
                                                                   JMurphy@mpbf.com
                                                                   580 California Street, Suite 1100
                                                                   San Francisco, CA 94104-1032
                                                                   T: (415) 788-1900 / F: (415) 393-8087

1

**RAMEY & SCHWALLER, LLP**

2  By: */s/ William P. Ramey, III*
William P. Ramey, III
3  wramey@rameyfirm.com
Texas Bar No. 24027643
4  5020 Montrose Blvd., Suite 750
Houston, TX 77006
5  T: (713) 426-3923 / F: (832) 900-4941

6  **LAMINACK, PIRTLE & MARTINES, L.L.P.**

7  By: */s/ Richard N. Laminack*
Richard N. Laminack
8  rickl@lpm-triallaw.com
Texas Bar No. 11850350
9  5020 Montrose Blvd., 9th Floor
Houston, TX 77006-6533
10  T: (713) 292-2750 / F: (713)292-2755

11

12  *Attorneys for "Counsel"*

13

14  **ATTESTATION OF FILING**

15      Pursuant to Civil Local Rule 5-1(i)(3), I hereby certify that concurrence in the filing

16  of this document has been obtained from each of the other Signatories shown above.

17

18  Dated:  July 2, 2020                    By:  */s/ James A. Murphy*

19

20

21

22

23

24

25

26

27

28

THE ATTORNEYS' COMBINED OPPOSITIONS TO DEFENDANTS' MOTION FOR ENTITLEMENT TO
ATTORNEYS' FEES AND COSTS -- 3:17-cv-02177-WHA; 3:17-cv-02178-WHA; 3:17-cv-02435-WHA