Benjamin E. Weed
Illinois Bar No. 6294052
benjamin.weed@klgates.com
Gina A. Jenero
Illinois Bar No. 6320853
Gina.jenero@klgates.com
70 West Madison Street, Suite 3300
Chicago, IL 60602
312.372.1121
312.827.8000 *Facsimile*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL EQUITY MANAGEMENT (SA) PTY. LTD.,<br><br>            Plaintiff,<br><br>v.<br><br>ALIBABA GROUP HOLDING, LTD., ET AL.,<br><br>         Defendants. | Case No. 3:17-cv-02177-WHA<br>Case No. 3:17-cv-02178-WHA<br>Case No. 3:17-cv-02435-WHA<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR ENTITLEMENT TO ATTORNEYS' FEES AND COSTS**<br><br>**Judge:  Hon. William Alsup**<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.    ARGUMENT ........................................................................................................1

    A.    The Opposition Barely Addresses Section 285, And Simply Highlights That The Cases Were Exceptional And Warrant Sanctions.............................................2

        1.    Fees And Costs For The Entire Case Are Warranted Under Section 285 Because Plaintiff's Misconduct Infected Every Stage Of The Litigation................................................................................................2

        2.    The Opposition Confirms That GEMSA's Cases Against Defendants Were "Exceptional" ......................................................3

    B.    The Opposition Highlights The Bad Faith And/Or Reckless Conduct That Warrants Sanctions Under Section 1927 ........................................................9

        1.    There Is No Due Process Violation .........................................................9

        2.    Ramey, Laminack, Pirtle, and Martines Acted In Bad Faith ...................11

            (a)    Ramey, Laminack, Pirtle, and Martines Acted In Bad Faith By Blindly Maintaining Baseless Infringement Allegations .........11

            (b)    Mr. Ramey's Settlement Demands Were Made In Bad Faith ....................................................................................................13

            (c)    Laminack's/Pirtle's ████████ Was Made In Bad Faith ..................................................................................................16

                (i)    Mediation Privilege Does Not Apply Here.......................16

                (ii)    Laminack's Attempt To Justify His Misconduct Fail.......18

        3.    Mr. Cantor Acted Recklessly And/Or In Bad Faith.................................19

    C.    The Opposition Fails To Refute That Plaintiff's And Its Counsel's Bad Faith Conduct Warrants Sanctions Pursuant To The Court's Inherent Power ..................................................................................................20

III.    CONCLUSION....................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page**

### <u>Cases</u>

*Action Star Enter. Co. v. KaiJet Tech. Int'l, Ltd.*,
    2015 WL 12752877 (C.D. Cal. June 24, 2015) ..................................................... 8

*AF Holdings LLC v. Navasca*,
    2013 WL 5701104 (N.D. Cal. Oct. 16, 2013) ...................................................... 19

*Alphonso v. Pitney Bowes, Inc.*,
    356 F. Supp. 2d 442 (D.N.J. 2005) ..................................................................... 13

*Areizaga v. ADW Corp.*,
    796 Fed. Appx. 205 (5th Cir. 2020) .................................................................... 16

*B.K.B. v. Maui Police Dep't.*,
    276 F.3d 1091 (9th Cir. 2002) ............................................................................ 18

*Beam Sys., Inc. v. Checkpoint Sys., Inc.*,
    1997 WL 423113 (C.D. Cal. July 16, 1997) ......................................................... 2

*Beckman Instruments, Inc. v. LKB Produkter AB*,
    892 F.2d 1547 (Fed. Cir. 1989)............................................................................. 3

*Black v. Del Webb Communities, Inc.*,
    2007 WL 9752092 (C.D. Cal. Mar. 27, 2007)..................................................... 14

*Blackbird Tech LLC v. Health In Motion LLC*,
    944 F.3d 910 (Fed. Cir. 2019) ....................................................................... 3, 14

*Carlock v. Collins Motors, Inc.*,
    2005 WL 8173205 (S.D. Cal. Sept. 19, 2005) ................................................... 14

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ....................................................................................... 19, 20

*Deep Sky Software, Inc. v. Sw. Airlines Co.*,
    2015 WL 10844231 (S.D. Cal. Aug. 19, 2015) .................................................... 8

*Digital Empire Ltd. v. Compal Elecs. Inc Grp.*,
    2015 WL 11570939 (S.D. Cal. Dec. 11, 2015)................................................... 12

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
    2020 WL 3551988 (Fed. Cir. July 1, 2020) ..................................................... 3, 6

*Eltech Sys. Corp. v. PPG Indus., Inc.*,
    903 F.2d 805 (Fed. Cir. 1990)............................................................................ 12

DEFENDANTS' REPLY ISO MOTION FOR
ENTITLEMENT TO ATTORNEY'S FEES AND COSTS      ii
3:17-cv-02177-WHA;
3:17-cv-02178-WHA; 3:17-cv-02435-WHA

*Eon-Net LP v. Flagstar Bancorp*,
     653 F.3d 1314 (Fed. Cir. 2011)...................................................................... 14, 15, 19

*FameFlynet, Inc. v. Jasmine Enterprises Inc.*,
     No. 17 C 4749, 2019 WL 3733592 (N.D. Ill. Aug. 8, 2019)................................. 17

*FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*,
     2020 WL 907058 (S.D. Cal. Feb. 25, 2020) ....................................................... 7

*Fort Properties, Inc. v. Am. Master Lease, LLC*,
     2009 WL 10675070 (C.D. Cal. Mar. 30, 2009) ................................................. 12

*Gilead Scis., Inc. v. Merck & Co.*,
     2017 WL 3007071 (N.D. Cal. July 14, 2017) ..................................................... 3

*Haeger v. Goodyear Tire & Rubber Co.*,
     813 F.3d 1233 (9th Cir. 2016), *rev'd on other grounds*, 137 S. Ct. 1178 (2017).................. 2

*Hung Nguyen v. Regents of Univ. of California*,
     2019 WL 3017678 (C.D. Cal. Mar. 25, 2019) ................................................... 17

*In re USA Commercial Mortg. Co.*,
     462 F. App'x 677 (9th Cir. 2011) ....................................................................... 2

*Ingram v. Oroudjian*,
     647 F.3d 925 (9th Cir. 2011) .............................................................................. 14

*IPVX Patent Holdings, Inc. v. Voxernet LLC*,
     2014 WL 5795545 (N.D. Cal. Nov. 6, 2014) ..................................................... 5

*Kendrick v. Zanides*,
     609 F. Supp. 1162 (N.D. Cal. 1985) .................................................................. 2

*Kilopass Tech. Inc. v. Sidense Corp.*,
     2014 WL 3956703 (N.D. Cal. Aug. 12, 2014) ................................................... 7

*Kim Laube & Co., Inc. v. Wahl Clipper Corp.*,
     2014 WL 12461044 (C.D. Cal. Mar. 17, 2014) ................................................. 14

*Kindred Studio Illustration & Design, LLC v. Elec. Commc'n Tech., LLC*,
     2019 WL 3064112 (C.D. Cal. May 23, 2019) ................................................... 6

*Lahiri v. Universal Music & Video Distribution Corp.*,
     606 F.3d 1216 (9th Cir. 2010) ........................................................................... 12

*Large Audience Display Sys., LLC v. Tennman Prods., LLC*,
     745 F. App'x 153 (Fed. Cir. 2018)..................................................................... 8

*Lawrence v. City & Cty. of San Francisco*,
     2016 WL 3254232 (N.D. Cal. June 14, 2016) ................................................... 16

DEFENDANTS' REPLY ISO MOTION FOR
ENTITLEMENT TO ATTORNEY'S FEES AND COSTS            iii            3:17-cv-02177-WHA;
                                                              3:17-cv-02178-WHA; 3:17-cv-02435-WHA

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
   2014 WL 4616847 (N.D. Cal. Sept. 15, 2014) ...................................................... 6, 19

*Logic Devices, Inc. v. Apple Inc.*,
   No. C 13-02943 WHA, 2014 WL 6844821 (N.D. Cal. Dec. 4, 2014) ..................................... 5

*Luxul Tech. Inc. v. NectarLux, LLC*,
   2016 WL 3345464 (N.D. Cal. June 16, 2016) ...................................................... 17

*MarcTec, LLC v. Johnson & Johnson*,
   664 F.3d 907 (Fed. Cir. 2012) ........................................................................ 5

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
   726 F.3d 1359 (Fed. Cir. 2013) ...................................................................... 3

*Padgett v. Loventhal*,
   2019 WL 6771815 (N.D. Cal. Dec. 12, 2019) ........................................................ 8

*Par Pharm., Inc. v. Twi Pharms., Inc.*,
   2016 U.S. Dist. LEXIS 133009 at *6 (D. Md. Sep. 27, 2016) ........................................ 12

*Phigenix, Inc. v. Genentech, Inc.*,
   2018 WL 3845998 (N.D. Cal. Aug. 13, 2018) ........................................................ 7

*Phonometrics, Inc. v. Westin Hotel Co*,
   350 F.3d 1242 (Fed. Cir. 2003) ..................................................................... 12

*PPG Indus., v. Celanese Polymer Specialties Co.*,
   840 F.2d 1565 (Fed. Cir. 1988) ...................................................................... 8

*Prime Healthcare Servs., Inc. v. Harris*,
   2017 WL 3525169 (S.D. Cal. Aug. 16, 2017) ........................................................ 16

*RBC Bearings Inc. v. Caliber Aero, LLC*,
   2016 WL 6562068 (C.D. Cal. Aug. 1, 2016) ..................................................... 15, 19

*Ready Transportation, Inc. v. CRST Malone, Inc.*,
   2009 WL 10669743 (C.D. Cal. June 18, 2009) ...................................................... 10

*Rich v. Bank of Am., N.A.*,
   666 F. App'x 635 (9th Cir. 2016) .................................................................... 14

*Segan LLC v. Zynga Inc*,
   131 F. Supp. 3d 956 (N.D. Cal. 2015) ............................................................... 5

*Shipping & Transit, LLC v. Hall Enterprises, Inc.*,
   2017 WL 3485782 (C.D. Cal. July 5, 2017) ......................................................... 6

*Smith v. Equinox Holdings, Inc.*,
   2015 WL 628361 (N.D. Cal. Feb. 12, 2015) ........................................................ 16

*Sweet People Apparel, Inc. v. Saza Jeans, Inc.*,
  2016 WL 6053958 (C.D. Cal. May 25, 2016) ...................................................... 2

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
  726 F.3d 1306 (Fed. Cir. 2013) ...................................................................... 12

*Tesco Am., Inc. v. Strong Indus., Inc.*,
  221 S.W.3d 550 (Tex. 2006) ......................................................................... 11

*Thomas v. Baca*,
  2007 WL 738545 (C.D. Cal. Feb. 28, 2007) ................................................... 10

*Wilcox v. Arpaio*,
  753 F.3d 872 (9th Cir. 2014) ........................................................................ 16

*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*,
  231 F.3d 1339 (Fed. Cir. 2000) ....................................................................... 3

*Yufa v. TSI Inc.*,
  2014 WL 4071902 (N.D. Cal. Aug. 14, 2014) ................................................... 5

**<u>Statutory Authorities</u>**

35 U.S.C. § 285 ........................................................................... 2, 3, 6, 8, 14

35 U.S.C. § 314(d) .................................................................................... 9

Cal. Civ. Code § 3426.4 ........................................................................... 14

Tex. Civ. Prac. & Rem. Code § 154.073 ...................................................... 16

**<u>Rules and Regulations</u>**

Fed. R. Evid. 408 .......................................................................... 13, 14, 17

Fed. R. Evid. 501 ................................................................................... 16

## I.   INTRODUCTION

GEMSA's counsel's Opposition musters little in responding to the substantive grounds for Defendants' application, and instead resorts to a potpourri of meritless technical arguments aimed at escaping responsibility for legal stratagems and conduct they now blame on their non-lawyer client. What remains clear, however, is that GEMSA's and its counsel's conduct in maintaining these vexatious and objectively meritless cases has caused Defendants to expend four years and millions of dollars fending off a bad faith scheme to press meritless legal claims in a flagrant effort to extort exorbitant settlements. As detailed in Defendants' initial application, that scheme was executed through the abuse of every lever of the legal system GEMSA and its counsel could exploit—from the commencement of the lawsuits in Marshall, Texas (a venue that bore no connection to the parties or the dispute) through serial bad faith infringement contentions, willful blindness to the adverse evidence elicited in discovery, failure to review proffered source code to evaluate the basis for their claims, and abusive conduct in outlandish settlement demands ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Having abused the legal system as sworn officers of the Court for four years, GEMSA's counsel now maintain they should be absolved of all responsibility for their conduct on the professed ground that their client—an Australian LLC owned and controlled by a non-lawyer client-inventor—made them do it all, and that Defendants cannot distinguish with precision which one of them executed each step in their scheme.

This is sophistry. GEMSA's counsel signed all of the filings in this case during their respective periods as counsel of record (which is clearly indicated in the court records). They attended the key hearings—if fewer than all of them spoke, they all appeared and sat by while their colleagues advocated. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This case cries out for an award of fees, including sanctions against the lawyers who executed this bad faith scheme, to deter such abusive exploitation of the legal system.

## II.   ARGUMENT

The Opposition fails to refute that sanctions[1] against GEMSA and its counsel are warranted

---

[1]   The Opposition claims that Defendants "failed to file a taxable bill of costs, they are deemed to

pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927, and the Court's inherent power.[2]

### A.   The Opposition Barely Addresses Section 285, And Simply Highlights That The Cases Were Exceptional And Warrant Sanctions

The Opposition, filed solely on behalf of GEMSA's counsel, barely addresses Section 285, and fails to refute that the cases were exceptional and warrant sanctions. GEMSA's counsel uses its Opposition to shift the blame to their absent client—which has not filed an opposition to this motion and is in fact not presently represented by counsel (*see* Opp. at 1 n.1)—for all wrongdoing. Counsel for GEMSA—who took this case on contingency and therefore sought to share in any ill-gotten gains (*see* Ramey Decl. ¶ 9)—should not be able to avoid responsibility for their participation in the misconduct and vexatious litigation strategy deployed in this case. Yet this should not detract from the fact that Defendants are seeking fees against GEMSA as well. In fact, the Opposition simply highlights that a fee award under Section 285 is amply warranted.

### 1.   Fees And Costs For The Entire Case Are Warranted Under Section 285 Because Plaintiff's Misconduct Infected Every Stage Of The Litigation

As an initial matter, GEMSA's counsel suggest that every individual bad act must be specified and that "but-for" causation must be established for each step in the execution of their scheme. *See* Opp. at 1-2, 19. This is wrong on several fronts.

First, in accordance with the Court's order regarding sanctions briefing, an accounting of

---

have waived them." Opp. at 1 n.2. This is incorrect. The Court's order expressly set forth a two-round briefing schedule—"first to decide defendants' entitlement to fees and, then, to determine the appropriate amount." Dkt. 161. Defendants will file a bill of costs in the second round if the Court determines sanctions are warranted.

[2]   To be clear, Defendants are seeking fees against GEMSA under Section 285; against the individual attorneys William Ramey, Richard Laminack, Thomas Pirtle, Buffy Martines, and Mark Cantor under Section 1927; and against GEMSA, the individual attorneys, and Plaintiff's counsel's law firms pursuant to the Court's inherent authority. *See, e.g., In re USA Commercial Mortg. Co.*, 462 F. App'x 677, 679 (9th Cir. 2011) ("The district court possessed the power to sanction [law firm] pursuant to its inherent authority"); *Sweet People Apparel, Inc. v. Saza Jeans, Inc.*, 2016 WL 6053958, at *2 (C.D. Cal. May 25, 2016) (granting sanctions against law firm pursuant to court's inherent authority). Moreover, Defendants seek to hold GEMSA and its counsel jointly and severally liable pursuant to the Court's inherent power. *See, e.g., Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1237 (9th Cir. 2016), *rev'd on other grounds,* 137 S. Ct. 1178 (2017) (affirming district court's fee award jointly and severally against party and party's counsel pursuant to the district court's inherent power). *See, e.g., Kendrick v. Zanides*, 609 F. Supp. 1162, 1173 (N.D. Cal. 1985) (imposing sanctions against client and counsel jointly and severally pursuant to, *inter alia*, the court's inherent power); *Beam Sys., Inc. v. Checkpoint Sys., Inc.*, 1997 WL 423113, at *8 (C.D. Cal. July 16, 1997) (same).

fees is reserved for the second round of briefing if the Court finds that fees are warranted. At this stage, Defendants ask the Court to find that they are entitled to some amount of fees. *See* Dkt. 161.[3]

Second, under Section 285, the Court must assess the "totality of circumstances." *See, e.g.*, *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 2020 WL 3551988, at \*4 (Fed. Cir. July 1, 2020) (under Section 285, district court "must actually assess the totality of the circumstances. By not addressing the adequate evidence of an abusive pattern of [plaintiff's] litigation, the District Court failed to conduct an adequate inquiry and so abused its discretion") (citations omitted); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1347–48 (Fed. Cir. 2000). If a Plaintiff's conduct infects every stage of the litigation, as it did here, a full award of fees under Section 285 is warranted. *See, e.g.*, *Blackbird Tech LLC v. Health In Motion LLC*, 944 F.3d 910, 918–19 (Fed. Cir. 2019) ("the record supports the conclusion that Blackbird's misconduct so severely affected every stage of the litigation that a full award of attorney fees was proper here.") (citation omitted); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1369 (Fed. Cir. 2013); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551–52 (Fed. Cir. 1989); *Gilead Scis., Inc. v. Merck & Co.*, 2017 WL 3007071, at \*5 (N.D. Cal. July 14, 2017). That was the case here, as detailed in Defendants' Motion.

### 2.   The Opposition Confirms That GEMSA's Cases Against Defendants Were "Exceptional"

Tellingly absent from the Opposition is any explanation of how GEMSA's litigating positions, at any point, had merit. The Opposition merely recites the bare facts of what occurred during the cases, and conclusory claims without any support that counsel "believed" in the merits of the cases. *See* Opp. at 4-8, 11-12. This is insufficient, and only serves to highlight the baselessness of GEMSA's infringement, validity, and damages positions throughout these cases.

***GEMSA's Baseless Infringement Positions:*** The Opposition makes no attempt to refute Defendants' detailed explanation of why GEMSA's constantly-shifting infringement theories were objectively baseless. *See* Mot. at 4-7, 17-18. All the Opposition can muster are specious attempts

---

[3] For brevity, all Docket entries cited herein are to the docket in civil action number 17-cv-02177.

1   to shift the blame to Defendants for not doing more to point out the baselessness of their positions.

2   For example, the Opposition claims that "Alibaba never filed a motion to strike GEMSA's May 2,

3   2016 infringement contentions." Opp. at 6. This does nothing to legitimize those contentions.[4]

4        Incredibly, Mr. Ramey claims that "counsel for Alibaba never stated what was deficient"

5   about Plaintiff's May 2, 2016 infringement contentions. Ramey Decl. ¶ 7. This is demonstrably

6   false. As explained in Defendants' Motion (at 3-6), counsel for the Alibaba Defendants repeatedly

7   told Mr. Ramey that GEMSA's amended infringement contentions were incoherent and based on

8   a factually incorrect assumption (███████████████████████████████████████████

9   ██████████████), including in a June 24, 2016 correspondence (Mot. Ex. F at 2); August 5, 2016

10  correspondence (Mot. Ex. G at 1); verified interrogatory responses; expert reports; Rule 30(b)(6)

11  deposition testimony from Alibaba's technical witnesses; and source code that the Alibaba

12  Defendants made available for inspection, which neither GEMSA nor its experts ever bothered to

13  examine (*see* Mot. at 5-6).[5] Mr. Ramey continues to ignore this evidence to this day, maintaining

14  that "counsel for Alibaba never stated what was deficient" about Plaintiff's May 2, 2016

15  infringement contentions. Ramey Decl. ¶ 18. This (at best) willful blindness, or intentional

16  mischaracterization of the repeated, undisputed factual evidence demonstrates GEMSA's and Mr.

17  Ramey's devil-may-care practice of maintaining infringement without factual basis—by definition

18

19

---

20  [4]  In any event, the Alibaba Defendants did in fact seek to strike GEMSA's January 9, 2017 "Final
    Infringement Contentions," which GEMSA served a month before the close of fact discovery
21  without leave and in contravention of the prior court's express local rules. *See* Mot. Exs. I-3, R, S.
    [5]  The Opposition claims that Plaintiff's "May 2, 2016 infringement contentions were complete
22  and cited source code." Opp. at 6. But the referenced "source code" is simply the publicly available
    console HTML that is available on every website on the Internet, accessible by pushing F12. *See*
23  Mot. Exs. E-1, E-2. It is *not* "source code"—as GEMSA's counsel well knows.
        Indeed, Plaintiff's technical expert, Dr. Rosenberg, who allegedly "tediously mapped each
24  element of the asserted claims . . . to Alibaba's accused systems and eBay's accused systems"
    (Opp. at 7-8) ***never even reviewed the source code*** that Defendants made available for inspection,
25  which would have further confirmed non-infringement. Mot. Ex. H; Mot. Ramos Decl. ¶ 11; Mot.
    Weed Decl. ¶ 21; *see also* Mot. Ex. K at 3 (Alibaba Defendants' expert explaining fundamental
26  factual error in Rosenberg's contentions); Mot. Ex. L at 3-4 (same). This is another instance of
    Plaintiff's and its counsel's deliberate blindness to exculpatory evidence, highlighting the
27  exceptional nature of these cases. *See, e.g.*, *MarcTec*, 664 F.3d at 920 (affirming Section 285
    sanctions because, among other things, plaintiff "introduced and relied on expert testimony that
28  failed to meet even minimal standards of reliability, thereby prolonging the litigation and the
    expenses attendant thereto").

DEFENDANTS' REPLY ISO MOTION FOR
ENTITLEMENT TO ATTORNEY'S FEES AND COSTS    4    3:17-cv-02177-WHA;
3:17-cv-02178-WHA; 3:17-cv-02435-WHA

an "exceptional" case.[6] *See, e.g., MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 920–21 (Fed. Cir. 2012) ("[Plaintiff] not only initiated a frivolous lawsuit, it persisted in advancing unfounded arguments that unnecessarily extended this litigation and caused [defendant] to incur needless litigation expenses. This vexatious conduct is, by definition, litigation misconduct"); *Segan LLC v. Zynga Inc*, 131 F. Supp. 3d 956, 962–63 (N.D. Cal. 2015); *IPVX Patent Holdings, Inc. v. Voxernet LLC*, 2014 WL 5795545, at *5 (N.D. Cal. Nov. 6, 2014); *Yufa v. TSI Inc.*, 2014 WL 4071902, at *3 (N.D. Cal. Aug. 14, 2014).

The Opposition claims that "[n]o Court has ever ruled on Plaintiff's infringement position against Alibaba or eBay[.]" Opp. at 8. But this is not a requirement for a fee application. *See, e.g., Logic Devices, Inc. v. Apple Inc.*, No. C 13-02943 WHA, 2014 WL 6844821, at *4–5 (N.D. Cal. Dec. 4, 2014) (Alsup, J.) ("even though infringement was never reached, this order has serious questions about how [plaintiff] could have possibly gone to a jury on infringement and damages . . . . Indeed, [plaintiff's] infringement contentions *only speculated that certain elements in the asserted claim were 'likely to be infringed,'* even though it demanded reasonable royalties of 'as much as $977.3 million'. Considering the totality of circumstances, this order finds that this action was litigated in a wholly unreasonable manner and it stands out from the others with respect to the substantive strength of [plaintiff's] litigation position. This is an exceptional case.") (emphasis added). Similarly here, in January 2017, after litigating for more than a year, GEMSA's counsel made a settlement demand of ████████████████████████████████████████ ████████████████████████████████████████████████████ Mot. Ex. W (emphasis added).

In fact, the Opposition highlights that GEMSA and its counsel *knew* that their astronomical demands—including ████████████ demand made in July 2016—were completely baseless and made in bad faith. As the Opposition states, "Rather than answering the lawsuit, Priceline.com and Kayak.com settled with GEMSA. The quick settlements *bolstered counsel for R&S and counsel for LPM's resolve* to continue the Litigation against the other defendants, to trial if necessary." Opp. at 5 n.11 (emphasis added); *see also* Ramey Decl. ¶ 32 ("Near mediation [with the Alibaba

---

[6]   Counsel for eBay similarly and repeatedly articulated the deficiencies with Mr. Ramey's infringement theories in a series of Section 285 letters, to no avail. Mot. Exs. 2, 6, 8.

Defendants in January 2017], another Defendant, Trip Advisor, settled GEMSA's claims of patent infringement. The settlement *provided further reassurance to counsel at R&S* that its infringement positions were good and that the claims of the patents were valid.") (emphasis added). Yet Priceline.com and Kayak.com—part of the Priceline Group that had annual revenues from $5.3B to $10.7B from 2012 to 2016—

. Mot. Ex. L at 13-18. For GEMSA and its counsel to have settled with these parties

from the Alibaba Defendants based on the same copy-paste allegations[7] with absolutely no evidence of infringement or any plausible damages theory, is a textbook example of an exceptional case. *See, e.g.*, *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 2020 WL 3551988, at *3 (Fed. Cir. July 1, 2020) ("[A] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285.") (citation omitted); *Linex Techs., Inc. v. Hewlett-Packard Co.*, 2014 WL 4616847, at *5 (N.D. Cal. Sept. 15, 2014); *Shipping & Transit, LLC v. Hall Enterprises, Inc.*, 2017 WL 3485782, at *8 (C.D. Cal. July 5, 2017); *Kindred Studio Illustration & Design, LLC v. Elec. Commc'n Tech., LLC*, 2019 WL 3064112, at *9 (C.D. Cal. May 23, 2019).

Even now, after the case has closed and Defendants have prevailed, GEMSA's counsel is still attempting to rewrite history. Now Mr. Ramey claims that the final infringement contentions he personally signed and served on behalf of Plaintiff are allegedly not the "operative infringement contentions" at the time of dismissal of this case. Ramey Decl. ¶ 37. His attempt now to walk away from the final infringement contentions underscores that they were baseless when served, like the rest of the case. Courts routinely find this type of conduct to be sanctionable under Section 285.

---

[7]   *Compare* Exhibits 1-5 attached to the declaration of Carey Ramos filed herewith ("Ramos Reply Decl.") *with* Mot. Exs. A, B, Weed Reply Decl. Ex. A. These copy-paste allegations GEMSA and its counsel (R&S and LPM) filed in over thirty separate lawsuits also demonstrate their lack of adequate pre-suit investigation.

1  *See, e.g.*, *Phigenix, Inc. v. Genentech, Inc.*, 2018 WL 3845998, at *6–7 (N.D. Cal. Aug. 13, 2018);

2  *Kilopass Tech. Inc. v. Sidense Corp.*, 2014 WL 3956703, at *13-14 (N.D. Cal. Aug. 12, 2014)

3  (finding case exceptional because plaintiff "shift[ed] its theories of infringement late in the

4  litigation and without following the proper procedures for amendment of contentions, and

5  engag[ed] in conduct that at times amounted to gamesmanship").

6      ***GEMSA's Baseless Invalidity Positions:*** The Opposition also confirms the baselessness

7  of Plaintiff's invalidity positions, solely relying on the presumption of validity and failing to ever

8  change its positions even when Defendants repeatedly supplied clear and convincing evidence of

9  the asserted patents' invalidity under numerous sections of the Patent Act. *See* Opp. at 12.

10  Although GEMSA and its counsel may have reasonably relied on the presumption of validity when

11  they filed, it became unreasonable once Defendants supplied clear and convincing evidence of the

12  invalidity of the asserted patents. *See* Mot. at 8-9. Indeed, the prior court's claim construction that

13  invalidated half the asserted claims, as well as "the PTAB's Final Decision[s] (affirmed by the

14  Federal Circuit)" that invalidated the remaining asserted claims "confirmed that the Plaintiff[']s[]

15  litigation positions regarding the [asserted patents] were not only exceptionally weak, but were

16  also frivolous in view of the prior art." *FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, 2020 WL

17  907058, at *4 (S.D. Cal. Feb. 25, 2020) (awarding Section 285 fees).

18      And while the Opposition attempts to downplay Mr. Ruff's prior art testimony (Opp. at 8),

19  a cursory review of this testimony reveals confirmation that each limitation of the '400 Patent

20  claims was present in patents Mr. Ruff had previously filed for PartitionMagic software (*see, e.g.*,

21  Mot. Ex. 17 at 138:7-139:25). His testimony also confirmed that the PartitionMagic product that

22  was publicly available before the filing of the '400 Patent was the "commercial embodiment of

23  the claims of" that PartitionMagic patent. *Id.* at 140:2-9. Mr. Ramey closed this deposition by

24  stating that "[w]e'll reserve the rest for trial," despite the fact that Mr. Ruff resides outside the trial

25  subpoena power of either this Court or the Eastern District of Texas.[8]

26      ***GEMSA's Baseless Positions Before The PTAB and Federal Circuit:*** As a threshold

27

28  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
[8]  Notably, the prior art that successfully invalidated the '677 Patent was a European Patent
Publication whose status as prior art was never in question.

matter, the Opposition claims that fees cannot be recovered for the IPRs and Federal Circuit appeal. Opp. at 21-23. This is incorrect. As the Opposition itself concedes, the Federal Circuit's recent reversal of *Munchkin* **"specifically declined to decide the issue of whether a court could award fees for an IPR and appeal . . . ."** Opp. at 21-22 (citing *Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1380 n.2 (Fed. Cir. 2020)). In fact, the Federal Circuit has even ordered a district court to award fees for PTO and Federal Circuit litigation where the "totality of proceedings constituted the basis for the district court's finding that the case was 'exceptional' within the meaning of 35 U.S.C. § 285." *PPG Indus., v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1568 (Fed. Cir. 1988); *see also Large Audience Display Sys., LLC v. Tennman Prods., LLC*, 745 F. App'x 153, 159 (Fed. Cir. 2018) (affirming fees for reexamination under section 285); *Deep Sky Software, Inc. v. Sw. Airlines Co.*, 2015 WL 10844231, at *2 (S.D. Cal. Aug. 19, 2015) (same).[9]

Here, the totality of proceedings, including Plaintiff's frivolous real-party-in-interest ("RPI") arguments before the PTAB and Federal Circuit, warrant finding this case exceptional. GEMSA's counsel attempts to create a meaningless dispute regarding whether or not GEMSA "argued on appeal that Amazon was in control of the IPRs." Opp. at 27. The Federal Circuit's opinion speaks for itself: "Even if not waived . . . we are not persuaded by GEMSA's [RPI] argument. In fact, *as it had before the PTAB, GEMSA admitted during oral argument that 'as a fact, there are no facts' in the record 'that Amazon actually wrote the IPR [petitions] or controlled the IPR [proceedings.]'*" Mot. Ex. 16 at 9 (emphasis added). With no facts to answer the *only* relevant question, GEMSA had no basis for filing its appeal.

Mr. Ramey, whose firm filed the patent owner preliminary responses in the PTAB, despite his intimate familiarity with the case, did not believe that Amazon was an unnamed real party in interest. *See* Mot. Exs. FF, GG. It was not until BK became involved that the issue was raised before the PTAB, and the decision was ultimately made to appeal only this issue to the Federal

---

[9] *Padgett v. Loventhal*, 2019 WL 6771815 (N.D. Cal. Dec. 12, 2019) (cited at Opp. at 23) is inapposite. That case was a non-patent case where the party sought fees from the district court pursuant to certain federal *appellate* rules. *Id.* at *2 n.2. Contrarily, under Section 285, "[a] motion for fees incurred on appeal *can be directed to the district court*," and "a party . . . need not make a separate showing that the appeal itself was exceptional." *Action Star Enter. Co. v. KaiJet Tech. Int'l, Ltd.*, 2015 WL 12752877, at *2 (C.D. Cal. June 24, 2015) (emphasis added).

Circuit.[10] This after-the-fact theory did not have enough merit for inclusion in the preliminary proceedings, and lacked merit through the PTAB trial and its appeal. Plaintiff's pursuit of an admittedly baseless RPI argument unnecessarily dragged out this dispute for years. This conduct also supports a finding that the totality of the proceedings were exceptional.

Lastly, the Opposition argues sanctions are not warranted because Defendants' counsel complimented "the way BK attorneys handled the dispute." Opp. at 22. But acting in a civil fashion is in no way a concession that Plaintiff's or its counsel's arguments ever had any merit. They did not, and no collegial response can infuse them with merit. *See* Weed Reply Decl. ¶¶ 5-10.

**B.    The Opposition Highlights The Bad Faith And/Or Reckless Conduct That Warrants Sanctions Under Section 1927**

The Opposition advances technical arguments regarding the requirements of Section 1927—all of which are without merit. Yet, in doing so, the Opposition further confirms the roles of each of the various attorneys in enabling, encouraging, and participating in the misconduct that has characterized these cases from their commencement. Sanctions against each attorney are warranted here for their bad faith, vexatious multiplication of proceedings in cases that had no basis to be filed in the first place.

**1.    <u>There Is No Due Process Violation</u>**

The Opposition claims that the Motion violates due process by failing to identify specific attorneys. Opp. at 1, 17-18, 20. This is false. In addition to naming specific attorneys throughout the Motion (*see* Mot. at 4-5, 8, 11, 13-15), Defendants' Motion attached numerous exhibits, including pleadings and filed documents signed by specific attorneys, emails sent by specific attorneys, transcripts of depositions and hearings taken by particular attorneys, and other documents signed by particular attorneys. *See* Mot. Exs. A, B, C, E-1, E-2, G, G-1, I-1, I-2, I-3, M, N, T, U, V, W, FF, GG, 1, 9, 10, 11, 12, 13, 17, 19, 20.

---

[10] Were there merit to the RPI issue, and had it been presented in the preliminary proceeding, the PTAB would have denied institution of the IPR petitions and all of the defendants' post-institution expenses (including the fees to prosecute the IPRs, fees to the expert witness, and other costs incurred in the process of the PTAB proceedings and the Federal Circuit appeal) would have been avoided. *See* 35 U.S.C. § 314(d) ("The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable.").

1   Moreover, it strains credulity that GEMSA's counsel are not able readily to determine,

2   from the Motion and their own discrete roles in the case, who did what, particularly in view of the

3   bright line change in representation when this case was transferred from Texas to California. This

4   is not a case where large numbers of attorneys from each firm were involved, and there were clear

5   divisions in the work that the small number of attorneys from the various firms performed for

6   Plaintiff depending on the jurisdiction in which this case was venued.[11] For some conduct,

7   Defendants have no way of knowing which specific attorneys were involved. GEMSA's counsel

8   maintains in their Opposition that the counsel who filed the original complaints—which would

9   include Mr. Ramey, Mr. Laminack, Mr. Pirtle, and Ms. Buffy Martines (from the firm Laminack,

10   Pirtle & Martines, LLP ("LPM"))—met to discuss the claims and agreed to file them. *See id.*;

11   Ramey Decl. ¶¶ 11, 13, 14. That meeting was not recorded. Defendants were not there. So

12   Defendants cannot present the Court with a transcript of who said what. But Defendants do know

13   their names and law firms were on the complaints. Similarly, Mr. Ramey was the point person

14   among GEMSA's counsel communicating with Defendants when the cases were in the Eastern

15   District of Texas; it is reasonable to infer that Mr. Ramey conferred with his co-counsel at LPM,

16   whose names and law firms continued to appear on filings and who appeared at each of the court

17   hearings held up through the transfer of the case to this Court. *See, e.g., id.*

18   Nor has there been any violation of due process. Courts have found no deprivation of due

19   process where the lawyers involved have been given a full opportunity to respond in briefing. *See,*

20   *e.g., Ready Transportation, Inc. v. CRST Malone, Inc.*, 2009 WL 10669743, at *10 n.3 (C.D. Cal.

21   June 18, 2009); *Thomas v. Baca*, 2007 WL 738545, at *9 (C.D. Cal. Feb. 28, 2007). Plaintiff's

22   counsel have been given such an opportunity in their Opposition, and will have an opportunity to

23   be heard at the hearing scheduled for August 6, 2020. *See* Dkt. 169. Indeed, Plaintiff's counsel

24   have long been on notice that Defendants would seek sanctions not only against Plaintiff, but

25   against Plaintiff's counsel personally as well, as laid out in Defendants' opposition to Plaintiff's

---

26   [11]   To be clear, Defendants are not seeking sanctions against attorneys when they were not
27   involved in the cases. For example, Defendants are not seeking fees against the BK attorneys for
     the conduct of Ramey and the LPM attorneys when the cases were venued in the Eastern District
28   of Texas. And Defendants are not seeking sanctions against Ramey and the LPM attorneys for
     conduct after they withdrew as counsel.

1   counsel's motion to withdraw, filed in June 2017. Dkts. 106, 108; *see also* Mot Exs. 2, 6, 8. The

2   Court expressly stated it would maintain jurisdiction over Plaintiff as well as Plaintiff's counsel

3   "for any bad acts that you've committed." Dkt. 121 at 11:13-20; *see also* Dkt. 124 at 2.

4       In any event, each attorney's sanctionable conduct is laid out in further detail below.[12]

5               **2.    Ramey, Laminack, Pirtle, and Martines Acted In Bad Faith**

6       Sanctions under Section 1927 against Messrs. Ramey, Laminack, Pirtle, and Ms. Martines

7   are warranted because they acted recklessly and/or in bad faith throughout the entire case until the

8   time they withdrew. As the Opposition makes clear, these attorneys jointly represented Plaintiff

9   and acted in concert when the case was in the Eastern District of Texas. *See, e.g.*, Ramey Decl. ¶¶

10  9-14, 38, 42, 47-54; Laminack Decl. ¶¶ 2-4; Opp. at 1-16 (arguing for "LPM and R&S attorneys"

11  jointly).[13] As just three egregious examples of their sanctionable misconduct, they (1) continued

12  to assert infringement where there was not a shred of supporting evidence and failed to develop

13  any factual record to support infringement; (2) demanded outrageous settlement demands they

14  knew or should have known had no basis whatsoever in law or fact; and (3) ███████████

15  ████████████ in an attempt to gain exorbitant settlements irrespective of the fundamental

16  flaws in GEMSA's case. The Opposition barely even attempts to substantively justify their

17  misconduct. In fact, with respect to the last example, the Opposition effectively argues that their

18  conduct was not inappropriate because it did not succeed in coercing a settlement.

19              (a)    Ramey, Laminack, Pirtle, and Martines Acted In Bad Faith By

20                     Blindly Maintaining Baseless Infringement Allegations

21      Ramey, Laminack, Pirtle, and Martines claim that they "believed in the merits of these

22  cases." Opp. at 7. This is insufficient to justify their misconduct or avoid personal sanctions against

23  them. Courts routinely find bad faith and/or vexatious conduct where counsel continues to assert

24  infringement when it is manifestly unreasonable, as it was here—something not substantively

25

26  ---
    [12]  As noted above, Defendants are also seeking sanctions against Plaintiff's counsel's law firms,
    and to hold them jointly and severally liable with GEMSA, pursuant to the Court's inherent

27  authority. *See supra* at n.2.
    [13]  Moreover, knowledge from these handful of attorneys from small firms may be imputed to

28  each other. *See, e.g., Tesco Am., Inc. v. Strong Indus., Inc.*, 221 S.W.3d 550, 553 (Tex. 2006)
    ("Texas law imputes one attorney's knowledge to all attorneys in a firm").

rebutted in the Opposition. *See, e.g., Lahiri v. Universal Music & Video Distribution Corp.*, 606

F.3d 1216, 1220 (9th Cir. 2010) (affirming sanctions against plaintiff's counsel under Section 1927

and the district court's inherent power "for knowingly and recklessly pursuing a frivolous . . .

infringement claim and litigating that claim in bad faith");[14] *Taurus IP, LLC v. DaimlerChrysler*

*Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) (finding bad faith where plaintiff continued to assert

"baseless infringement claims" that "fail[ed] to meet or exceed a reasonable threshold," and failed

to "continually assess the soundness of pending infringement claims"); *Phonometrics, Inc. v.*

*Westin Hotel Co*, 350 F.3d 1242, 1248 (Fed. Cir. 2003); *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903

F.2d 805, 811 (Fed. Cir. 1990); *Digital Empire Ltd. v. Compal Elecs. Inc Grp.*, 2015 WL

11570939, at *8 (S.D. Cal. Dec. 11, 2015); *Fort Properties, Inc. v. Am. Master Lease, LLC*, 2009

WL 10675070, at *3 (C.D. Cal. Mar. 30, 2009).[15]

And as explained above and in Defendants' Motion, there is no question counsel was

personally involved in blindly maintaining these baseless infringement claims against Defendants.

Mr. Ramey personally signed each of the complaints in this case, as well as the numerous

infringement contentions. Mot. Exs. A, B, C, E-1, I-1, 1, Weed Reply Decl. Ex. A. Mr. Ramey is

the one who continually ignored Defendants' repeated explanations why the contentions he served

were incoherent and factually incorrect, even to this day. *See, e.g.*, Ex. G (August 1, 2016 email

from Ramey claiming ████████████████████████████

[sic]," a month after counsel for the Alibaba Defendants unambiguously told him no such

architecture existed (*see* Mot. Ex. F at 2)); Ramey Decl. ¶ 18 (falsely claiming "counsel for Alibaba

never stated what was deficient" about Plaintiff's infringement contentions). eBay's letters

outlining the baselessness of GEMSA's infringement theories were directed to Mr. Ramey, which

---

[14]   As the Opposition notes (Opp. at 2 n.4), the Federal Circuit would apply regional circuit law
in reviewing an award of fees under Section 1927. *See also Phonometrics, Inc. v. Westin Hotel Co*,
350 F.3d 1242, 1246 (Fed. Cir. 2003).

[15]   *Par Pharm., Inc. v. Twi Pharms., Inc.*, 2016 U.S. Dist. LEXIS 133009 at *6 (D. Md. Sep. 27,
2016), which the Opposition cites (Opp. at 8), is a non-precedential case from D. Md. that merely
found that plaintiff "had the weaker case, not that its arguments were 'exceptionally meritless.'"
2016 U.S. Dist. LEXIS 133009 at *6. Not so here. GEMSA's counsel's litigation positions were
exceptionally meritless, as extensively explained in Defendants' Motion and which the Opposition
fails to substantively address.

he ignored. Mot. Exs. 2, 6, 8. And Mr. Ramey deposed Defendants' corporate representatives, who all confirmed the absence of factual support for GEMSA's claims. Mot. at 5-6.

If Ramey, Laminack, Pirtle, and Martines "believed in the merits of these cases," it was only because they intentionally or recklessly ignored the exculpatory evidence of non-infringement. This is tantamount to bad faith conduct that vexatiously multiplied these proceedings for years. They should be personally sanctioned.

> (b)   Mr. Ramey's Settlement Demands Were Made In Bad Faith

The second clear example of Mr. Ramey's bad faith conduct is the outrageous settlement demands he knew or should have known had no basis in law or fact.

As a threshold matter, the Opposition claims that Mr. Ramey's settlement demands cannot be considered. Opp. at 12-15. The Opposition misconstrues the law.[16] The only case the Opposition cites in support (Opp. at 13) is a non-binding case from the District of New Jersey where the plaintiff attempted to introduce defendants' settlement offer to "demonstrate[] either the possible *validity or the value of Plaintiff's claim*." *Alphonso v. Pitney Bowes, Inc.*, 356 F. Supp. 2d 442, 447 n.4 (D.N.J. 2005) (emphasis added). The court in that case properly rejected such an attempt in a straightforward application of Fed. R. Evid. 408, which prohibits evidence of settlement negotiations "to prove liability for or invalidity of the claim or its amount." Fed. R. Evid. 408.

Here, Defendants are not using Mr. Ramey's settlement demands for any such purpose. For example, Defendants are not offering Mr. Ramey's ███████████ demands (*see* Mot. Exs. U, V, W) to prove that Plaintiff's claims in this case were valid or worth such an amount. Rather, Defendants proffer such evidence to demonstrate Mr. Ramey's bad faith in demanding such amounts when he knew or should have known there was no basis for them—including the fact that, as an experienced patent litigator, he knew or should have known that there is no legal basis for using Alibaba's *global* ████████████████ (*see* Mot. Exs. U, V) as a basis for patent damages, let alone doing so where Plaintiff had never been able to articulate any

---

[16]   The Opposition attempts to mix together settlement and mediation privilege. *See* Opp. at 12-16. These are separate issues. Mr. Ramey's misconduct relating to settlement demands were made in emails *outside* of the mediation. *See* Mot. Exs. T, U, V; Mot. Weed Decl. ¶¶ 7, 9. Messrs. Laminack's and/or Pirtle's misconduct at the mediation is separately discussed below.

coherent infringement theory. Such a use is clearly allowed by Rule 408. *See* Fed. R. Evid. 408 ("This rule also does not require exclusion when the evidence is offered for another purpose").

The Opposition attempts to distinguish *Blackbird Tech LLC v. Health In Motion LLC*, 944 F.3d 910, 916 (Fed. Cir. 2019) by claiming that "the court did not address the issue of whether this evidence was protected under the mediation privilege as it was never raised by any party in that appeal." Opp. at 14. The parties to that case likely did not object because this is a baseless objection. Courts routinely consider a party's settlement conduct in determining if the party had "acted in bad faith," including "by exploiting the high cost to defend complex litigation to extract a nuisance value settlement." *Blackbird*, 944 F.3d at 916 (quoting *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011)); *see also Black v. Del Webb Communities, Inc.*, 2007 WL 9752092, at *5 (C.D. Cal. Mar. 27, 2007) (awarding Section 1927 sanctions because of plaintiff's counsel's bad faith "attempt to browbeat [defendant] into a settlement favorable to [plaintiff]" rather than litigating on the merits); *Carlock v. Collins Motors, Inc.*, 2005 WL 8173205, at *3 (S.D. Cal. Sept. 19, 2005) (awarding sanctions because "Plaintiff's contrived claims were made in ***bad faith*** and for the ***improper purpose of harassing defendants*** and extracting cash settlements") (emphasis in original, internal quotations omitted).[17]

Indeed, the Opposition does not even substantively address Mr. Ramey's settlement misconduct, claiming that Defendants only raised this settlement misconduct in the context of Section 285. *See* Opp. at 15. This is false. Defendants raised this misconduct as evidence of Mr.

---

[17]   The Opposition's attempts to distinguish *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011) and *Kim Laube & Co., Inc. v. Wahl Clipper Corp.*, 2014 WL 12461044, at *8 (C.D. Cal. Mar. 17, 2014) (*see* Opp. at 14-15) also fail. *Ingram*'s holding was not limited to considering "settlement negotiations in measuring the litigant's success for purposes of awarding attorney fees," as the Opposition claims (Opp. at 14). Instead, it held that the district court properly considered "settlement negotiations for the purpose of deciding a reasonable attorney fee award in this case." *Ingram*, 647 F.3d at 927; *see also Rich v. Bank of Am., N.A.*, 666 F. App'x 635, 642 n.3 (9th Cir. 2016) (district court properly "consider[ed] settlement discussions when deciding whether to award attorneys' fees") (citing *Ingram*).
     The Opposition also falsely claims that *Kim Laube* was limited to Cal. Civ. Code § 3426.4. Opp. at 14. Rather, the court in that case expressly rejected the same argument the Opposition attempts to make here—that settlement negotiations are inadmissible under Rule 408 in connection with a fee motion. The court found that "Plaintiffs' settlement positions may be considered in the context of the Motion [seeking fees]. They are offered not to prove liability, but 'for another purpose'—to support Defendant's contention that Plaintiffs pursued their . . . claims in bad faith." 2014 WL 12461044, at *8 (quoting Fed. R. Evid. 408).

---

Ramey's bad faith as well, which warrants sanctions under Section 1927 and the Court's inherent power. *See* Mot. at 23-24. The Opposition's silence demonstrates there is simply no way Mr. Ramey could justify his settlement misconduct or provide any basis in law or fact for his astronomic demands—they were made in bad faith.

Lastly, Mr. Ramey and Mr. Laminack at various points attempt to disclaim all responsibility for the settlement demands by blaming their client for directing them to make them. Opp. at 7, 15; Ramey Decl. ¶ 33; Laminack Decl. ¶ 3. An attorney cannot blindly follow the client's instructions if not supported by law and facts. *See, e.g.*, *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327-28 (Fed. Cir. 2011) ("It also appears that in filing this case, [plaintiff's counsel] merely followed the direction of his client, Medina, who Zimmerman characterized at oral argument as 'difficult to control.' But an attorney, in addition to his obligation to his client, also has an obligation to the court and should not blindly follow the client's interests if not supported by law and facts."); *RBC Bearings Inc. v. Caliber Aero, LLC*, 2016 WL 6562068, at *9 (C.D. Cal. Aug. 1, 2016) ("an attorney should not issue a settlement demand that is plainly a non-starter (*i.e.*, frivolous) . . . . Such a settlement demand not only undermines the credibility of the attorney issuing the demand, it is also disrespectful to the judge or settlement officer that is tasked with presiding over the settlement proceedings. Here, . . . [plaintiff's] settlement demand . . . was inflammatory and clearly made in bad faith.").

Moreover, Messrs. Ramey, Laminack, Pirtle, and Ms. Martines had a personal stake in making these egregious settlement demands, as Mr. Ramey's declaration reveals that he and the Laminack firm took the cases for GEMSA on contingency. Ramey Decl. ¶ 9. Thus these astronomical demands, if successful, would have rewarded them with enormous recoveries, and likely motivated them to accede to purported instructions from their client they knew (or should have known) had no basis in fact or law. This only further supports a finding of their bad faith.[18]

---

[18]   *Gust, Inc.*, 905 F.3d at 1332 (cited at Opp. at 15), is inapposite. That case merely found that "decisions within the client's domain are generally not attributable to its attorneys," such as "whether and when to agree to low value settlements." 905 F.3d at 1332. Crucially, the court noted that "**in the context of contingency fee arrangements, attorneys have more interest**—and presumably somewhat **more say**—in these decisions than under other attorney-client fee arrangements." *Id.* at 1332 n.1 (emphasis added). That is the case here. Plus, the bad faith conduct for which Defendants seek to hold Plaintiff's counsel accountable is **not** Plaintiff's decision to

(c)      Laminack's/Pirtle's ███████████████ Was Made In Bad Faith

Tellingly, the Opposition **does not deny** that ████████████████████████████ ████████████████████████ the Eastern District of Texas. Instead, the Opposition claims that this misconduct cannot be considered, that Mr. Pirtle made the statement rather than Mr. Laminack, and that Defendants were not actually threatened by this improper posturing. *See* Opp. at 15-16. These attempts all fail.

(i)      Mediation Privilege Does Not Apply Here

Mediation privilege does not shield Laminack's and Pirtle's misconduct at the mediation.

First, the rule cited in the Opposition, Tex. Civ. Prac. & Rem. Code § 154.073 (Opp. at 13), is a **Texas state law**. It does not apply here in patent infringement actions because "[f]ederal law regarding privilege applies to federal question cases." *Lawrence v. City & Cty. of San Francisco*, 2016 WL 3254232, at *4 (N.D. Cal. June 14, 2016) (citing Fed. R. Evid. 501).[19] And Plaintiff's counsel have waived any argument that their mediation misconduct is privileged under federal law, as they failed to make any such argument in their Opposition. *See, e.g.*, *Wilcox v. Arpaio*, 753 F.3d 872, 877 (9th Cir. 2014) ("the County waived any argument that the contested evidence should be privileged under federal law" because it "assumed that Arizona privilege law governed, and failed to argue that the evidence admitted should be privileged under federal law.").

In any event, to the extent any federal mediation rule governs, which the Opposition waived by failing to raise it, it would be the Eastern District of Texas Court-Annexed Mediation Plan, pursuant to which the parties mediated. *See* Ramos Reply Decl. Ex. 6 ("IT IS ORDERED that Lee Kaplan . . . is hereby appointed as mediator in the above referenced case. . . . ***Mediation shall be governed by the Court-Annexed Mediation Plan***") (emphasis added). Even if its application here

████████████████████, but rather its counsel's decision to turn around and demand egregious amounts from the Defendants knowing there was no factual or legal basis for such demands. Again, as officers of the Court, Plaintiff's counsel had "an obligation to the court and should not blindly follow the client's interests if not supported by law and facts." *Eon-Net*, 653 F.3d at 1328. They failed this obligation and should therefore be personally sanctioned for their vexatious conduct.

[19]  All California state law cited in the Opposition (Opp. at 13 n.47) is inapplicable for the same reason. *See, e.g.*, *Prime Healthcare Servs., Inc. v. Harris*, 2017 WL 3525169, at *11 n.12 (S.D. Cal. Aug. 16, 2017) (applying federal privilege law to action that solely involved federal claims).

*Areizaga v. ADW Corp.*, 796 Fed. Appx. 205 (5th Cir. 2020) (cited at Opp. at 13 n.46), is also inapplicable, since that case was based on diversity jurisdiction. *Id.*; *see also Smith v. Equinox Holdings, Inc.*, 2015 WL 628361, at *1 (N.D. Cal. Feb. 12, 2015) ("This is a diversity case, so state-law privilege rules apply") (citing Fed. R. Evid. 501).

1    had not been waived, this Plan would not prevent consideration of counsel's mediation

2    misconduct. The Plan states in relevant part, "Mediation proceedings may not be reported,

3    recorded, placed in evidence, made known to the trial court or jury, or construed for any purpose

4    *as an admission against interest*." *Id.* Ex. 7 at 2 (emphasis added). Here, Defendants are not using

5    counsel's ███████████ as an admission against interest or to argue for the underlying

6    merits of the case, but instead as another egregious example of counsel's bad faith use of the court

7    system to extort settlements from Defendants despite the lack of merit in their claims.

8          Second, the mediation agreement that the parties signed also does not prevent disclosure

9    of counsel's statements. *See* Opp. at 13. That agreement states that "[a]ll mediation sessions shall

10    be private, confidential and privileged from discovery." Laminack Decl. Ex. 35 at 3. Defendants

11    have filed under seal all portions relating to the mediation, and therefore have kept everything from

12    the mediation "private" and "confidential."[20] And this is not an issue of discovery.

13          Indeed, considering counsel's mediation misconduct as one demonstration of their bad

14    faith comports with other courts that recognize counsel's mediation misconduct can be considered

15    in connection with fees motions under certain circumstances. *See, e.g., FameFlynet, Inc. v.*

16    *Jasmine Enterprises Inc.*, No. 17 C 4749, 2019 WL 3733592, at *3 (N.D. Ill. Aug. 8, 2019)

17    (allowing settlement and mediation communications in fees motion, and rejecting argument that

18    these communications were barred by Rule 408 and SDNY's Mediation Program confidentiality

19    provision); *Hung Nguyen v. Regents of Univ. of California*, 2019 WL 3017678, at *4–5 (C.D. Cal.

20    Mar. 25, 2019) (affirming award of attorney's fees and rejecting argument that "Defendants'

21    counsel . . . improperly disclosed mediation communications to the Court").

22          Nor does Rule 408 apply because Defendants are not using Laminack's mediation

23    statements "to prove liability for or invalidity of the claim or its amount," but "for another purpose"

24    (Fed. R. Evid. 408)—a demonstration of his, and his co-counsel's, bad faith.[21]

25

26    [20]  Indeed, the Opposition has publicly filed their ████████ , and have therefore waived any applicable privilege or confidentiality of these statements. *See, e.g.,* Dkt. 172 at 15-16.

27    [21]  The Opposition's one sentence request for sanctions for this alleged "breach of the mediation privilege and Rule 408" (Opp. at 12) should therefore be rejected as meritless, and also rejected as

28    contravening L.R. 7-8, which requires all requests for sanctions to be filed as separate motions. *See, e.g., Luxul Tech. Inc. v. NectarLux, LLC*, 2016 WL 3345464, at *19 (N.D. Cal. June 16, 2016)

DEFENDANTS' REPLY ISO MOTION FOR
ENTITLEMENT TO ATTORNEY'S FEES AND COSTS      17      3:17-cv-02177-WHA;
3:17-cv-02178-WHA; 3:17-cv-02435-WHA

Counsel's mediation misconduct therefore can be properly considered in determining whether they acted in bad faith and should therefore be sanctioned.

### (ii)   Laminack's Attempt To Justify His Misconduct Fail

Mr. Laminack claims he was not the one who ████████████████████, but rather that it was his partner, Mr. Pirtle. Opp. at 15-16. Yet, crucially, ***Mr. Laminack does not deny that the statement was made.*** *See* Opp. at 16 n.60. Whether those words came out of Mr. Laminack's or Mr. Pirtle's mouth, the misconduct was the same.

Moreover, whether Defendants were "intimidated" by Laminack's or Pirtle's ████████ ████████ (Opp. at 16) is beside the point. The focus of the inquiry is on plaintiff's counsel's misconduct and whether it was reckless or tantamount to bad faith, not whether the threat achieved its intended effect, as the Opposition itself admits. *See* Opp. at 8 (citing *B.K.B. v. Maui Police Dep't.,* 276 F.3d 1091, 1107 (9th Cir. 2002) (sanctionable conduct "is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim ***for the purpose of harassing an opponent***") (emphasis added)). Their failure to achieve their goal is not a defense.

Lastly, the Opposition claims that counsel's speech "was not designed to 'intimidate.'" Opp. at 16. Yet this is undermined by the rest of Messrs. Ramey's, Laminack's, Pirtle's, and Ms. Martines's conduct throughout this case, including their conduct leading up to, during, and after the mediation. Throughout their litigation with the Defendants, Ramey, Laminack, Pirtle, and Martines ████████████████████████ with other defendants—including one contemporaneous with the mediation with the Alibaba Defendants—which they themselves brag boosted their own beliefs in the merits of the cases. Opp. at 5 n.11; Ramey Decl. ¶ 32; Mot. Ex. L at 13-18. They repeatedly ignored mounting evidence that the Alibaba Defendants did not use or otherwise control the accused instrumentalities, and that they had nothing even close to a plausible infringement theory even in relation to those accused instrumentalities, despite numerous attempts to do so up until the close of fact discovery, in violation of the presiding court's rules for amending contentions. Mot. at 3-7. Throughout the case, they ***increased*** settlement demands they knew or should have known had no basis in law or fact, even as their cases became substantively weaker,

(denying request for sanctions because it was not separately filed).

1    including after claim construction that invalidated half of the asserted claims. Mot. at 9-13.

2    ████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████

4    *Id.* at 10-11. ██████████████████████████████████████████████

5    ████████████████████████████████████. *See* Mot. Ex. W. And Ramey, Laminack, Pirtle,

6    and Martines all immediately withdrew from the case the moment this leverage was taken off the

7    table, when the case was transferred ██████████████—at which point, the proverbial jig

8    was up.[22] *Id.* at 14-15.[23] This conduct, taken together, reveals their overall vexatious litigation

9    strategy designed to extort money from Defendants without any regard to the merits of their claims,

10   and ████████████████████████████████████████████████████████

11   ██████████████████ Plainly it was—and the totality of this vexatious strategy warrants

12   sanctions against counsel personally. *See, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991);

13   *Linex Techs., Inc. v. Hewlett-Packard Co.*, 2014 WL 4616847, at *5 (N.D. Cal. Sept. 15, 2014);

14   *Eon-Net LP*, 653 F.3d at 1327-29; *RBC Bearings*, 2016 WL 6562068, at *9.

15                **3.    Mr. Cantor[24] Acted Recklessly And/Or In Bad Faith**

16           The Opposition claims the BK attorneys did not cause Defendants to incur excess fees.

17   Opp. at 27-28. This is false. As explained above, BK's post-institution pursuit of its baseless RPI

---

[22]   In fact, there was never any colorable basis for GEMSA to file in the Eastern District of Texas against the Alibaba Defendants in the first place. *See, e.g.*, Mot. Ex. R at 5 (Judge Payne noting in his transfer order that "GEMSA adds little to balance against the considerations highlighted by the defendants"); Ramos Reply Decl. Ex. 8 at 82-89 (GEMSA unable to show any basis for venue in E.D. Tex. even after conducting full merits discovery on the issue).

[23]   *See also* Ramos Reply Decl. Exs. 9, 10 (Ramey's and Laminack's firms withdrawing from the E.D. Tex. proceedings once cases were transferred to N.D. Cal.).

[24]   Mr. Cantor claims that this Court does not have jurisdiction over him because he never made an appearance. Opp. at 29. But the BK firm, of which Mr. Cantor is a shareholder, appeared on behalf of GEMSA as a prerequisite to this Court's granting Mr. Ramey's request for withdrawal. Mr. Cantor submitted a declaration in support of BK's Opposition, and represented Plaintiff in the PTAB and before the Federal Circuit. He gave no indication that he would not be involved in the cases before this Court if his defense of the petitions before the PTAB and/or Federal Circuit had been successful; in fact, Mr. Cantor was the primary point of contact between Defendants' counsel and GEMSA and its counsel since Mr. Ramey's withdrawal. *See* Weed Reply Decl. ¶ 11. That Mr. Cantor was unsuccessful at the PTAB, and that he therefore never actually made an appearance here, should not remove him from the Court's authority. In any event, as the case cited by the Opposition (at 29) states, the Court can resolve any jurisdictional issues over Mr. Cantor by issuing an order to show cause if the Court sees fit to do so. *See, e.g.*, *AF Holdings LLC v. Navasca*, 2013 WL 5701104, at *9 (N.D. Cal. Oct. 16, 2013) ("Issuance of the order to show cause will also be a basis for establishing personal jurisdiction over the nonparties [attorneys].").

---

argument resulted in multiplication of the proceedings and a Federal Circuit appeal—all of which could have been avoided if successfully raised in their initial response prior to institution, or otherwise dismissed as would have been the case. *See supra* at 7-9. Raising this meritless argument post-institution, more than once, extended the proceedings for more than 20 additional months than was necessary, and cost Defendants hundreds of thousands of additional dollars in legal fees and other expenditures. Mr. Cantor, as counsel of record before the PTAB and Federal Circuit, was responsible for propagating this baseless argument. It was Mr. Cantor who, during the appellate argument, "failed to provide a record cite and responded only that it would 'not . . . tell [the court] that the [motions] w[ere] as good as [they] could be….'" Mot. Ex. 16 at 8. This unreasonable multiplication of the proceedings with admittedly no factual support should not be allowed.[25]

### C. The Opposition Fails To Refute That Plaintiff's And Its Counsel's Bad Faith Conduct Warrants Sanctions Pursuant To The Court's Inherent Power

The Opposition contains only generic law about inherent authority and then a conclusory sentence that "Defendants are not entitled to sanctions under the Court's inherent authority." Opp. at 10. Yet Plaintiff's and its attorneys' bad faith throughout these cases warrants an award of fees against GEMSA as well as its counsel under the Court's inherent authority, as laid out extensively in Defendants' Motion and above. Because Plaintiff's and all of its counsel's "entire course of conduct throughout the lawsuit[s] evidenced bad faith," the Court should find them jointly and severally liable for Defendants' fees and costs in defending against these baseless lawsuits. *Chambers*, 501 U.S. at 51; *see also supra* at n.2.

### III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for entitlement to attorneys' fees and costs.

---

[25]   Although Ms. Mojica does not appear to be an attorney, the attorneys at BK (including Mr. Cantor) signed the pleadings that advanced the baseless RPI arguments at all stages before the PTAB and Federal Circuit, and should therefore be held responsible for such misconduct.

Dated:  July 23, 2020

Respectfully submitted,

**K&L GATES LLP**

By: */s/ Benjamin E. Weed*
Benjamin E. Weed
Illinois Bar No. 6294052
benjamin.weed@klgates.com
Gina A. Jenero
Illinois Bar No. 6320853
Gina.jenero@klgates.com
70 West Madison Street, Suite 3300
Chicago, IL 60602
312.372.1121
312.827.8000 *Facsimile*

*Attorneys for eBay, Inc.*


**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ Carey R. Ramos*
David Eiseman (Bar No. 114758)
davideiseman@quinnemanuel.com
Nathan Sun (Bar No. 284782)
nathansun@quinnemanuel.com
50 California Street, 22nd floor
San Francisco, CA  94111
Telephone: 415.875.6600
Facsimile: 415.875.6700

Carey R. Ramos (*admitted pro hac vice*)
careyramos@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: 212.849.7000
Facsimile: 212.849.7100

Jeffrey S. Gerchick (*admitted pro hac vice*)
jeffgerchick@quinnemanuel.com
1300 I St NW, Suite 900
Washington, DC 20005
Telephone:  202.538.8000
Facsimile: 202.538.8100

Brett N. Watkins (*admitted pro hac vice*)
brettwatkins@quinnemanuel.com
711 Louisiana St., Suite 500
Houston, TX 77002
Telephone:  713.221.7000
Facsimile: 713.221.7100

*Attorneys for Defendants Alibaba.com, Inc.,*
*Alibaba Singapore E-Commerce Private Ltd., and*

*Alibaba.com Hong Kong Ltd. (Case No. 3:17-cv-02177-WHA)*

*Attorneys for Defendants Nimbus Development Inc., Alibaba Cloud Computing, Ltd., and Alibaba Group Holding Ltd. (Case No. 3:17-cv-02435-WHA)*

1

**CERTIFICATE OF SERVICE**

2   I hereby certify that on July 23, 2020, I caused the foregoing to be electronically filed with

3 the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification

4 of such filing to all counsel who have entered an appearance in this action.

5

Dated:  July 23, 2020    /s/ *Carey Ramos*

6             Carey Ramos

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28